**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**Case No. 23-22688-CIV-ALTONAGA/Louis**

FLORIDA RIGHTS RESTORATION
COALITION, *et al*.,

      Plaintiffs,

v.

RONALD DESANTIS, in his official
capacity as Governor of Florida, *et al*.,

      Defendants.

_____/

---

**DEFENDANTS' MOTION TO DISMISS**

---

## TABLE OF CONTENTS

TABLE OF CITATIONS ............................................................................................ iii

INTRODUCTION ..................................................................................................... 1

BACKGROUND ...................................................................................................... 1

LEGAL STANDARD ............................................................................................... 5

ARGUMENT .......................................................................................................... 6

I.     PLAINTIFFS LACK ARTICLE III STANDING TO SUE ............................... 6

II.    SOVEREIGN IMMUNITY BARS PLAINTIFFS FROM PURSUING STATE-LAW CLAIMS DISGUISED AS FEDERAL-LAW CLAIMS. ............................................... 9

    A.    The *Ex Parte* Young Exception Does Not Permit State-Law Claims Disguised as Federal-Law Claims. .......................................................... 9

    B.    The Supervisors Are Entitled to Sovereign Immunity .............................. 13

    C.    Six of the State-Level Defendants Should Be Dismissed Because They Are Not Appropriate *Ex Parte Young* Defendants. ........................................ 16

III.    THE AMENDED COMPLAINT IS NOT SHORT AND CONCISE. ..................... 17

IV.    EACH OF THE AMENDED COMPLAINT'S FOUR COUNTS FAILS TO STATE A CLAIM. ....... 19

    A.    Plaintiffs Fail to State a Claim Under § 11(b) of the Voting Rights Act. ............. 19

    B.    Plaintiffs Fail to State a Claim Under the Equal Protection Clause. ...................... 20

    C.    Plaintiffs Fail to State an Undue-Burden Claim Under the First and  Fourteenth Amendments ........................................................................... 21

    D.    Plaintiffs Fail to State an Equitable Accounting Claim Under State Law. .............. 22

V.    PLAINTIFFS' CLAIMS AGAINST THE CLERKS SHOULD BE DISMISSED. .......................... 23

    A.    Clerks' Duties and Powers Are Prescribed and Limited by Law. .......................... 24

        1.    Clerks Are Constitutional Officers Whose Powers Are Limited by Law and to Their Respective Counties. ................................................................... 24

        2.    Clerks Are Keepers of Court Records. .......................................................... 24

    B.    Clerks Do Not Determine LFOs for Purposes of Restoration of Voting Rights. .... 25

1.      Clerks Maintain and Report Accounts.................................................. 25

2.      Clerks Do Not Determine Voter Eligibility Under Amendment 4/SB 7066........ 26

3.      Clerks Report What They Know. ........................................................ 27

4.      Plaintiffs Fail to Allege a Constitutional Violation. .............................. 29

C.      Clerks Cannot Create a Uniform, Statewide Database. ........................... 31

D.      Available Remedies Are Constitutionally Appropriate and Plaintiffs Have Failed to Exhaust Them. ...................................................................... 32

1.      Available Remedies Have Been Ruled Constitutionally Sound...................... 32

2.      Plaintiffs Have Failed to Use, Much Less Exhaust, Those Remedies................. 34

3.      Plaintiffs' Other Claims for Equitable Relief Must Be Dismissed...................... 35

E.      Plaintiffs Lack Article III Standing With Respect to Their Claims Against Clerks. ...................................................................................... 36

VI.     PLAINTIFFS' CLAIMS AGAINST THE SUPERVISORS SHOULD BE DISMISSED. ................... 37

A.      Plaintiffs Have Not Plausibly Alleged Section 1983 Liability. .............................. 40

B.      Plaintiffs' Joinder of Sixty-Seven Supervisors in One Action Is Improper............. 41

C.      Plaintiffs' Threadbare Allegations Fail to Plead a Plausible Claim Against the Supervisors. ...................................................................... 44

D.      Plaintiffs Fail to State a Plausible Equal-Protection Claim Against the Supervisors. ...................................................................... 46

1.      Plaintiffs Do Not Allege That Any Supervisor Treats Similarly Situated Individuals Differently............................................................... 46

2.      A Supervisor Does Not Violate Equal Protection When a Supervisor in Another County Administers Elections Differently. ............................... 47

3.      The Factual Allegations That Support Plaintiffs' Equal-Protection Claim Have Nothing to Do With the Supervisors. .................................... 48

E.      To the Extent They Allege Violations of Non-Existent Legal Requirements, Plaintiffs' Claims Against the Supervisors Should Be Dismissed......................... 48

CONCLUSION................................................................................... 49

<u>TABLE OF CITATIONS</u>

**<u>Cases</u>**

*A.D. v. Cavalier Mergersub LP,*

   No. 2:22-cv-00095, 2022 WL 4357989 (M.D. Fla. Sept. 20, 2022)................................... 42, 43

*Acosta v. Democratic City Commission,*

   288 F. Supp. 3d 597 (E.D. Pa. 2018) ........................................................................... 10

*Agnew v. Moody,*

   330 F.2d 868 (9th Cir. 1964) ..................................................................................... 18

*Alabama-Tombigbee Rivers Coalition v. Norton,*

   338 F.3d 1244 (11th Cir. 2003)................................................................................... 36

*Alexander v. Fulton County,*

   207 F.3d 1303 (11th Cir. 2000)................................................................................... 42

*Alexander v. Hawk,*

   159 F.3d 1321 (11th Cir. 1998)................................................................................... 35

*Alexander v. Sandoval,*

   532 U.S. 275 (2001)....................................................................................... 19, 20

*Anderson v. Celebrezze,*

   460 U.S. 780 (1983).................................................................................. 5, 21, 22

*Andrews v. D'Souza,*

   No. 1:22-cv-04259, 2023 WL 6456517 (N.D. Ga. Sept. 30, 2023)................................... 19, 20

*Arcia v. Florida Secretary of State,*

   772 F.3d 1335 (11th Cir. 2014).................................................................................... 8

*Ashcroft v. Iqbal*,

    556 U.S. 662 (2009) .................................................................................... 6, 8, 44, 46

*Austin v. Glynn County*,

    80 F.4th 1342 (11th Cir. 2023) ................................................................................ 14

*Balsam v. Secretary of New Jersey*,

    607 F. App'x 177, 183 (3d Cir. 2015) ...................................................................... 10

*Bankers Trust Realty, Inc. v. Kluger*,

    672 So. 2d 897 (Fla. 3d DCA 1996) ........................................................................ 22

*Barber v. America's Wholesale Lender*,

    289 F.R.D. 364 (M.D. Fla. 2013) ............................................................................ 42

*Bell Atlantic Corporation v. Twombly*,

    550 U.S. 544 (2007) ............................................................................................. 6, 44

*Board of County Commissioners of Bryan County v. Brown*,

    520 U.S. 397 (1997) ................................................................................................ 41

*Bowyer v. Ducey*,

    506 F. Supp. 3d 699 (D. Ariz. 2020) ...................................................................... 10

*Brooks v. Brooks Consultants, Inc.*,

    No. 6:22-cv-00669, 2022 WL 18493474 (M.D. Fla. Nov. 7, 2022) ......................... 42

*Brown v. Sikes*,

    212 F.3d 1205 (11th Cir. 2000) ................................................................................ 34

*Burdick v. Takushi*,

    504 U.S. 428 (1992) ......................................................................................... 5, 21, 22

*Butler v. Elle,*

    281 F.3d 1014 (9th Cir. 2002) ................................................................... 40

*Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.,*

    637 F.3d 1047 (9th Cir. 2011)................................................................... 18

*Campbell v. Knight,*

    109 So. 577 (Fla. 1929)............................................................................ 22

*Campbell v. Rainbow City,*

    434 F.3d 1306 (11th Cir. 2006)................................................................ 46

*Carter v. Morris,*

    164 F.3d 215 (4th Cir. 1999) ................................................................... 40

*Christiansburg Garment Company v. EEOC,*

    434 U.S. 412 (1978)................................................................................. 38

*Citizen Center v. Gessler,*

    770 F.3d 900 (10th Cir. 2014) ........................................................... 21, 47

*City of Canton v. Harris,*

    489 U.S. 378 (1989)................................................................................. 40

*City of South Miami v. Governor of Florida,*

    65 F.4th 631 (11th Cir. 2023) .................................................................... 7

*Clapper v. Amnesty International USA,*

    568 U.S. 398 (2013).................................................................................... 8

*Common Cause Florida v. DeSantis,*

    No. 4:22-cv-00109-AW-MAF, 2022 WL 19978293 (N.D. Fla. Nov. 8, 2022) ...................... 16

*Corbin v. State ex rel. Slaughter*,

    324 So. 2d 203 (Fla. 1st DCA 1975) ........................................................ 24

*Crawford v. Marion County Election Board*,

    553 U.S. 181 (2008) .................................................................... 21, 22

*Daker v. Holmes*,

    No. 20-13601, 2022 WL 2129076 (11th Cir. June 14, 2022) ...................... 43

*Daskalea v. District of Columbia*,

    227 F.3d 433 (D.C. Cir. 2000) ................................................................ 40

*DeKalb County School District v. Schrenko*,

    109 F.3d 680 (11th Cir. 1997) ..................................................... 10, 11, 13

*Demings v. Orange County Citizens Review Board*,

    15 So. 3d 604 (Fla. 5th DCA 2009) ........................................................ 14

*Disability Rights South Carolina v. McMaster*,

    24 F.4th 893 (4th Cir. 2022) ................................................................. 17

*Dunn v. Blumstein*,

    405 U.S. 330 (1972) ........................................................................... 47

*Duty Free World, Inc. v. Miami Perfume Junction, Inc.*,

    253 So. 3d 689 (Fla. 3d DCA 2018) ....................................................... 35

*Elston v. Talladega County Board of Education*,

    997 F.2d 1394 (11th Cir. 1993) ............................................................. 47

*Ex Parte Young*,

    209 U.S. 123 (1908) ................................................................... passim

*F.A. Chastain Construction, Inc. v. Pratt*,

    146 So. 2d 910 (Fla. 3d DCA 1962) ....................................................................... 22

*Georgia Republican Party v. SEC*,

    888 F.3d 1198 (11th Cir. 2018) ............................................................................... 7

*Grizzle v. Kemp*,

    634 F.3d 1314 (11th Cir. 2011) ............................................................................... 16

*Harris v. Bush*,

    106 F. Supp. 2d 1272 (N.D. Fla. 2000) .................................................................. 16

*Hartley v. Clark*,

    No. 3:09-cv-00559, 2010 WL 1187880 (N.D. Fla. Feb. 12, 2010) ......................... 42

*Harvard v. Inch*,

    411 F. Supp. 3d 1220 (N.D. Fla. 2019) .................................................................. 42

*Interscope Records v. Does 1–25*,

    No. 6:04-cv-00197, 2004 WL 6065737 (M.D. Fla. Apr. 1, 2004) .......................... 42

*Jacobson v. Florida Secretary of State*,

    974 F.3d 1236 (11th Cir. 2020) ...................................................................... 6, 7, 22

*Jenkins v. Wood*,

    81 F.3d 988 (10th Cir. 1996) ................................................................................. 40

*Johnson v. Meadows*,

    418 F.3d 1152 (11th Cir. 2005) ........................................................................ 34, 35

*Jones v. Governor of Florida*,

    15 F.4th 1062 (11th Cir. 2021) .............................................................................. 2

*Jones v. Governor of Florida,*

    975 F.3d 1016 (11th Cir. 2020) ........................................................................ passim

*Knox v. First Security Bank of Utah,*

    196 F.2d 112 (10th Cir. 1952) .................................................................................. 18

*Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,*

    440 U.S. 391 (1979) ................................................................................................... 15

*Lake v. Hobbs,*

    623 F. Supp. 3d 1015 (D. Ariz. 2022) ...................................................................... 10

*Lindell v. Houser,*

    442 F.3d 1033 (7th Cir. 2006) .................................................................................. 18

*Longhini v. Sembler,*

    No. 6:17-cv-02093, 2018 WL 1833137 (M.D. Fla. Jan. 4, 2018) ............................. 42

*Lujan v. Defenders of Wildlife,*

    504 U.S. 555 (1992) ............................................................................................... 5, 6

*LULAC v. Abbott,*

    604 F. Supp. 3d 463 (W.D. Tex. 2022) ...................................................................... 7

*Manders v. Lee,*

    338 F.3d 1304 (11th Cir. 2003) ........................................................................... 14, 15

*Massey v. Coon,*

    865 F.2d 264 (9th Cir. 1989) .................................................................................... 10

*McDowell v. Brown,*

    392 F.3d 1283 (11th Cir. 2004) ................................................................................ 41

*McKinney v. Pate,*

    20 F.3d 1550 (11th Cir. 1994) ......................................................................................... 33

*Mendez v. Draham,*

    182 F. Supp. 2d 430 (D.N.J. 2002) ................................................................................... 18

*Monell v. Department of Social Services of City of New York,*

    436 U.S. 658 (1978) ................................................................................................... 40, 41

*Muransky v. Godiva Chocolatier, Inc.,*

    979 F.3d 917 (11th Cir. 2020) ........................................................................................... 5

*Mutuelle Generale Francaise Vie v. Life Assururance Company of Pennsylvania,*

    688 F. Supp. 386 (N.D. Ill. 1988) ................................................................................... 19

*Omega, SA v. Individuals, Business Entities,* and *Unincorporated Associations Identified on*

    *Schedule "A",*

    --- F. Supp. 3d ----, No. 0:22-cv-60026, 2023 WL 2248233 (S.D. Fla. Jan. 14, 2023) ............... 43

*Orange County v. Singh,*

    268 So. 3d 668 (Fla. 2019) .............................................................................................. 14

*Osterback v. Scott,*

    782 F. App'x 856 (11th Cir. 2019) ................................................................................. 16

*Parks v. City of Warner Robins,*

    43 F.3d 609 (11th Cir. 1995) ........................................................................................... 20

*Pellitteri v. Prine,*

    776 F.3d 777 (11th Cir. 2015) ......................................................................................... 15

*Pennhurst State School and Hospital v. Halderman,*

    465 U.S. 89 (1984) ................................................................................................... passim

*Peoples National Bank of Commerce v. First Union National Bank of Florida*,

    667 So. 2d 876 (Fla. 3rd DCA 1996)..................................................................... 35

*Personnel Administrator of Massachusetts v. Feeney*,

    442 U.S. 256 (1979)............................................................................................... 20

*R.O. Holton & Co. v. Hull*,

    192 So. 229 (Fla. 1939)......................................................................................... 22

*Royal Indemnity Company v. Knott*,

    136 So. 474 (Fla. 1931)......................................................................................... 22

*S&M Brands, Inc. v. Georgia ex rel. Carr*,

    925 F.3d 1198 (11th Cir. 2019).................................................................... 11, 13

*Salahuddin v. Cuomo*,

    861 F.2d 40 (2d Cir. 1988) .................................................................................... 18

*Schultz v. Alabama*,

    42 F.4th 1298 (11th Cir. 2022) ............................................................................. 13

*SEC v. Monterosso*,

    756 F.3d 1326 (11th Cir. 2014).............................................................................. 35

*Shelby Advocates for Valid Elections v. Hargett*,

    947 F.3d 977 (6th Cir. 2020) ................................................................................... 7

*Simon v. Eastern Kentucky Welfare Rights Organization*,

    426 U.S. 26 (1976)................................................................................................... 6

*Smith v. Residential Capital, LLC*,

    No. 1:14-cv-00622, 2014 WL 1767821 (N.D. Ga. May 2, 2014) ............................. 18

*Squeaky Gate, Inc. v. Ohio Security Insurance Company,*

    No. 8:18-cv-02382, 2018 WL 5839870 (M.D. Fla. Nov. 8, 2018) ............................................. 42

*Steel Company v. Citizens for a Better Environment,*

    523 U.S. 83 (1998)........................................................................................................................... 36

*Summers v. Earth Island Institute,*

    555 U.S. 488 (2009)........................................................................................................................... 7

*Support Working Animals, Inc. v. Governor of Florida,*

    8 F.4th 1198 (11th Cir. 2021)....................................................................................................... 16

*Tacoronte v. Collection Company of America,*

    No. 6:10-cv-01477, 2010 WL 11651422 (M.D. Fla. Nov. 2. 2010) ........................................... 43

*The Florida Bar,*

    398 So. 2d 446 (Fla. 1981)............................................................................................................ 24

*Times Publishing Company v. Ake,*

    645 So. 3d 1003 (Fla. 2d DCA 1994)............................................................................................ 25

*United States v. Williams,*

    553 U.S. 285 (2008)........................................................................................................................ 30

*Warth v. Seldin,*

    422 U.S. 490 (1975)........................................................................................................................ 36

*Washington v. Davis,*

    426 U.S. 229 (1976)........................................................................................................................ 21

*Weiland v. Palm Beach County Sheriff's Office,*

    792 F.3d 1313 (11th Cir. 2015)..................................................................................................... 18

*Wexler v. Anderson,*

    452 F.3d 1226 (11th Cir. 2006) ............................................................................... 21

*Williams v. Poarch Band of Creek Indians,*

    839 F.3d 1312 (11th Cir. 2016) ................................................................................. 6

*Women's Emergency Network v. Bush,*

    323 F.3d 937 (11th Cir. 2003) ................................................................................. 16

*Ziyadat v. Diamondrock Hospitality Company,*

    3 F.4th 1291 (11th Cir. 2021) ................................................................................... 6

## Constitutional Provisions

Fla. Const. art. V, § 16 ............................................................................................. 24

Fla. Const. art. V, § 20(c)(8) ..................................................................................... 25

Fla. Const. art. VI, § 1 ............................................................................................... 4

Fla. Const. art. VI, § 4 ....................................................................................... 15, 27

Fla. Const. art. VI, § 4(a) ...................................................................................... 1, 8

Fla. Const. art. VI, § 4(b) ...................................................................................... 1, 8

Fla. Const. art. VIII, § 1 ........................................................................................... 24

Fla. Const. art. VIII, § 1(d) ............................................................................... 14, 24

## Statutes

52 U.S.C. § 10302 .................................................................................................... 20

52 U.S.C. § 10307(b) ..................................................................................... 5, 19, 20

52 U.S.C. § 10310 .................................................................................................... 20

Fla. Stat. § 16.56(1) ................................................................................................. 17

Fla. Stat. § 20.201 ................................................................................................... 17

Fla. Stat. § 28.2405 (2023) ................................................................................................. 31

Fla. Stat. § 28.246(2) (2023) ............................................................................................... 25

Fla. Stat. § 28.246(4) (2023) ............................................................................................... 29

Fla. Stat. § 28.246(4)(b) (2023) .......................................................................................... 29

Fla. Stat. § 97.0115 (2023) .................................................................................................. 13

Fla. Stat. § 97.041(2)(b) (2023) .......................................................................................... 15

Fla. Stat. § 98.075 (2023) .............................................................................................. passim

Fla. Stat. § 98.075(1) (2023) ........................................................................................... 2, 38

Fla. Stat. § 98.075(5) (2023) ........................................................................................ passim

Fla. Stat. § 98.075(5)(a) (2023) .................................................................................... 26, 28

Fla. Stat. § 98.075(5)(b) (2023) .......................................................................................... 12

Fla. Stat. § 98.075(7) (2023) ........................................................................................ passim

Fla. Stat. § 98.075(7)(a) (2023) .......................................................................... 9, 15, 41, 43

Fla. Stat. § 98.075(7)(a)1. (2023) .............................................................................. 3, 38, 45

Fla. Stat. § 98.075(7)(a)2. (2023) ................................................................................... 3, 38

Fla. Stat. § 98.075(7)(a)2.f. (2023) ..................................................................................... 33

Fla. Stat. § 98.075(7)(a)3. (2023) .............................................................................. 3, 38, 45

Fla. Stat. § 98.075(7)(a)4. (2023) .............................................................................. 3, 38, 45

Fla. Stat. § 98.075(7)(a)5. (2023) ............................................................... 3, 32, 33, 38, 45

Fla. Stat. § 98.0751 (2023) ........................................................................................... passim

Fla. Stat. § 98.0751(1) (2023) ............................................................................................... 3

Fla. Stat. § 98.0751(2) (2023) ............................................................................................... 3

Fla. Stat. § 98.0751(2)(a)5.d. (2023) ................................................................................... 33

Fla. Stat. § 98.0751(2)(a)5.e. (2023) ................................................................... 33

Fla. Stat. § 98.0751(3) (2023) ................................................................................ 9

Fla. Stat. § 98.0751(3)(a) (2023) ......................................................................... 26

Fla. Stat. § 98.0751(3)(b) (2023) ......................................................................... 27

Fla. Stat. § 98.0755 (2023) .............................................................................. 2, 33

Fla. Stat. § 98.093 (2023) ..................................................................................... 25

Fla. Stat. § 98.093(3)(c) (2023) ...................................................................... 12, 31

Fla. Stat. § 98.093(3)(c)1. (2023) ........................................................................ 26

Fla. Stat. § 98.093(3)(c)2. (2023) ........................................................................ 26

Fla. Stat. § 104.011(2) (2023) ................................................................................ 3

Fla. Stat. § 104.15 (2023) ....................................................................................... 3

Fla. Stat. § 106.23 (2023) ................................................................................... 9, 12

Fla. Stat. § 106.23(2) (2023) ................................................................................... 3

Fla. Stat. § 129.201 (2023) ................................................................................... 15

Fla. Stat. § 129.202 (2023) ................................................................................... 15

Fla. Stat. § 129.202(2) (2023) .............................................................................. 15

Fla. Stat. § 145.09 (2023) ..................................................................................... 15

Fla. Stat. § 775.083(3) (2023) ......................................................................... 29, 37

Fla. Stat. § 775.089(11)(a) (2023) ....................................................................... 28

Fla. Stat. § 940.061 (2023) ................................................................................... 13

Fla. Stat. § 944.705(7)(a) (2023) ......................................................................... 13

Fla. Stat. § 948.041 (2023) ................................................................................... 13

**Laws of Florida**

Ch. 2019-162, Laws of Fla.................................................................................. 28, 31

**Rules**

Fed. R. Civ. P. 1 ...........................................................................................................49

Fed. R. Civ. P. 8(a)(2)................................................................................................ 17

Fed. R. Civ. P. 8(d)(1) ............................................................................................... 17

Fed. R. Civ. P. 12(b)(1) ............................................................................................. 37

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 37

Fed. R. Civ. P. 20 ...................................................................................................... 43

Fed. R. Civ. P. 20(a) ................................................................................................. 42

Fed. R. Civ. P. 20(a)(2)......................................................................................... 42, 44

Fed. R. Civ. P. 21 ...................................................................................................... 44

Fla. Admin. Code R. 1S-2.010 ................................................................................. 3, 4

Fla. R. Crim. P. 3.700(b) ............................................................................................ 3

## INTRODUCTION

Plaintiffs' amended complaint names 142 public-official defendants and alleges a "campaign" to disenfranchise individuals with prior felony convictions. ECF No. 9 ¶ 3. Plaintiffs advance novel theories to support their request for an unprecedented judicial takeover and enforcement of state-law voter-registration procedures—a takeover of a program upheld by the Eleventh Circuit. But Plaintiffs' pleading fails at the starting blocks. Plaintiffs lack standing to sue, assert claims barred by sovereign immunity, fail to state a claim, and even violate basic pleading requirements.

Part I of this motion explains why Plaintiffs have failed to allege their standing to sue. Part II explains that sovereign immunity bars claims that seek to enforce state-law obligations—despite the federal-law labels that Plaintiffs place on those claims—and that some Defendants are not appropriate parties here under *Ex Parte Young*. Next, Part III points out that the amended complaint egregiously violates Federal Rule of Civil Procedure 8, which requires that pleadings be short and concise. Next, Part IV explains why each of the amended complaint's four counts fails to state a claim. Finally, Parts V and VI provide additional reasons why this Court should dismiss the Clerks and the Supervisors, respectively.[1]

For the reasons that follow, this Court should dismiss Plaintiffs' amended complaint.

## BACKGROUND

**A.** In 2018, "the people of Florida approved a historic amendment to their state constitution to restore the voting rights of thousands of convicted felons." *Jones v. Governor of Fla.*, 975 F.3d 1016, 1025 (11th Cir. 2020) (en banc) ("*Jones II*"). Notably, however, the restoration of voting rights is still not available "to felons convicted of murder or a felony sexual offense." *Id.* at 1026 (citing Fla. Const. art. VI, § 4(a)–(b)). The restoration of voting rights for all other convicted felons also comes

---

[1] The state-level Defendants do not join Parts V and VI.

with "one condition: before regaining the right to vote, felons must complete *all* the terms of their criminal sentences, including imprisonment, probation, and payment of any fines, fees, costs, and restitution." *Id.* The Eleventh Circuit has held that the financial terms of that condition do not violate the Equal Protection Clause, *id.* at 1028–37, the Twenty-Fourth Amendment's prohibition on poll taxes, *id.* at 1037–46, the Due Process Clause, *id.* at 1046–50, or the Nineteenth Amendment's prohibition on sex-based voting qualifications, *Jones v. Governor of Fla.*, 15 F.4th 1062, 1067–68 (11th Cir. 2021) ("*Jones III*").

**B.** The Florida Legislature established a framework to "implement the amendment" to the Florida Constitution, *Jones II*, 975 F.3d at 1026, and to "protect the integrity of the electoral process by ensuring the maintenance of accurate and current voter registration records," Fla. Stat. § 98.075(1). Under that framework, "Florida does not require felons to prove that they have completed their sentences during the registration process." *Jones II*, 975 F.3d at 1026. If a "registration form is complete, and the Division of Elections determines that the registrant is a real person, it adds the person to the voter registration system." *Id.* Stated differently, "[o]nce a felon submits a facially complete registration form and Florida determines that he is a real person, he is added to the voting rolls as a registered voter; he is not then required to prove that he has completed his sentence." *Id.* at 1035.

"If the State later obtains 'credible and reliable' information establishing that the person has a felony conviction and has not completed all terms of his sentence, the person is subject to removal from the voter rolls." *Id.* (quoting Fla. Stat. § 98.075(5)). "But [because] any such felon is considered a registered voter," "before removal from the voter registration system, he is entitled to notice—including 'a copy of any documentation upon which his potential ineligibility is based'—and a hearing, as well as *de novo* judicial review of an adverse eligibility determination." *Id.* (citing Fla. Stat. §§ 98.075(7), 98.0755).

That's where the Supervisors of Elections come into the picture. Supervisors are responsible for notifying the registered voter and inviting information from the voter about potential ineligibility because of a felony conviction. Fla. Stat. § 98.075(7)(a)1.–2. Supervisors must then make a final determination of eligibility or ineligibility, which may result in the voter's removal from the registration rolls. *Id*. § 98.075(7)(a)3.–5.

**C.** Taken together, under the Florida Constitution and its implementing state legislation, "a felon may not vote or register to vote if he *knows* that he has failed to complete all terms of his sentence." *Jones II*, 975 F.3d at 1047 (citing Fla. Stat. §§ 104.011(2), 104.15, 98.0751(1)–(2)). Felons are themselves in the best position to know the terms of their sentence because "[e]very sentence" is "pronounced in open court," and the felons themselves are provided with a copy of their judgment and sentence. Fla. R. Crim. P. 3.700(b). Still, "no felon who honestly believes that he has completed the terms of his sentence commits a crime by registering and voting" because Florida law establishes a "scienter requirement for voting violations." *Id.* at 1048 (citing Fla. Stat. §§ 104.011(2), 104.15).

In addition, the "State allows felons to request an advisory opinion on eligibility before registration, and any felon who registers in reliance on an opinion is immune from prosecution." *Jones II*, 975 F.3d at 1026; *see also* Fla. Stat. § 106.23(2). Rule 1S-2.010 of the Florida Administrative Code governs the advisory opinion process. It "is the only process by which the Division of Elections is authorized to provide advisory opinions." *Id.* The rule requires "a written request" that "must contain the following information": the "[n]ame of the requestor," the requestor's "[a]ddress," identification of the statutory provision "on which [an] advisory opinion is sought," a "[d]escription of how this statutory provision may or does affect the requestor," the "[p]ossible violation of Florida election laws on which [an] advisory opinion is sought," "[t]he precise factual circumstances giving rise to the

3

request," "[t]he point(s) on which the requestor seeks an opinion," "[a]dditional relevant infor-

mation," and a "[s]tatement of necessity, if any, to expedite the division's response." *Id.*

**D.** Plaintiffs take issue with Florida's method of re-enfranchisement for those felons with out-

standing financial conditions imposed as part of their sentence. Plaintiffs name 142 public officials as

defendants—beginning with the Governor of Florida—alleging that the public officials have engaged

in a "campaign" to disenfranchise individuals with felony convictions. ECF No. 9 ¶ 3. The allegations

specific to individual public officials are thin, vague, or both.

Consider the following allegations related to the state-level Defendants:

- Governor DeSantis is seemingly named because of his broad duty to "take care that the laws be faithfully executed, commission all officers of the state and counties, and transact all necessary business with the officers of government" and because he "serves as the head of" the Florida Department of Law Enforcement ("FDLE"). *Id.* ¶ 42 (quoting Fla. Const. art. VI, § 1). Plaintiffs also take issue with statements the Governor made as a candidate for office in 2018, *id.* ¶¶ 69–71, snippets from a letter his office wrote in 2019, *id.* ¶ 72, and the routine exercise of his role, such as the signing of legislation, *id.* ¶ 79.

- Secretary Byrd, the head of the Florida Department of State, is named because his office "cannot reliably determine whether individuals previously convicted of a felony have outstanding financial obligations related to their conviction," *id.* ¶ 86, and because, in Plaintiffs' view, his office is not complying with state law, *id.* ¶¶ 84–92 (collecting citations).

- Secretary Dixon, the head of the Department of Corrections, and the Commissioners of the Florida Commission on Offender Review are named because they "fail" "to provide people with prior felony convictions accurate written information" about the financial conditions associated with their convictions. *Id.* ¶ 98. Again, Plaintiffs maintain that state law is the source of this continuing obligation to track and inform felons about the terms of their conviction. *Id.* ¶¶ 95–100.

- Commissioner Glass, the head of FDLE, is also named, though, unlike the other Defendants, no specific section of the amended complaint details why. At most, it seems, he's named because of his role in the arrests of those who either registered to vote or voted despite having been "convicted of murder or a felony sexual offense." *Id.* ¶ 131.

Allegations concerning the county-level Defendants—the Clerks and the Supervisors—fare no better. Consider the following:

- Plaintiffs fault the Clerks for not keeping a running tally of the amounts paid towards a felon's financial obligations under the State's first-dollar policy, and provide a handful of examples where county clerks, from Plaintiffs' perspective, have not been responsive to inquiries. *Id.* ¶¶ 102–09.

- Plaintiffs say, without factual enhancement, that the Supervisors do not follow state law by "notifying voters . . . when the Supervisors have concluded that persons with prior felony convictions are ineligible to register to vote or are improperly registered to vote." *Id.* ¶ 116.

Plaintiffs allege four claims for relief based on their allegations. The first is a claim under § 11(b) of the Voting Rights Act "against Defendants DeSantis, Byrd, and Glass." *Id.* ¶¶ 171–75. The second is an "arbitrary and disparate treatment" claim under the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution "against Defendants DeSantis and Byrd, County Clerk Defendants and Supervisor Defendants." *Id.* ¶¶ 176–83. The third appears to be an "undue burden on the right to vote" claim "against all Defendants" under the *Anderson/Burdick* test, which is rooted in the First and Fourteenth Amendments to the U.S. Constitution. *Id.* ¶¶ 184–95. The fourth claim is a state-law "equitable accounting" claim against "Defendant Byrd and the County Clerk Defendants." *Id.* ¶¶ 196–200. The relief sought runs the gamut from declarations and injunctions to the imposition of a federal monitor. *Id.* at 69–71. At base, however, Plaintiffs seek an order directing the state-level Defendants and Supervisors to "follow the procedures set forth in Florida Statutes Sections 98.075(5), 98.075(7), and 98.0751"—*i.e.*, they want a *federal* court to direct compliance with *state* law. *Id.* at 75.

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must allege facts sufficient to establish the Court's subject-matter jurisdiction. *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924-25 (11th Cir. 2020) (en banc); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). The complaint must

also "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requires "factual content" that will support a "reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pleading facts that "are merely consistent with a defendant's liability" isn't enough because it "stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" either. *Id.* And while well-pleaded factual allegations are accepted as true, legal conclusions are insufficient to survive dismissal. *Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1295–96 (11th Cir. 2021).

## ARGUMENT

### I.   PLAINTIFFS LACK ARTICLE III STANDING TO SUE.

Standing is a burden that "rests with the party bringing the claim." *Williams v. Poarch Band of Creek Indians*, 839 F.3d 1312, 1314 (11th Cir. 2016). It requires Plaintiffs to plead and then prove (1) an injury in fact (2) that's fairly traceable to the challenged action, and (3) that's likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Neither the organizational Plaintiff (FRRC) nor the individual Plaintiffs have standing.

**A.** First, the organization. It's axiomatic that organizations must suffer their own injuries-in-fact: "[A]n organization's abstract concern with a subject that could be affected by an adjudication does not substitute for the concrete injury required by Art[icle] III." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 (1976). Organizational injuries that rely on a diversion-of-resource theory require the identification of the projects or activities *from which* resources are being diverted and the projects and activities *to which* the resources are being diverted. *See Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1250–52 (11th Cir. 2020). Alternatively, organizations must show standing through the standing of their members, which would require identifying members and alleging how they have

been harmed. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009) ("identify members who have suffered the requisite harm"); *Jacobson*, 974 F.3d at 1249; *LULAC v. Abbott*, 604 F. Supp. 3d 463, 483 (W.D. Tex. 2022) (three-judge court). FRRC has done neither.

Stripped of all the extraneous allegations quoting news stories and the like, FRRC alleges that it "brings this action on behalf of itself and its members." ECF No. 9 ¶ 10. "It is run by people with prior felony convictions who are dedicated to ending the disenfranchisement and discrimination against people with convictions." *Id.* FRRC "pursued a successful campaign to amend the Florida Constitution" so that felons—other than murderers and sexual offenders—could have their voting rights restored. *Id.* ¶ 57. That's it.

Crucially, "FRRC's grant money is specifically donated to help restore voting rights"—"to pay off" financial conditions associated with felony convictions. *Id.* ¶ 111. That's the FRRC's mission; it must spend its money to help felons register to vote by helping them "pay off" their financial conditions. *Id.* It's for this reason that the diversion theory fails just as it did in *Shelby Advocates for Valid Elections v. Hargett*, where the "alleged diversionary actions" of "spending money to bring, fund, and participate" in litigation "to address voting inequities and irregularities" were the mission. 947 F.3d 977, 982 (6th Cir. 2020). Said differently, FRRC cannot show, and does not allege, that grant money specifically donated to pay off financial obligations for felons is being diverted *from* that task *to* another task. *See Jacobson*, 974 F.3d at 1250–52. Thus, the diversion theory doesn't work. *See generally City of S. Miami v. Governor of Fla.*, 65 F.4th 631, 640 (11th Cir. 2023) (holding that organizational plaintiffs lacked standing).

Associational standing doesn't work either. It requires the identification of specific members with standing to sue in their own right. *Summers*, 555 U.S. at 499; *Ga. Republican Party v. SEC*, 888 F.3d 1198, 1203–05 (11th Cir. 2018). The only FRRC members identified in the amended complaint

are the named Plaintiffs, Roshanda Bryant-Jones, ECF No. 9 ¶ 19, Angel Sanchez, *id.* ¶ 25, Autumn Waite, *id.* ¶ 35, and Brandon Walthour, *id.* ¶ 39. None has standing to sue in their own right, as discussed below. All that's left are general allegations of societal harm that Plaintiffs say flows from Defendants' alleged failure to adhere to the law. That's not enough to plead standing. *See Iqbal*, 556 U.S. at 678; *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1342 (11th Cir. 2014) (requiring "a concrete and demonstrable injury, not an abstract social interest").

**B.** Second, the individual Plaintiffs. Plaintiff, Ms. Jones states that she paid off the financial obligations associated with her felony convictions, ECF No. 9 ¶¶ 20–21, and is a registered voter, *id.* ¶ 23. She "fears" that she might be arrested in the future for casting a vote, *id.* ¶ 24, because those previously "convicted of murder or a felony sexual offense" have been arrested and "charged with felony voter fraud and false registration," *id.* ¶ 131. She's not a murderer or sexual offender and, recall, the restoration of voting rights was never available "to felons convicted of murder of a felony sexual offense." *Jones II*, 975 F.3d at 1026 (citing Fla. Const. art. VI, § 4(a)–(b)). Ms. Jones's fear of hypothetical future harm thus depends on a "highly attenuated chain of possibilities": (1) her being wrong about the payment of her financial obligations, (2) the State of Florida arresting people for honest mistakes about whether financial obligations remain outstanding, and (3) the State arresting felons other than those who are murders or sexual offenders. Under the circumstances, Ms. Jones does not have standing to sue. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013).

Plaintiff, Mr. Sanchez similarly lacks standing. He completed all the terms of his sentence, including the payment of financial obligations and probation, on April 30, 2014. ECF No. 9 ¶ 27. He even obtained an advisory opinion finding that his "voting rights have been restored," *id.* ¶ 31, and is an active, registered voter, *id.* ¶ 28. He is also not a murderer or sexual offender. *See id.* ¶ 31. His hypothetical, fear-based future injuries are thus insufficient to sue. *See Clapper*, 568 U.S. at 401.

Plaintiffs, Ms. Waite and Mr. Walthour, lack standing for the same reason. Both are registered to vote. ECF No. 9 ¶ 36 (Waite), ¶ 40 (Walthour). Ms. Waite has "completed her probation and the terms of her felony sentence," and she doesn't allege that her felony convictions were for murder or a sexual offense. *Id.* ¶ 36. Mr. Walthour "has never been convicted of a felony offense and therefore never lost his voting rights under Florida law." *Id.* ¶ 39.

In sum, all of the individual Plaintiffs know they can register to vote and have registered to vote. Their fear of hypothetical future harms is insufficient to establish standing to sue. Because of that, FRRC cannot rely on these individuals to establish associational standing either.

## II.  SOVEREIGN IMMUNITY BARS PLAINTIFFS FROM PURSUING STATE-LAW CLAIMS DISGUISED AS FEDERAL-LAW CLAIMS.

Sovereign immunity bars state-law claims—even if those claims are disguised as federal-law claims. It therefore bars *all* claims against the Supervisors, since Plaintiffs' claims against the Supervisors are founded on alleged violations of notice requirements in section 98.075(7)(a). And it also bars Plaintiffs' claims against the state-level Defendants to the extent those claims assert violations of state laws such as 98.0751(3) and 98.075(5), which require the Department of State to assess eligibility to register to vote, and section 106.23, which requires the Department of State to issue advisory opinions.

### A.  The *Ex Parte* Young Exception Does Not Permit State-Law Claims Disguised as Federal-Law Claims.

Ordinarily, a state may not be sued without its consent. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984). This principle of sovereign immunity limits the jurisdiction of federal courts. *Id.* The Supreme Court has recognized a limited exception to this jurisdictional bar, permitting suits that challenge the constitutionality of a state official's action and seek prospective relief. *Id.* at 102–03 (citing *Ex Parte Young*, 209 U.S. 123 (1908)). The "need to promote the vindication of federal rights" and to enforce the supremacy of federal law justifies the *Ex Parte Young* exception. *Id.* at 105.

The *Ex Parte Young* exception does not, however, permit suits that challenge a state official's non-compliance with *state* law. *Id*. at 106. Because suits that seek to compel state officials to comply with state law do not "vindicate the supreme authority of federal law," the "entire basis" for the *Ex Parte Young* exception "disappears." *Id*. Indeed, "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Id*. This limitation on the *Ex Parte Young* exception is sometimes called the *Pennhurst* doctrine.

Federal courts are vigilant to detect and thwart attempts to circumvent the *Pennhurst* doctrine. When a complaint attempts to disguise or repackage a violation of state law as a violation of federal law, the *Pennhurst* doctrine bars the claim. *Balsam v. Sec'y of N.J.*, 607 F. App'x 177, 183 (3d Cir. 2015) ("Appellants' attempt to tie their state law claims into their federal claims is unpersuasive."); *Massey v. Coon*, 865 F.2d 264, 1989 WL 884, at *2 (9th Cir. 1989) (unpublished table decision) ("Although on its face the complaint states a claim under the due process and equal protection clauses of the Constitution, these constitutional claims are entirely based on the failure of defendants to conform to state law."); *Lake v. Hobbs*, 623 F. Supp. 3d 1015, 1030 (D. Ariz. 2022) ("Courts have repeatedly rejected alleged federal constitutional claims that rely on a determination that state officials have not complied with state law."); *Bowyer v. Ducey*, 506 F. Supp. 3d 699, 716 (D. Ariz. 2020) ("However, where the claims are state law claims, masked as federal law claims, *Ex Parte Young* is inapplicable and the Eleventh Amendment clearly bars the suit."); *Acosta v. Democratic City Comm.*, 288 F. Supp. 3d 597, 628 (E.D. Pa. 2018) ("Even though Plaintiffs may attempt to tie their Pennsylvania Election Code claims into their constitutional claims, the Eleventh Amendment still bars the state law claim as to Secretary Cortés."). The gravamen of the claim, not its label, determines *Pennhurst*'s applicability.

For example, in *DeKalb County School District v. Schrenko*, 109 F.3d 680 (11th Cir. 1997), the plaintiffs alleged that Georgia violated a state statute that regulated state reimbursement of local

expenditures for school-bus transportation—and that the same conduct in turn violated the Fourteenth Amendment and two federal statutes. The Eleventh Circuit looked to the "gravamen" of the plaintiffs' complaint, however, and explained that the district court's judgment "appears to be one for violation of state law." *Id*. at 688. It concluded that sovereign immunity barred the plaintiffs' claims. *Id*. at 690.

More recently, in *S&M Brands*, *Inc. v. Georgia ex rel. Carr*, 925 F.3d 1198 (11th Cir. 2019), the plaintiff alleged that Georgia violated a state statute that required the release of escrowed funds— and that its refusal to release the funds constituted a taking under the Fifth Amendment and a violation of the First Amendment. *Id*. at 1205. The Eleventh Circuit affirmed dismissal of the plaintiff's claim, explaining that state law established the obligation to release funds and determined the amount to be released. *Id*. Because the "gravamen" of the claim was that "the State has improperly interpreted and failed to adhere to a state statute," the *Pennhurst* doctrine barred the claim. *Id*. (quoting *Schrenko*, 109 F.3d at 688).

The same is true here. Plaintiffs assert claims that, while clothed in federal-law labels, allege violations of state law.

*The Supervisors*. All of Plaintiffs' claims against the sixty-seven Supervisors rest on alleged violations of state law. As to the Supervisors, Plaintiffs allege that section 98.075(7) requires a Super-visor who receives notice of a voter's potential ineligibility from the Florida Department of State to notify the voter of the voter's "potential ineligibility." ECF No. 9 ¶ 115 & n.87. Plaintiffs then recite the content that, under that statute, those notices must contain. *Id*. ¶ 115. Plaintiffs further allege that the state statute requires the Supervisor to notify the voter of the Supervisor's final determination. *Id*. Finally, Plaintiffs allege that the "Supervisors are not following these procedures"—*i.e.*, the state-law procedures—or "notifying voters subject to this review process"—*i.e.*, the state-law process. *Id*. ¶ 116. The amended complaint further alleges that the Supervisors are "failing to comply with their

obligations under Florida Statutes section 98.075 and 98.0751 to notify people with prior felony convictions who are not eligible to register to vote, or who are improperly registered to vote." *Id*. ¶ 192.g.[2] And the practical relief that Plaintiffs seek is an injunction that orders compliance with Florida law. Plaintiffs ask the Court to order Defendants to "make findings regarding the eligibility of each such registered voter consistent with Florida Statutes Section 98.075(5), and inform each such voter of the result of the review performed pursuant to Florida Statutes Section 98.075(7)." *Id*. at 75. Likewise, as to individuals who register to vote after the date of this Court's order, Plaintiffs ask the Court to order Defendants to "follow the procedures set forth in Florida Statutes Sections 98.075(5), 98.075(7) and 98.0751." *Id*.

*The State-Level Defendants*. As to the state-level Defendants, Plaintiffs allege that Secretary Byrd and the Florida Department of State aren't following state law, ECF No. 9 ¶ 86, and are taking too long to issue advisory opinions, *id*. ¶ 90. They allege that the Department of Corrections and the Commission on Offender Review are failing to abide by their duties under Florida law to give felons information about outstanding financial conditions imposed as part of the criminal sentence. *Id*. ¶¶ 95–96, 98. They allege that Governor DeSantis and Secretary Byrd are "failing to ensure that the Florida executive branch meets its obligations under Florida Statutes Sections 98.075, 98.0751, and 106.23," *id*. ¶ 192—statutes that address eligibility determinations and advisory opinions. And they seek an injunction compelling compliance "with Florida Statutes Section 98.075(5)," which establishes the Secretary of State's obligations with respect to eligibility reviews of registered voters, and

---

[2] As of July 1, 2023, the Supervisors also receive weekly information from the Clerks in their respective counties to identify registered voters who were convicted of felonies during the preceding week, and whose voting rights have not been restored. §§ 98.075(5)(b), 98.093(3)(c), Fla. Stat. If the Supervisor determines that the information provided by the Clerk is "credible and reliable," then the Supervisor follows the statutory procedures for the voter's removal from the registration rolls. *Id*. § 98.075(5)(b), (7). Because the amended complaint contains no allegations regarding this weekly flow of information from the Clerks, that process is not at issue in this case.

ordering Defendants to "follow the procedures set forth in Florida Statutes Sections 98.075(5), 98.075(7) and 98.0751." *Id.*

Plaintiffs also allege that state law requires the Secretary of Corrections and Commissioners of the Florida Commission on Offender Review to provide felons with accurate information about their outstanding financial obligations. ECF No. 9 ¶¶ 95–100 & nn.71–73 (citing Fla. Stat. §§ 940.061, 944.705(7)(a), 948.041). Plaintiffs allege that these Defendants "fail to meet these obligations," *id.* ¶ 98, and ask this Court to enforce the obligations that Plaintiffs claim state law imposes, *id* at 69–70.

As in *Schrenko* and *S&M Brands*, state law establishes the obligations that these claims seek to enforce, and the requested relief even cites the state statutes that Plaintiffs ask this Court to enforce. While Plaintiffs label their claims as federal statutory and constitutional claims, labels cannot obscure the gravamen of their claims, which allege violations of state law. Here, as in *S&M Brands*, "conclusory allegations that the same conduct that violates state law also violates the U.S. Constitution will not boost the claim over the sovereign-immunity bar." 925 F.3d at 1204. Consistent with *Schrenko* and *S&M Brands*, this Court should guard against circumventions of *Pennhurst*, safeguard the limits that sovereign immunity places on this Court's jurisdiction, and dismiss Plaintiffs' *de-facto* state-law claims.

**B.    The Supervisors Are Entitled to Sovereign Immunity.**

Although sovereign immunity "generally applies only to *state* officials, not *county* officials," it shields county officials who have been "enlisted to carry out state policy." *Schultz v. Alabama*, 42 F.4th 1298, 1314 (11th Cir. 2022) (emphases in original). That is the case here. The Florida Legislature establishes Florida's election laws. The Florida Election Code, enacted by the Legislature, prescribes in detail the duties of the Supervisors. *See* Fla. Stat. Chs. 97–106. In fact, the Legislature has expressly preempted the field of election regulation to the State and left no authority to counties to establish their own election regulations. § 97.0115, Fla. Stat.; *Orange Cnty. v. Singh*, 268 So. 3d 668, 674 (Fla.

2019) (concluding that the Florida Election Code preempted a county ordinance that required county constitutional officers to be elected on a non-partisan basis). The Supervisors therefore carry out state policy enacted by the Legislature, not county policy established by boards of county commissioners.

More specifically, to determine whether a county official is entitled to the protections afforded by state sovereign immunity, the Eleventh Circuit asks "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (en banc).

The first two elements strongly favor immunity. While the Supervisors are county officers in the sense that their authority is geographically limited and each is elected by their own county's voters, their office is not a subdivision of the county or the board of county commissioners, but a separate and independent constitutional office. Fla. Const. art. VIII, § 1(d); *see also Demings v. Orange Cnty. Citizens Rev. Bd.*, 15 So. 3d 604, 606 (Fla. 5th DCA 2009) ("Additionally, under Florida's constitution, certain responsibilities of local governance are separately entrusted to independent constitutional officers who, at least in non-charter counties, are not accountable to the county's governing board, but derive their power directly from the state."). Supervisors derive their duties and powers from the State through the Florida Election Code—not from the county—and the "essential governmental nature" of their office is to administer state-regulated elections and perform duties assigned by the State. *Id*. at 1319. In these respects, Supervisors resemble the sheriff in *Austin v. Glynn County*, 80 F.4th 1342, 1347–49 (11th Cir. 2023), where the first two elements of *Manders* favored an assertion of immunity.

Moreover, the specific function at issue here—the provision of notice to registered voters with prior felony convictions—is wholly controlled by the State. That function is part of a broader process established by the Legislature to review voter-registration records and remove ineligible voters. *See*

Fla. Stat. § 98.075. That process requires the Florida Department of State to identify individuals with prior felony convictions and to make initial determinations of potential ineligibility. *Id*. § 98.075(5). It then requires the Supervisor to provide notice of potential ineligibility to the voter, to make a final determination of eligibility, and to notify the voter of the final determination. *Id*. § 98.075(7)(a). All of these functions are established and regulated by the State—not the board of county commissioners. And of course, the State—not the county—establishes the eligibility criteria that Supervisors apply in determining whether an individual is eligible to vote. Fla. Const. art. VI, § 4; Fla. Stat. § 97.041(2)(b).

While the county provides the funds in the Supervisor's budget, that fact is not dispositive of the third element of the *Manders* standard. *Pellitteri v. Prine*, 776 F.3d 777, 782 (11th Cir. 2015). It is the State that requires counties to establish a budget for the Supervisors and establishes the framework for the adoption of the Supervisors' budgets. Fla. Stat. §§ 129.201–.202. The State also regulates the compensation of Supervisors of Elections, *id*. § 145.09, and guarantees the Supervisors' independence from counties in personnel decisions and in the purchase of supplies and equipment, *id*. § 129.202(2).

Finally, while the State is not responsible for judgments against the Supervisors, this element is "not necessarily dispositive in any given case." *Pellitteri,* 776 F.3d at 783 n.2. In fact, "the presence of a state treasury drain is likely sufficient but certainly not necessary for a finding of immunity." *Id*. That is so because the chief purpose of sovereign immunity is to protect the dignity and integrity of States, not their checkbooks. *Manders*, 338 F.3d at 1327–28. And a "State's 'integrity' is not limited to who foots the bill." *Id*. at 1328. Moreover, in this case, it is not exposure to money damages that renders *Ex Parte Young* inapplicable (Plaintiffs do not seek money damages), but rather Plaintiffs' attempts to enforce state law. *See Lake Country Ests.*, *Inc. v. Tahoe Reg'l Plan. Agency*, 440 U.S. 391, 400–01 (1979) (noting that sovereign immunity has sometimes been extended "to protect the state treasury from liability"). The fourth factor is therefore of little or no moment here.

15

Because the Supervisors of Elections carry out state policy under state control and regulation, they are entitled to sovereign immunity with respect to the specific function at issue in this litigation.

### C.   Six of the State-Level Defendants Should Be Dismissed Because They Are Not Appropriate *Ex Parte Young* Defendants.

At the very least, this Court should dismiss Governor DeSantis, Secretary Dixon, Commissioner Glass, and the Commissioners of Offender Review (Coonrod, Davison, Wyant) because they are not the appropriate *Ex Parte Young* Defendants.

*Ex Parte Young* serves as an exception to the State's Eleventh Amendment sovereign immunity. Under this exception, "[a] state official is subject to suit in his official capacity when his office imbues him with the responsibility to enforce the law or laws at issue in the suit." *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011). "[A] state officer, in order to be an appropriate defendant, must, at a minimum, have some connection with the enforcement of the provision at issue," *Osterback v. Scott*, 782 F. App'x 856, 859 (11th Cir. 2019) (citations omitted), "such that an injunction prohibiting enforcement would be effectual" against that defendant, *Support Working Animals*, *Inc. v. Governor of Fla.*, 8 F.4th 1198, 1201 (11th Cir. 2021). Where the Governor is sued, his general executive authority to enforce state law and oversee the executive branch "is *insufficient* to make him the proper party." *Harris v. Bush*, 106 F. Supp. 2d 1272, 1276–77 (N.D. Fla. 2000) (collecting cases) (emphasis added); *see also Women's Emergency Network v. Bush*, 323 F.3d 937, 949 (11th Cir. 2003) ("A governor's 'general executive power' is not a basis for jurisdiction in most circumstances."); *Osterback*, 782 F. App'x at 859 ("the Governor's constitutional and statutory authority to enforce the law and oversee the executive branch do not make him a proper defendant under *Ex Parte Young*," nor does his "partial responsibility for administering a challenged statute"). And state officials do not become proper defendants simply by advocating for challenged legislation. *Common Cause Fla. v. DeSantis*, No. 4:22-cv-00109-AW-MAF, 2022 WL 19978293, at *3 (N.D. Fla. Nov. 8, 2022) ("The lower federal

courts have consistently held or recognized that governors cannot be sued under *Ex Parte Young* just because they have . . . publicly endorse[d] and defend[ed] the challenged scheme."); *see also Disability Rts. S.C. v. McMaster*, 24 F.4th 893, 901 (4th Cir. 2022) (holding governor was not a proper defendant in a challenge to law for which he "publicly advocated" because he did not enforce it).

The relief sought in Plaintiffs' amended complaint is an injunction directing compliance with Sections 98.075(5), (7), and 98.0751 of the Florida Statutes. Those provisions concern, to varying degrees, the Department of State (Secretary Byrd's Office), the Clerks, and the Supervisors. Even if *Pennhurst* didn't serve as a bar—and it very much does—the *Ex Parte Young* exception still bars a claim against Governor DeSantis, Secretary Dixon, Commissioner Glass, Commissioner Coonrod, Commissioner Davison, and Commissioner Wyant. Plaintiffs sue the Governor because of his broad supervisory powers, ECF No. 9 ¶ 42, which isn't enough, and the allegations concerning the others, such as they are, don't point to the enforcement of any particular provision. *See generally* ECF No. 9.[3]

Thus, this Court should dismiss Governor DeSantis, Secretary Dixon, Commissioner Glass, and the Commissioners of the Commission on Offender Review (Coonrod, Davison, Wyant).

## III.   THE AMENDED COMPLAINT IS NOT SHORT AND CONCISE.

The federal rules mandate brevity in pleading. The statement of a claim must be "short," Fed. R. Civ. P. 8(a)(2), and each allegation "must be simple, concise, and direct," Fed. R. Civ. P. 8(d)(1). "The purpose of the rule is to eliminate prolixity in pleading and to achieve brevity, simplicity, and

---

[3] In fact, the Governor does not even oversee FDLE—the Cabinet does. *See* Fla. Stat. § 20.201, ("There is created a Department of Law Enforcement. The head of the department is the Governor *and* Cabinet." (emphasis added)). Nor does he have any control over the Office of Statewide Prosecution. *See* Fla. Stat. § 16.56(1).

clarity." *Knox v. First Sec. Bank of Utah*, 196 F.2d 112, 117 (10th Cir. 1952). The amended complaint egregiously violates Rule 8.

The amended complaint spans 77 pages. It contains nearly 22,000 words—about 2,000 more than Shakespeare's *Julius Caesar*—145 footnotes, and 203 rambling and repetitious paragraphs. It needlessly references dozens of news articles and recites redundant and extraneous information with excruciating particularity. Its factual detail is better suited to post-trial proposed findings of fact than to a pleading.

"Only through superhuman patience, effort, and insight, could any attorney review the allegations of the Complaint and make paragraph-by-paragraph responses." *Mendez v. Draham*, 182 F. Supp. 2d 430, 433 (D.N.J. 2002). This "places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (internal marks omitted)). "District courts should not have to read and decipher tomes disguised as pleadings." *Lindell v. Houser*, 442 F.3d 1033, 1035 n.1 (7th Cir. 2006); *accord Cafasso*, *U.S. ex rel. v. Gen. Dynamics C4 Sys.*, *Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011) ("Our district courts are busy enough without having to penetrate a tome approaching the magnitude of *War and Peace* to discern a plaintiff's claims and allegations."). Nor should Defendants—all of whom are public officials who must dedicate significant resources to this time-consuming task.

This Court has inherent authority to dismiss a complaint for violation of Rule 8's "shortness" requirement. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). Other courts have stricken or dismissed far less loquacious complaints. *See Agnew v. Moody*, 330 F.2d 868, 870 (9th Cir. 1964) (55 pages); *Smith v. Residential Cap.*, *LLC*, No. 1:14-cv-00622, 2014 WL 1767821, at *2 (N.D. Ga. May 2, 2014) (60 pages and 130 paragraphs); *Mutuelle Generale Francaise*

*Vie v. Life Assur. Co. of Pa.*, 688 F. Supp. 386, 391 (N.D. Ill. 1988) (42 pages and 162 paragraphs).

Plaintiffs' statement of their claims is long—not short—and their allegations are prolix—not concise. Rather than require 142 public-official defendants to formulate answers to a needlessly long and meandering pleading, this Court should dismiss Plaintiffs' amended complaint.

## IV.   EACH OF THE AMENDED COMPLAINT'S FOUR COUNTS FAILS TO STATE A CLAIM.

### A.   Plaintiffs Fail to State a Claim Under § 11(b) of the Voting Rights Act.

Plaintiffs' merits arguments fail as well. Their first claim for relief is under § 11(b) of the Voting Rights Act. That provision provides as follows:

> No person, whether acting under color of law or otherwise, shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or attempting to vote, or intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for urging or aiding any person to vote or attempt to vote . . . .

52 U.S.C. § 10307(b). Regardless of whether Plaintiffs' threadbare allegation of intimidation, threats, and coercion are sufficient under the pleading rules, there simply is no private right to enforce this particular provision of the Voting Rights Act.

To be sure, there is no binding authority on the issue either; however, the Northern District of Georgia's recent decision in *Andrews v. D'Souza* is instructive. No. 1:22-cv-04259, 2023 WL 6456517 (N.D. Ga. Sept. 30, 2023). *Andrews* concluded that there's no private cause of action under § 11(b). *Id.* at *28–30.

First, the *Andrews* court recognized that § 11(b) itself "sets forth no express cause of action for private parties to sue to enforce its protections." *Id.* at *28. So, the question becomes whether there's an implied cause of action under the provision.

Second, to determine whether there's an implied cause of action, courts must work through the Supreme Court's decision in *Alexander v. Sandoval*, 532 U.S. 275 (2001). Under *Sandoval*, an

implied cause of action exists when the statute contains *both* (1) rights-creating language and (2) language demonstrating congressional intent to provide a private remedy to enforce that right. *Id.* at 286–88. There's rights-creating language because § 11(b) "defines a class of persons—any person voting, attempting to vote, or aiding anyone in voting or attempting to vote (among others)—and their right to not be intimidated, threatened, or coerced." 2023 WL 6456517, at *28. But there's no "statutory language demonstrating congressional intent to provide a private remedy for a violation of those rights." *Id.* at *30. By contrast, as the *Andrews* court explained, other sections of the Voting Rights Act, namely § 3 and § 14, include specific language tying the provisions to enforcement of the guarantees of the Fourteenth and Fifteenth Amendments to the U.S. Constitution and allowing private litigants to enforce those constitutional guarantees. *Id.* at *29–30. "Section 11(b) stems from the Elections Clause rather than the 14th or 15th Amendments," and there's "no identifiable link" with "statutory language demonstrating congressional intent to provide a private remedy for a violation of [] rights" that stem from the Elections Clause. *Id.*

Thus, without a private cause of action, Plaintiffs fail to state a claim for relief under § 11(b) of the Voting Rights Act.

### B.     Plaintiffs Fail to State a Claim Under the Equal Protection Clause.

Plaintiffs' second claim arises under the Equal Protection Clause of the Fourteenth Amendment. Plaintiffs allege that county-by-county inconsistencies in how felons are treated violates the Constitution. The problem with this claim is twofold.

First, Plaintiffs have not pled discriminatory intent. "Proof of discriminatory intent or purpose is a necessary prerequisite to *any* Equal Protection Clause claim." *Parks v. City of Warner Robins*, 43 F.3d 609, 616 (11th Cir. 1995). In other words, discriminatory intent is a necessary element of Plaintiffs' claim. Plaintiffs must plead and then prove that Defendants acted "'because of,' not merely 'in spite of,'" the discriminatory effects of their actions on Plaintiffs. *Pers. Adm'r of Mass. v. Feeney*, 442

U.S. 256, 279 (1979); *see also Washington v. Davis*, 426 U.S. 229, 242 (1976). No such allegation of intent appears in Plaintiffs' 22,000-word pleading. That's fatal.

Second, to the extent Plaintiffs are asking for an identical, county-by-county process for calculating, tracking, and then notifying felons of their outstanding legal financial obligations, the Equal Protection Clause simply doesn't require that. Variations from county-to-county are consistent with equal protection, even in an election-related matter, because they account for different circumstances in those jurisdictions. The Eleventh Circuit said so in *Wexler v. Anderson*, 452 F.3d 1226, 1233 (11th Cir. 2006). So did the Tenth Circuit in *Citizen Center v. Gessler*, 770 F.3d 900, 917–18 (10th Cir. 2014).

Thus, for either of these two reasons, Plaintiffs fail to state a claim for relief under the Equal Protection Clause of the Fourteenth Amendment.

### C.   Plaintiffs Fail to State an Undue-Burden Claim Under the First and Fourteenth Amendments.

Plaintiffs' third claim is for an undue burden on the right to vote under the First and Fourteenth Amendments to the U.S. Constitution. The *Anderson/Burdick* test is used to assess such claims. It requires courts to weigh the burden a state regulation imposes on the right to vote against the State's proffered justifications for the burden. *Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983). Severe burdens on the right to vote must be narrowly tailored to serve a compelling interest. *Burdick*, 504 U.S. at 434. Reasonable, non-discriminatory regulations that impose minimal burdens need only a rational basis to support them. *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 191 (2008).

But the *Anderson/Burdick* test simply doesn't apply here because this case concerns felon re-enfranchisement. "Every court to have analyzed" felon re-enfranchisement regimes—including the Eleventh Circuit that analyzed the very scheme being challenged—"has reached the same conclusion:

felons do not have a fundamental right to vote." *Jones II*, 975 F.3d at 1053. Because the right to vote

is not implicated here, and the *Anderson/Burdick* test applies only when "evaluat[ing] a law respecting

the right to vote," it follows that Plaintiffs have no claim of undue burden on the right to vote. *Craw-*

*ford*, 553 U.S. at 204 (Scalia, J., concurring); *see also Jacobson*, 974 F.3d at 1262 (refusing to apply

*Anderson/Burdick* test "because the statute does not burden the right to vote").

### D.   Plaintiffs Fail to State an Equitable Accounting Claim Under State Law.

Finally, Plaintiffs fail to state an equitable accounting claim under Florida law. The problem

here is an unbroken line of Florida cases that requires a contractual or fiduciary relationship between

the person seeking an accounting and the person from whom the accounting is sought. The Florida

Supreme Court said in 1926 that "[c]ourts of equity take cognizance of cases in which contract de-

mands between litigants involve extensive, mutual, or complicated accounts," thereby requiring an

accounting. *Campbell v. Knight*, 109 So. 577, 579 (Fla. 1929). In 1931, the Florida Supreme Court

referred to a "right to an accounting in equity" when a "fiduciary relationship such as that of trustee,

agent, executor, etc." exists between the parties. *Royal Indem. Co. v. Knott*, 136 So. 474, 478 (Fla.

1931). In 1939, the Florida Supreme Court discussed an accounting when "contract demands" require

it. *R.O. Holton & Co. v. Hull*, 192 So. 229, 231 (Fla. 1939).

Florida's intermediate appellate courts have said much the same over the years. Florida's

Third District, for example, held that "equity" will take cognizance of cases where the *contract* de-

mands between litigants involve extensive or complicated accounts." *F.A. Chastain Constr.*, *Inc. v.*

*Pratt*, 146 So. 2d 910, 913 (Fla. 3d DCA 1962) (emphasis added); *see also Bankers Trust Realty*, *Inc.*

*v. Kluger*, 672 So. 2d 897, 898 (Fla. 3d DCA 1996) (referencing contract demands).

The problem for Plaintiffs is this: there is no contractual or fiduciary relationship between

FRRC or any felon—named or otherwise—and any of the 142 Defendants. That means that Plaintiffs

can't pursue a claim for equitable accounting under Florida law.

## V.   PLAINTIFFS' CLAIMS AGAINST THE CLERKS SHOULD BE DISMISSED.

Plaintiffs complain of alleged disparate treatment regarding determination of voter eligibility in different counties, asserting violations of the First and Fourteenth Amendments of the federal Constitution against the Clerks and others.  Plaintiffs' specific allegations against Clerks regard reporting of LFOs (as that term is used in the amended complaint) following enactment of Amendment 4 and SB7066.  But Clerks' only role regarding voting rights determinations by the Department of State and Supervisors of Elections consists of reporting what they know of LFO accounts within their 67 individual jurisdictions.  Where the FRRC, its alleged members, or other Plaintiffs do not inform Clerks of payments of LFOs, Clerks have no way of updating their accounts to reflect such payments.  Plaintiffs expressly admit as much numerous times in the amended complaint.  The particular relief requested by Plaintiffs in the form of a statewide database is also beyond the limited powers of the Clerks to provide.  And the Eleventh Circuit has already expressly ruled that the difficulties that may be inherent in ascertaining LFOs do not violate the Constitution, and that Florida's established procedures are "more than adequate" to satisfy constitutional muster.

The Clerks show below (1) their duties and powers, and their limitations; (2) their lack of a role in determining voter eligibility, and the constitutional soundness of existing procedures; (3) their inability to create a statewide database; (4) Plaintiffs' lack of Article III standing; and (5) Plaintiffs' failure to exhaust remedies, and the availability of ready redress in administrative or judicial proceedings.

### A.  Clerks' Duties and Powers Are Prescribed and Limited by Law.

#### 1.  Clerks Are Constitutional Officers Whose Powers Are Limited by Law and to Their Respective Counties.

Article V, Section 16 of the Florida Constitution establishes the office of the Clerk of the Circuit Courts: "There shall be in each county a clerk of the circuit court who shall be selected pursuant to the provisions of Article VIII section 1."  The Clerks are thus one of five elected "Constitutional Officers" in a county.[4]  The Clerks exercise sovereign power over those duties assigned to them by the Florida Constitution and by the Florida Statutes (or by county charter, if any), but their duties, responsibilities, and abilities are limited to the respective counties in which they are elected.  Clerks have no power or authority to exceed those prescriptions.

#### 2.  Clerks Are Keepers of Court Records.

Article V, Section 16 of the Florida Constitution defines the position of the Clerk as also serving as Clerk of the Circuit Court.  In that capacity, the Clerks maintain court records, including felony sentencing judgments.  But Plaintiffs conflate that role with involvement in the determination of voting rights under section 98.0751, Florida Statutes.[5]  Clerks are simply not involved in that determination, other than to the extent records kept by the Clerks are pertinent to that determination by other Defendants.  In fact, with respect to keeping court records, Clerks' roles are purely ministerial, devoid of discretion, and Clerks cannot challenge the form of sentences or LFOs or other judicial acts.  *See Corbin v. State ex rel. Slaughter*, 324 So. 2d 203, 204 (Fla. 1st DCA 1975); *cf. The Florida Bar*, 398 So. 2d 446 (Fla. 1981) (court has inherent and exclusive constitutional authority over its agencies who act in its behalf).  Clerks are not parties to the underlying criminal cases, and have no standing with

---

[4] The other four constitutional officers are the Sheriff, Tax Collector, Property Appraiser, and Supervisor of Elections. Art. VIII, Sec. 1(d), Fla. Const.

[5] All references to "section" or "§" in this Part V of Defendants' Motion to Dismiss are to the Florida Statutes, unless otherwise indicated.

regard to the sentencing process by the courts. Even the Florida Legislature has no supervisory authority over the Clerks with respect to their role as an arm of the court. *Times Publ'g Co. v. Ake*, 645 So. 3d 1003, 1005 (Fla. 2d DCA 1994).

**B.    Clerks Do Not Determine LFOs for Purposes of Restoration of Voting Rights.**

**1.    Clerks Maintain and Report Accounts.**

The heart of Plaintiffs' claims against the Clerks is summarized in Plaintiffs' mistaken definition of Clerks in paragraph 48 of the amended complaint, which alleges that Clerks "are responsible for computation of LFOs, crediting payments towards LFOs, and informing people with prior felony convictions, upon request, of the LFOs they owe." *See* Amended Complaint, ¶ 48; *see also id.*, ¶¶ 176, 184, and 196 (incorporating paragraph 48 into Claims 2-4). Plaintiffs offer no citation for that allegation, which is unsurprising since it is inaccurate. Clerks are not "responsible" for calculating Plaintiffs' debts. Instead, Clerks are responsible for maintenance and reporting of account records as prescribed by law.

First, the Florida Constitution provides that Clerks have responsibility for collecting and accounting for "fines and forfeitures":

> All fines and forfeitures arising from offenses tried in the county court shall be collected, and accounted for by clerk of the court, and deposited in a special trust account….

Fla. Const. art. V, § 20(c)(8). Second, section 28.246(2), Florida Statutes, provides that Clerks:

> shall establish and maintain a system of accounts receivable for court-related fees, charges, and costs.

Finally, of most concern to Plaintiffs, is the post-Amendment 4/SB 7066 (as those terms are used in the amended complaint) statutory provision in section 98.093, requiring that Clerks report information about their respective counties' prior week's felony convictions. That information includes:

> any financial obligations for court costs, fees, and fines [and]…

> The amounts of all financial obligations, including restitution and court costs, fees, and fines, and, **if known**, the amount of financial obligations not yet satisfied.

§ 98.093(3)(c)1.–2. (emphasis added).

### 2. Clerks Do Not Determine Voter Eligibility Under Amendment 4/SB 7066.

*None* of those provisions requires or allows Clerks to inform *anyone*—government actor or felon—whether a person has a right to register to vote, including with respect to LFOs. None of those provisions bestows upon Clerks any authority or discretion to determine LFOs, or to grant restoration of voting rights. Instead, the Legislature created through SB 7066 a detailed procedure by which the Department of State and the Supervisors determine an individual's eligibility. Section 98.075 provides that the Department and the Supervisors "shall" use information provided by the Clerks and others[6] as part of that determination, following the procedures of section 98.075(7). The information must be reviewed by the Department of State, and if found "credible and reliable"—not dispositive— forward it to the local Supervisor if indicative of "potential" ineligibility to vote. § 98.075(5). At that point, the Supervisors must follow the detailed procedures of section 98.075(7), which provides for notice to and opportunity to be heard for the potentially ineligible voter. Those procedures do not involve the Clerks—at all.

The Legislature also created new Florida Statute section 98.0751, titled "**Restoration of voting rights; termination of ineligibility subsequent to a felony conviction.**" (Emphasis in original.) Section 98.0751(3)(a) reiterates that the Department of State "shall obtain and review information pursuant to s. 98.075(5) related to a person who registers to vote and make an initial determination on whether such information is credible and reliable regarding whether the person is eligible pursuant to

---

[6] *I.e.*, the Board of Executive Clemency, the Department of Corrections, the Department of Law Enforcement, or a United States Attorney's Office. § 98.075(5)(a).

s. 4, Art. VI of the State Constitution and this section." Under section 98.075, Clerks are but one of at least five reporters of such information. Then, section 98.0751(3)(b) reiterates that the "local supervisor of elections shall verify and make a final determination pursuant to s. 98.075 regarding whether the person who registers to vote is eligible pursuant to s. 4, Art. VI of the State Constitution and this section."

The Clerks have no role in the operation of section 98.0751 except to report what their systems show. In fact, section 98.0751 does not mention Clerks at all. Thus, the statutory procedures leave Clerks with no authority, discretion, or decision-making role in determining voter eligibility.

### 3.    Clerks Report What They Know.

Plaintiffs complain that Clerks' records may be inaccurate, in Plaintiffs' opinion, based on their apparent but mistaken—as a matter of law—belief that the Department of Corrections or others report dispositive numbers. *See, e.g.*, Amended Complaint, ¶¶ 27 *et seq.* (a Plaintiff asserting that he had paid all of his LFOs because his probation officer and others told him so, or because his probation was terminated early). No Florida law provides that probation officers or election officials' staff maintain accounts of court-awarded financial penalties. Agencies may maintain accounts of moneys owed to them specifically, and felons may make payments to them directly, or directly to their victims (i.e., restitution). Felons may but are not required by law to ensure that such payments are made known to Clerks.

But Clerks can only account for what is paid or reported to Clerks. As the constitutional and statutory provisions above show, Clerks are not, contrary to Plaintiffs' allegation in paragraph 48 of the amended complaint, "responsible" for providing an accurate balance of LFOs to would-be voters. Clerks keep records of what is reported first by the courts as LFOs, and then by anyone who makes a payment to the Clerks or who shows the Clerks evidence of payments to others. Nothing more. Felons are not required to make all payments through the Clerks, or to report payments to the Clerks.

Indeed, Plaintiffs admit multiple times in the amended complaint that the numbers provided by Clerks may be inaccurate, through no fault of the Clerks (for example):

> 98. . . . the Department of Corrections does not inform Clerks of Court of payments made during incarceration . . . .

> 101. . . . County Clerks still lack the necessary information . . . .

> 103. County Clerks' offices, however, lack the expertise and access to information to help people with prior felony convictions determine their LFOs . . . .

In a dispositive admission, Plaintiffs acknowledge the impossibility of their own prior allegation (in paragraph 48) that Clerks "are responsible for computation of LFOs, crediting payments towards LFOs, and informing people with prior felony convictions, upon request, of the LFOs owed." Paragraph 106 admits the literal *impossibility* of that allegation (italics added):

> 106. . . . County Clerks do not have *and cannot* track information on payments made to recipients other than the County Clerk, such as payments made to the Department of Corrections.

In fact, other than fees and fines as noted in the constitutional provision cited above, Clerks need only—and can only—report what they know.  Plaintiffs admit that acts of payment to the Department of Corrections and others may not be shared with Clerks, and that is true, such that Clerks are not aware of such payments.  The Department of Corrections, of course, is another entity that reports directly to the Department of State under section 98.075(5)(a).  Restitution payments, also, are not ordinarily shared with Clerks, as Plaintiffs admit and as evidenced by the little-used statute that allows a court to change that default status and order instead that restitution payments be made to Clerks (whether by a felon directly or via the Department of Corrections).  *See* § 775.089(11)(a) ("The court may order the clerk of the court to collect and dispense restitution payments in any case.").

Plaintiffs further admit that Clerks may not have all information about payments when they discuss the Voting Rights Work Group, which was established by the Florida Legislature in SB 7066.  *See* Ch. 2019-162, Laws of Florida, § 33.  Plaintiffs allege:

123. While the Work Group recommended that "restitution payments, and all other fines, fees, and costs, be made through the Clerks of Court to allow for tracking," this system still does not exist.

That's an incontrovertible fact, and another dispositive admission that Clerks, while complying with law, may not have records to satisfy Plaintiffs' desires.

### 4.      Plaintiffs Fail to Allege a Constitutional Violation.

Essentially, Amendment 4/SB7066 requires a felon seeking re-enfranchisement to do his or her homework and pay LFOs, perhaps in multiple counties that may have different forms of sentences, judgments, and awardable costs.  Such homework has already been ruled constitutional by the Eleventh Circuit.  *Jones II*, 975 F.3d at 1029.

The affirmative obligation of a felon to learn of and pay their LFOs is an express requirement of Florida law, and is not specific to voting registration.  Section 28.246(4)(b) puts the onus on the felon, upon release from custody, to contact the Clerks to pay or arrange for a payment plan for their LFOs:

> It is the responsibility of an individual who is released from incarceration and has outstanding court obligations to contact the clerk within 30 days after release to pay fees, service charges, court costs, and fines in full, or to apply for enrollment in a payment plan.

*And see* § 775.083(3) ("Unless otherwise designated by the court, a person who has been ordered to pay court obligations under this section shall immediately contact the clerk to pay fines, fees, service charges, and court costs in full or to apply for enrollment in a payment plan pursuant to s. 28.246(4).").

And, as a threshold matter of constitutional law: the substantive rights established under Amendment 4/SB7066 are not required by the federal Constitution.  As discussed in *Jones II*, 975 F.3d at 1029, the federal Constitution allows disenfranchisement of felons—period.  As a threshold matter of Florida constitutional law, Amendment 4/SB7066 grants substantive rights, subject to remedial procedures, and does not state a requirement that Clerks become "responsible for" chasing

down every possible payment a felon may make that could affect their LFO balance (or use a uniform statewide database of LFOs).

Plaintiffs' ultimate complaint is that it is sometimes[7] difficult to determine whether a felon has completed the financial terms of a sentence. If that challenge sounds familiar to the Court, it is because the Eleventh Circuit in *Jones II* squarely faced it:

> The felons' real complaint is that it is sometimes difficult to determine whether a felon has completed the financial terms of his sentence. They offer examples of felons who cannot locate their criminal judgments, cannot determine which financial obligations were imposed for felony as opposed to misdemeanor offenses, or do not know how much they have paid toward their financial obligations. But these concerns arise not from a vague law but from factual circumstances that sometimes make it difficult to determine whether an incriminating fact exists.

*Id*. at 1047 (citing *United States v. Williams*, 553 U.S. 285, 306 (2008)). The Eleventh Circuit expressly determined that the current framework—the very same framework challenged by Plaintiffs—*satisfies* the Due Process and Equal Protection Clauses.

That Eleventh Circuit went on to address the supposed constitutional deprivation in finding complex accountings to be complex:

> A fundamental confusion in this litigation has been the notion that the Due Process Clause somehow makes Florida responsible not only for giving felons notice of the standards that determine their eligibility to vote but also for locating and providing felons with the facts necessary to determine whether they have completed their financial terms of sentence. The Due Process Clause imposes no such obligation. States are constitutionally entitled to set legitimate voter qualifications through laws of general application and requires voters to comply with those laws through their own efforts. So long as a State provides adequate procedures to challenge individual determinations of ineligibility—as Florida does—due process requires nothing more.

*Id*. at 1049.

---

[7] Of the 67 Clerks, Plaintiffs plead specific factual allegations against only nine.  *See, e.g.*, Amended Complaint, ¶¶ 110, 111, and 116.

Florida's voting restoration laws are of general application.  They permissively require voters—felons who are best positioned to know their sentences, perhaps in multiple cases and multiple jurisdictions—to comply with those laws through primarily their own efforts.  They provide "more than adequate" procedures to challenge ineligibility.  *Id.* (discussed below).  Thus, as a matter of law, Florida's SB 7066 procedures do not infringe upon Plaintiffs' constitutional rights.

### C.    Clerks Cannot Create a Uniform, Statewide Database.

Plaintiffs repeatedly assert that a uniform, statewide database should exist specifically for accounting for LFOs that the Department of State and Supervisors would use for determination of voter eligibility.  *See, e.g.*, Amended Complaint, ¶ 103 (". . . Florida has no centralized database that reflects how much an individual owes in fines and court fees . . . ."); ¶¶ 105–109 (alleging different local recordkeeping practices).  In their Prayer for Relief, Plaintiffs ask for an injunction ordering Defendants, including Clerks, to "Establish a reliable state-wide database."  Amended Complaint at 74–75.

Plaintiffs point to the Voting Rights Work Group, which was established by the Florida Legislature as part of SB 7066.  *See* 2019-162, Laws of Florida, § 33.  As Plaintiffs note, the Work Group (which included Clerks) recommended a statewide database be created.  *See* Amended Complaint, ¶¶ 117–124 (noting the Work Group's recommendations for creation of a centralized database and for Clerks' systems to be "enhanced" to meet such needs).

But, as the Plaintiffs also note, no statewide database has been established.  While section 98.093(3)(c) provides an option to report information to the "Comprehensive Case Information System" (CCIS), that system is based on case types administered by the Florida Supreme Court, *see* § 28.2405, was not created or enabled to handle the current-account balance requirements the Plaintiffs seek, and does nothing to change the fact that the Clerks *still* could only report what is reported to them.  The Work Group was created by the Legislature, and the recommendation was to the Legislature.  Nothing in Plaintiffs' allegations disagrees with the Work Group's acknowledgement that

there is no statewide database available to meet Plaintiffs' alleged needs, and no authority for the Clerks to create one.  By Plaintiffs' own allegations, and by the constitutional and statutory provisions defining the Clerks' powers and duties cited above, it is beyond dispute that the 67 Clerks have no authority or ability to create a statewide database of LFOs for purposes of voting rights determinations.  Such a database would need to allow not only for multi-*jurisdictional* data input, but for multi-*agency* input as well.  Even if Clerks had such powers, they would lack the resources to execute such an unfunded mandate.

In sum, for purposes of this Motion to Dismiss, while a centralized database may be a good idea, the Clerks can neither create it nor make it include information that would cure Plaintiffs' alleged injuries. It would still only record LFO payment information to the extent known to the Clerks.  Therefore, Plaintiffs are unable to obtain the relief they are seeking from the Clerks.

### D.   Available Remedies Are Constitutionally Appropriate and Plaintiffs Have Failed to Exhaust Them.

Plaintiffs' section 1983 claims (the Second and Third Claims for Relief) and equitable accounting claims (the Fourth) should be dismissed as they are utterly vitiated by the Eleventh Circuit's holding that the procedures set forth in Amendment 4/SB7066 are adequate to address any federal constitutional concerns.  In addition, the Amended Complaint makes clear that Plaintiffs have not utilized, much less exhausted, those administrative and judicial remedies.

### 1.   Available Remedies Have Been Ruled Constitutionally Sound.

Florida Statutes provide multiple procedures by which a felon can challenge the correctness of LFO records with a specific purpose of addressing voting eligibility.  First, as noted above, section 98.075(7) provides detailed procedures by which a felon can challenge the accuracy of the information reviewed by the Department of State and Supervisors.  Those procedures include the right to challenge the Supervisor's determination (section 98.075(7)(a)5.), and the "right to request a hearing

for the purpose of determining eligibility." § 98.075(7)(a)2.f. If the felon doesn't like the outcome

of that hearing, an appeal is available. § 98.075(7)(b)5.

And if a felon doesn't want to live with *any* of that, or still fails to arrive at an understood or

agreed amount of LFOs for purposes of restoration of voting rights, section 98.0751 provides a judi-

cial remedy:

> d. For the limited purpose of addressing a plea for relief pursuant to sub-subparagraph
> e. and notwithstanding any other statute, rule, or provision of law, a court may not be
> prohibited from modifying the financial obligations of an original sentence required
> under sub-subparagraph a. or sub-subparagraph b. Such modification shall not in-
> fringe on a defendant's or a victim's rights provided in the United States Constitution
> or the State Constitution.
>
> e. . . . A term required to be completed in accordance with this paragraph shall be
> deemed completed if the court modifies the original sentencing order to no longer
> require completion of such term . . . .

§ 98.0751(2)(a)5.d.–e.

The Eleventh Circuit has opined on these very procedures, unequivocally holding they are

"more than adequate":

> Florida provides registered voters with adequate process before an individual deter-
> mination of ineligibility. Before being removed from the voter registration system,
> voters are entitled to predeprivation notice and a hearing. Fla Stat 98.075(5), (7).
> And any voter who is dissatisfied with the result is entitled to *de novo* review of the
> removal decision in state court. *Id* § 98.0755. These procedures provide more than
> adequate process to guard against erroneous ineligibility determinations.

*Jones II*, 975 F.3d at 1049; *see also McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994) (a proce-

dural due process violation actionable under section 1983 does not occur unless the state refuses to

provide a process sufficient to remedy the supposed deprivation). Each individual Plaintiff, and each

person the FRRC alleges it represents, can (or did) use those procedures, and obtain prompt, local,

and complete redress of their particular concerns.

### 2. Plaintiffs Have Failed to Use, Much Less Exhaust, Those Remedies.

The constitutionally-sound procedures not used by Plaintiffs conclusively show a substantive lack of Equal Protection or Due Process violations. They also show that Plaintiffs have failed to satisfy conditions precedent in the form of exhausting available remedies. Both the administrative and judicial remedies substantively provide for an equitable accounting, since they provide the remedies an equitable accounting could. Yet the amended complaint ignores those procedures by bringing a pendent claim in federal court for equitable accounting on behalf of (according to them) some 1.4 million people (per paragraph 2 of the amended complaint) (or on behalf of 15,000 alleged members).

The Eleventh Circuit discussed exhaustion in a section 1983 context in *Johnson v. Meadows*, 418 F.3d 1152 (11th Cir. 2005) (about the writ of habeas corpus):

> this court has noted that "when a state provides a grievance procedure for its prisoners…an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." *Brown v. Sikes*, 212 F.3d 1205, 1207 (11th Cir. 2000). This court has described seven policy reasons for favoring an exhaustion requirement:
>
> (1) to avoid premature interruption of the administrative process;
>
> (2) to let the agency develop the necessary factual background upon which decisions should be based;
>
> (3) to permit the agency to exercise its discretion or apply its expertise;
>
> (4) to improve the efficiency of the administrative process;
>
> (5) to conserve scarce judicial resources, since the complaining party may be successful in vindicating rights in the administrative process and the courts may never have to intervene;
>
> (6) to give the agency a chance to discover and correct its own errors; and
>
> (7) to avoid the possibility that frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures.

*Johnson*, 418 F.3d at 1156 (citing *Alexander v. Hawk*, 159 F.3d 1321, 1327 (11th Cir. 1998)) (internal quotations omitted).  Voting eligibility after prison is serious; getting out of prison even more serious, but exhaustion nonetheless applies.  The policy reasons cited in *Johnson* are even more applicable here.

### 3.      Plaintiffs' Other Claims for Equitable Relief Must Be Dismissed.

Just as Plaintiffs' claims for an equitable accounting must be dismissed, the same is true for their other claims for equitable relief.  Plaintiffs claim entitlement to not only an equitable accounting, but also to accompanying remedies of disgorgement and unjust enrichment.  Essentially, Plaintiffs allege they would not have paid LFOs that were owed if they were aware that the payment would not specifically restore voting rights.  *See* Amended Complaint at 75.

Such allegations cannot support any kind of equitable relief.  Disgorgement and unjust enrichment are variations on a theme by which a court may undo ill-gotten gains. *See Duty Free World, Inc. v. Miami Perfume Junction, Inc.*, 253 So. 3d 689, 698 (Fla. 3d DCA 2018) ("Disgorgement is an equitable remedy intended to prevent unjust enrichment.") (quoting *SEC v. Monterosso*, 756 F.3d 1326, 1337 (11th Cir. 2014)).  The elements of unjust enrichment are that (1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff.  *Peoples National Bank of Commerce v. First Union National Bank of Florida*, 667 So. 2d 876, 879 (Fla. 3d DCA 1996).  There is nothing "inequitable" in Clerks' acceptance of criminal penalties owed by a felon even if the payments satisfy more than just the LFOs relevant to restoration of voting rights.

**E.    Plaintiffs Lack Article III Standing With Respect to Their Claims Against Clerks.**

Finally, because Clerks simply report payments of LFOs as reported to them and cannot cause or cure Plaintiffs' alleged injuries, Plaintiffs lack Article III standing to bring their claims against Clerks.  Article III standing has three elements:

> (1) "an 'injury in fact' — a harm suffered by the plaintiff that is 'concrete' and 'actual or imminent', not 'conjectural' or 'hypothetical;'"

> (2) "causation — a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant;" and

> (3) "redressability — a likelihood that the requested relief will redress the alleged injury."

*Alabama-Tombigbee Rivers Coalition v. Norton,* 338 F.3d 1244, 1252 (11th Cir. 2003) (quoting *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 102–04 (1998).  "Even when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement . . . the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin,* 422 U.S. 490, 499 (1975).

Plaintiffs admit Clerks' records may not—and in fact "cannot"—reflect all payments Plaintiffs may have made.  As seen above, Plaintiffs admit in (at least) paragraphs 98, 101, 103, and 106 of the amended complaint that Clerks do not possess the information Plaintiffs wish.  Plaintiffs can therefore cite no injury in fact traceable to or caused by Clerks.  Plaintiffs also seek a statewide database, but can show no authority by which Clerks could create such a database.  In fact, the amended complaint cites approvingly the Voting Rights Work Group conclusions that are consistent with that fact.  Because Clerks cannot provide the cure Plaintiffs seek, Plaintiffs fail the element of redressability.

*          *          *

Plaintiffs' numerous complaints with respect to Clerks are philosophical, not legal.  Plaintiffs repeatedly admit that Clerks can only maintain accounts of LFOs to the extent payments are made

known to Clerks, and repeatedly admit that Clerks are not so informed.  And the law is clear that Clerks' only role in the determination of voter eligibility is to report the numbers as known.  Therefore, Plaintiffs cannot hope to make a claim against the Clerks under section 1983 for violation of the First or Fourteenth Amendment, or for an equitable accounting.

Plaintiffs' members are best suited to know what obligations they owe and what they have paid.  They are not entitled to rely on a probation officer's information about a particular charge or early termination of probation condition, skip the entire statutory processes (administrative *and* judicial) by which they could get a dispositive answer, and claim a federal constitutional violation, especially when the Florida Statutes make clear that every person released from custody is to contact the Clerks to pay or make arrangements to pay all of their LFOs.  *See* § 775.083(3).  And if they feel slighted in that process, Plaintiffs have multiple remedies, including a statutory method through the Supervisors of Elections and the Department of State, or a judicial process through the circuit court. The Eleventh Circuit has already ruled that the difficulties of which Plaintiffs complain do not amount to any constitutional violation, and those remedy procedures are "more than adequate" constitutional safeguards.

And Plaintiffs' acknowledgment that Clerks "cannot" provide complete information proves Plaintiffs' alleged injuries are neither caused by nor redressable by the Clerks.  Consequently, Plaintiffs fail to make claims for violation of their rights and fail to satisfy the requirements of Article III standing against the 67 Clerks.  Their Second, Third, and Fourth Claims are due to be dismissed as against the Clerks pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6).

**WHEREFORE**, The Clerks respectfully request all claims against them be dismissed.

## VI.   PLAINTIFFS' CLAIMS AGAINST THE SUPERVISORS SHOULD BE DISMISSED.

To "protect the integrity of the electoral process by ensuring the maintenance of accurate and current voter registration records," the Florida Legislature has established a statutory framework for

the review of voter-registration records and the removal of voters who are ineligible to vote. Fla. Stat. § 98.075(1). As it relates to individuals with prior felony convictions, that process requires the Florida Department of State to make an initial determination of the voter's potential ineligibility and to notify the appropriate Supervisor of Elections. *Id*. § 98.075(5). It then requires the Supervisor to notify the voter and invite information from the voter. *Id*. § 98.075(7)(a)1.–2. The Supervisor must make a final determination of eligibility or ineligibility and notify the voter of the Supervisor's final determination and action, which may include the voter's removal from the registration rolls. *Id*. § 98.075(7)(a)3.–5.

Most of the amended complaint's allegations revolve around the calculation and resolution of legal financial obligations, or LFOs, which must be discharged before the voting rights of individuals with prior felony convictions can be restored. Plaintiffs' allegations against the Supervisors, however, are thin at best. In three paragraphs of the 77-page pleading, Plaintiffs allege in the most perfunctory way that all sixty-seven Supervisors fails to provide voters with the requisite notice of the Supervisor's determination of ineligibility. *Id*. ¶¶ 114–16. Plaintiffs ask this Court to issue an injunction ordering the Supervisors to comply with state law and to provide the notices that state law demands. *Id*. at 69–70.

Contrary to Plaintiffs' unsupported, blanket allegations, the Supervisors do comply with state law. If necessary, at the appropriate time, the Supervisors will move for an award of all attorney's fees incurred to defend against Plaintiffs' factually baseless allegations. *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 420 (1978) (authorizing defendants to recover fees in litigation that has no "factual basis"). At the pleading stage, however, the Supervisors accept (as they must) Plaintiffs' well-pleaded allegations. Still, for multiple reasons, the Court should dismiss Plaintiffs' claims against the Supervisors.

*First*, as explained above, sovereign immunity bars Plaintiffs' claims. *See supra* Part II. But even if it did not, Plaintiffs' claims would fail because Plaintiffs do not allege—as they must under section 1983—that the Supervisors' purported failures are traceable to a policy or custom of deliberate indifference.

*Second*, Plaintiffs' joinder of sixty-seven Supervisors in one action is improper. While Plaintiffs allege that each Supervisor violates the same statutory requirement, that is not enough to support the joinder of all Supervisors in one action. Plaintiffs do not allege concerted action by the Supervisors and therefore fail to allege that the purported omissions arise from the same transaction or occurrence. Indeed, the evidence needed to prove one Supervisor's violation would not begin to prove another's.

*Third*, Plaintiffs' claims against the Supervisors hinge on threadbare allegations that fall well short of federal pleading standards. Plaintiffs merely recite the provisions of section 98.075 and then allege, in the most conclusory way, that the Supervisors do not follow those provisions and provide notice. That generalized and fact-free assertion fails to plead a plausible claim against the Supervisors.

*Fourth*, Plaintiffs' equal-protection claim fails in several ways. Plaintiffs do not allege that the Supervisors provide notice to some voters but not others, and thus do not allege unequal treatment. To the extent Plaintiffs rely on variations between counties, they have not stated a claim against the Supervisors, each of whom is responsible only for equal treatment of similarly situated persons within a single county. Finally, the allegations that support Plaintiffs' equal-protection claim revolve around LFOs, and Plaintiffs do not allege that the Supervisors have any duties or responsibilities as to LFOs.

*Fifth*, the Supervisors have no legal duty under state or federal law, statutory or constitutional, to monitor the voting rights of individuals who are not registered to vote, and, once their voting rights have been restored, to provide those individuals with notice of their right to register to vote. Because

no such obligation exists, the amended complaint should be dismissed to the extent it alleges a failure to provide such notice.

## A. Plaintiffs Have Not Plausibly Alleged Section 1983 Liability.

Even if the Supervisors were not arms of the State entitled to sovereign immunity (which they are, *see supra* Part II.B.), Plaintiffs' claims against them should be dismissed because Plaintiffs have not plausibly alleged that the Supervisors' purported failure to provide the notice is the product of an official policy or custom. Plaintiffs have therefore failed to plead that the Supervisors are liable under section 1983.

A county official may be liable under section 1983 only if the challenged conduct flows from an official "policy or custom." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). Where, as here, the challenged conduct consists of *inaction*, a plaintiff must plead and prove deliberate indifference. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) ("Only where a failure to train reflects a 'deliberate' or 'conscious' choice . . . can a city be liable for such a failure under § 1983."); *Butler v. Elle*, 281 F.3d 1014, 1026 n.7 (9th Cir. 2002) ("The custom or policy of inaction, however, must be the result of a conscious or deliberate choice to follow a course of action . . . ." (citation and internal marks omitted)); *Daskalea v. Dist. of Columbia*, 227 F.3d 433, 441 (D.C. Cir. 2000) ("[A] city's in-action . . . constitutes a 'policy or custom' under *Monell* when it can be said that the failure amounts to 'deliberate indifference' towards the constitutional rights of persons in its domain." (internal marks omitted)); *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999) ("Municipal policy may be found in . . . certain omissions on the part of policymaking officials that manifest deliberate indifference to the rights of citizens . . . ."); *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996) ("If the plaintiff asserts the alleged custom or policy comprised a failure to act, he or she must demonstrate the municipality's inaction resulted from deliberate indifference to the rights of the plaintiff." (internal marks omitted)).

Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997). "Plainly stated, a 'showing of simple or even heightened negligence is not enough.'" *McDowell v. Brown*, 392 F.3d 1283, 1291 (11th Cir. 2004) (quoting *Brown*, 520 U.S. at 407).

Here, Plaintiffs allege that the Supervisors "are not following" the notice procedures set forth in section 98.075(7)(a) or "notifying voters subject to this review process." ECF No. 9 ¶ 116. Plaintiffs do not and cannot allege that the purported omission is the product of a policy or custom under *Monell*. The amended complaint contains no allegation that the alleged failure to provide notice was the result of a conscious choice in disregard of the constitutional rights of voters. Without a plausible allegation of deliberate indifference, Plaintiffs have failed to state a claim against the Supervisors under section 1983.

## B.   Plaintiffs' Joinder of Sixty-Seven Supervisors in One Action Is Improper.

Florida's sixty-seven Supervisors should be dropped because they are not properly joined in a single action. Plaintiffs claim that all Supervisors violate the same statute—a statute that requires them to provide notice to registered voters with prior felony convictions. ECF No. 9 ¶ 116. Plaintiffs do not, however, allege concerted action among the sixty-seven Supervisors or a common plan or policy that combines their county-level acts or omissions into a single transaction or occurrence. Indeed, to establish their claims against the Supervisors, Plaintiffs must proceed county by county, one Supervisor at a time. Because Plaintiffs do not plausibly allege any glue that combines one county's alleged violations with another county's alleged violations, the Supervisors are not properly joined in a single action.

A plaintiff may not join multiple defendants in a single action unless its claims against all of the defendants arise from "the same transaction, occurrence, or series of transactions or occurrences."

Fed. R. Civ. P. 20(a)(2). For example, when a plaintiff's claims challenge a general policy—or a pattern or practice traceable to the same decisionmaker—the events that underlie the plaintiff's claims are "logically related" and arise from the same transaction or occurrence. *Alexander v. Fulton Cnty.*, 207 F.3d 1303, 1323–24 (11th Cir. 2000); *Harvard v. Inch*, 411 F. Supp. 3d 1220, 1237–38 (N.D. Fla. 2019).

On the other hand, the mere allegation that all defendants violated the same law, acted in the same manner, or caused the same injury in the same way does not warrant their joinder in one action. *Brooks v. Brooks Consultants*, *Inc.*, No. 6:22-cv-00669, 2022 WL 18493474, at *5 (M.D. Fla. Nov. 7, 2022), *report and recommendation adopted*, 2023 WL 3121344 (M.D. Fla. Jan. 12, 2023); *Interscope Records v. Does 1–25*, No. 6:04-cv-00197, 2004 WL 6065737, at *5 (M.D. Fla. Apr. 1, 2004), *report and recommendation adopted*, 2004 WL 7078585 (M.D. Fla. Apr. 27, 2004). "Rule 20 refers to the *same* transaction or occurrence, not to *similar* transactions or occurrences." *Squeaky Gate*, *Inc. v. Ohio Sec. Ins. Co.*, No. 8:18-cv-02382, 2018 WL 5839870, at *1 (M.D. Fla. Nov. 8, 2018) (quoting *Hartley v. Clark*, No. 3:09-cv-00559, 2010 WL 1187880, at *3 (N.D. Fla. Feb. 12, 2010)) (emphasis in *Squeaky Gate*). To meet the standard in Rule 20(a), a plaintiff must allege "common operative facts" and "concerted activity" among the defendants. *Barber v. Am.'s Wholesale Lender*, 289 F.R.D. 364, 367–68 (M.D. Fla. 2013); *accord Longhini v. Sembler*, No. 6:17-cv-02093, 2018 WL 1833137, at *4 (M.D. Fla. Jan. 4, 2018), *report and recommendation adopted*, 2018 WL 739927 (M.D. Fla. Feb. 7, 2018).

For example, in *A.D. v. Cavalier Mergersub LP*, No. 2:22-cv-00095, 2022 WL 4357989 (M.D. Fla. Sept. 20, 2022), the plaintiff sued multiple hotels at which she claimed to have been victimized by sex trafficking. Despite broad allegations that the hotel industry participates in sex trafficking, the court concluded that joinder was improper because the plaintiff failed to allege "concerted activity"

among the defendant hotels. *Id*. at *4. Similarly, in *Tacoronte v. Collection Company of America*, No. 6:10-cv-01477, 2010 WL 11651422 (M.D. Fla. Nov. 2. 2010), *report and recommendation adopted*, 2010 WL 11651423 (M.D. Fla. Nov. 29, 2010), the plaintiff sued multiple defendants that he claimed unlawfully sought his credit-bureau information. While the alleged transactions were similar, they did not arise from the same transaction or occurrence, and joinder was improper. *Id*. at *2; *accord Daker v. Holmes*, No. 20-13601, 2022 WL 2129076, at *6 (11th Cir. June 14, 2022) (finding misjoinder of twelve defendants who were each alleged to have unlawfully withheld documents from the plaintiff).

For the same reasons, Rule 20 does not authorize joinder of all sixty-seven Supervisors in this action. Plaintiffs allege that the Supervisors do not follow section 98.075(7)(a)'s notice procedures. ECF No. 9 ¶ 116. According to Plaintiffs, the Supervisors do not provide notice to registered voters with prior felony convictions whom the Supervisors have determined to be ineligible to vote. *Id*. At most, Plaintiffs have alleged that each Supervisor violates the same statute in the same way—in other words, that each Supervisor has engaged in *similar* transactions or occurrences. That is not enough. Without a common nucleus of operative facts and well-pleaded allegations of concerted action, the alleged violations might resemble one another, but do not comprise a single transaction or occurrence.

Plaintiffs try to portray the alleged violations by all Supervisors as a single, statewide policy or practice, asserting that Defendants generally have engaged in a "campaign of acts and omissions," *id*. ¶ 3, "created and encouraged a chaotic and broken system," *id*. ¶ 82, and "created and perpetuated barriers," *id*. ¶ 125. But "Plaintiffs' broad, conclusory allegations of connectivity do not establish a sufficient connection between Defendants to permit joinder." *Omega*, *SA v. Individuals*, *Bus. Entities*, *& Unincorporated Ass'ns Identified on Schedule "A"*, --- F. Supp. 3d ----, No. 0:22-cv-60026, 2023 WL 2248233, at *2–3 (S.D. Fla. Jan. 14, 2023) (finding joinder improper where the defendants were alleged to have infringed the same trademarks in the same way). Such broad generalities deserve no

weight under well-settled pleading rules. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (explaining that "naked assertion" without "further factual enhancement" fails to plead a plausible claim).

Plaintiffs' amended complaint sets forth no plausible, well-pleaded allegation that Florida's sixty-seven Supervisors acted in concert or in furtherance of a common plan to deny voters notice of determinations of ineligibility or potential ineligibility. To prove their claims against the Supervisors, Plaintiffs must present county-specific evidence—one county at a time. The evidence that establishes one Supervisor's failure to provide notice does not begin to establish another Supervisor's failure—a surefire sign that Plaintiffs' claims against sixty-seven Supervisors do not arise from "the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2). Because the Supervisors are not properly joined, this Court should drop them from this action. *See* Fed. R. Civ. P. 21 (explaining that, while misjoinder is not a "ground for dismissing an action," a court may "at any time, on just terms, . . . drop a party" or "sever any claim against a party" that was not properly joined).

### C.     Plaintiffs' Threadbare Allegations Fail to Plead a Plausible Claim Against the Supervisors.

Plaintiffs' claims against the Supervisors should also be dismissed because the allegations that support those claims are threadbare and conclusory and fall far short of the factual content needed to state a plausible claim. As to the Supervisors, the amended complaint does little more than recite the statutory provisions that require Supervisors to provide notice, and allege in the most formulaic way that the Supervisors do not provide the required notice. That is insufficient to plead a plausible claim.

 "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal marks omitted). While detailed factual allegations are unnecessary, a pleading that "tenders naked assertions devoid of further factual enhancement" or "offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal marks omitted).

As to the Supervisors, the amended complaint comes up short. It recites the legal obligations that section 98.075 imposes with respect to registered voters who have prior felony convictions. ECF No. 9 ¶ 115 & nn.85–89. It explains that section 98.075(7) requires Supervisors who receive notice from the Florida Department of State of a voter's potential ineligibility to notify the voter of the voter's potential ineligibility, make a final determination, and notify the voter of that final determination. *Id*. It then alleges that the Supervisors "are not following these procedures and are not notifying voters subject to this review process when the Supervisors have concluded that persons with prior felony convictions are ineligible to register to vote or are improperly registered to vote." *Id*. ¶ 116; *see also id*. ¶ 192.g. (alleging in a superficial way that all Supervisors are "failing to comply with their obligations under Florida Statutes section 98.075 and 98.0751 to notify people with prior felony convictions who are not eligible to register to vote, or who are improperly registered to vote"). Without factual enhancement, it simply alleges that sixty-seven constitutional officers are violating a statutory duty.[8]

Plaintiffs' allegations against the Supervisors therefore hinge on the naked assertion that the Supervisors do not comply with section 98.075(7). Plaintiffs' allegations against the Supervisors are formulaic and threadbare—and therefore insufficient to advance their claims against the Supervisors

---

[8] Plaintiffs also allege that Supervisors do not "notify people with prior felony convictions when they have successfully had their voting rights restored." ECF No. 9 ¶ 114. Supervisors have no obligation under state or federal law to track the restoration of individuals' voting rights and provide notice as described in paragraph 114. *See infra* Part VI.E.

Finally, Plaintiffs allege that Supervisors in two counties did not notify Ms. Sanchez and Ms. Jones of their "purportedly outstanding LFOs." ECF No. 9 ¶ 116. But Supervisors have no duty to provide notice of outstanding LFOs. Nor do Plaintiffs allege that the notice requirements of section 98.075(7) were even triggered. Plaintiffs do not allege that the Department of State determined Ms. Sanchez or Ms. Jones to be potentially ineligible (triggering the notice requirement under section 98.075(7)(a)1.) or that a Supervisor found Ms. Sanchez or Ms. Jones to be ineligible (triggering the notice requirement under section 98.075(7)(a)3.–5.). Nor does this allegation even mention the other sixty-five Supervisors.

beyond "the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal marks omitted). Accordingly, Plaintiffs' claims against the Supervisors should be dismissed.

### D. Plaintiffs Fail to State a Plausible Equal-Protection Claim Against the Supervisors.

For additional reasons, the amended complaint fails to state an equal-protection claim against the Supervisors. *First*, Plaintiffs allege that the Supervisors fail to provide notice to voters—not that they provide notice to some voters, but not others. Plaintiffs do not therefore allege the foundational element of an equal-protection claim: unequal treatment. *Second*, to the extent Plaintiffs claim that variations in practice from county to county violate equal protection, that claim does not lie against the Supervisors, each of whom is responsible only for the equal treatment of similarly situated people within the county the Supervisor serves. *Third*, the factual allegations that underlie Plaintiffs' equal-protection claim all relate to the legal financial obligations, or LFOs, of individuals with prior felony convictions. The Supervisors have no role in the resolution or calculation of LFOs, and Plaintiffs do not allege otherwise. Plaintiffs have not, therefore, plausibly alleged that the Supervisors have violated equal protection.

#### 1. Plaintiffs Do Not Allege That Any Supervisor Treats Similarly Situated Individuals Differently.

To plead a violation of equal protection, a plaintiff must allege that he or she was "treated differently from other similarly situated individuals." *Campbell v. Rainbow City*, 434 F.3d 1306, 1314 (11th Cir. 2006).

Plaintiffs allege that the Supervisors fail to provide notice as required by section 98.075(7). ECF No. 9 ¶¶ 115–16. That is *equal* treatment, not *unequal* treatment: Plaintiffs do not allege that the Supervisors provide notice to some ineligible voters, but not others, and do not therefore allege that anyone was treated differently from other similarly situated individuals. Because Plaintiffs have not alleged differential treatment, they have not stated an equal-protection claim against the Supervisors.

In addition, to plead an equal-protection violation, a plaintiff must allege that the "challenged action was motivated by an intent to discriminate." *Elston v. Talladega Cnty. Bd. of Educ.*, 997 F.2d 1394, 1406 (11th Cir. 1993). As explained above, *see supra* Part IV.B., as to the Supervisors, Plaintiffs do not allege that a discriminatory intent motivated any purported omission. For this additional reason, the Court should dismiss Plaintiffs' equal-protection claim against Florida's Supervisors of Elections.

### 2. A Supervisor Does Not Violate Equal Protection When a Supervisor in Another County Administers Elections Differently.

To the extent Plaintiffs maintain that variations between counties violate equal protection, they fail to state a claim against any Supervisor. Each Supervisor's authority encompasses the Supervisor's own county, and Plaintiffs do not allege that any Supervisor treats similarly situated individuals within the *same* county differently. The equal-protection claim against the Supervisors should be dismissed.

Differences in election administration between counties cannot support an equal-protection claim against any single Supervisor. Equal protection guarantees the right "to participate in elections on an equal basis with other citizens *in the jurisdiction*." *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972) (emphasis added). Just as a State does not violate equal protection when its policies differ from those of another State, a Supervisor in one county does not violate equal protection when a Supervisor in another county administers elections differently. Accordingly, in *Citizen Center v. Gessler*, 770 F.3d 900, 917–18 (10th Cir. 2014), the court affirmed the dismissal of county election officials because the plaintiffs alleged only "inter-county disparities"—not disparities between voters in the same county.

Here, Plaintiffs do not allege that any Supervisor treats similarly situated persons within the Supervisor's own county differently. Without such an allegation, Count II fails to state a claim against the Supervisors.

3.      **The Factual Allegations That Support Plaintiffs' Equal-Protection Claim Have Nothing to Do With the Supervisors.**

Finally, the factual allegations that support Plaintiffs' equal-protection claim relate to the legal financial obligations, or LFOs, of individuals with prior felony convictions. ECF No. 9 ¶¶ 179–81. But Plaintiffs do not allege—nor can they—that the Supervisors have any involvement in or responsibility for the resolution or calculation of LFOs. Plaintiffs have not alleged, therefore, that any differential treatment in the resolution and calculation of LFOs is somehow attributable to the Supervisors. For this additional reason, the equal-protection claim should be dismissed as to the Supervisors.

In support of their equal-protection claim, Plaintiffs allege that potential voters receive inconsistent information about their LFOs and that counties employ different practices in the calculation of LFOs, *id*. ¶ 179, and conclude that this "disparate and inconsistent application of procedures to resolve LFOs subjects voters to arbitrary and disparate treatment based solely on where they reside," *id*. ¶ 180. But Plaintiffs do not allege that the Supervisors have any role in the resolution or calculation of LFOs. On the contrary, they allege that the Clerks "are responsible for computation of LFOs, crediting payments towards LFOs, and informing people with prior felony convictions, upon request, of the LFOs owed," *id*. ¶ 48, and sets forth detailed allegations regarding LFOs against the Clerks, *id*. ¶¶ 102–13.

Because the factual basis of Plaintiffs' equal-protection claim is an alleged unequal treatment in the resolution and calculation of LFOs, and because the amended complaint contains no well-pleaded allegation that the Supervisors have any duties or responsibilities in relation to the resolution and calculation of LFOs, Plaintiffs' equal-protection claim should be dismissed as to the Supervisors.

E.      **To the Extent They Allege Violations of Non-Existent Legal Requirements, Plaintiffs' Claims Against the Supervisors Should Be Dismissed.**

In addition to a failure to provide notice required by section 98.075(7), the amended complaint alleges that the Supervisors fail to comply with a notice requirement that does not exist. Specifically, Plaintiffs allege that the Supervisors do not notify potential voters who have prior felony convictions

"when they have successfully had their voting rights restored and are therefore eligible to vote." ECF No. 9 ¶ 114. But the Supervisors have no legal obligation—under state or federal law, constitutional or statutory—to monitor the voting rights of individuals who are *not* registered to vote and to notify them of their eligibility once their voting rights are finally restored. Plaintiffs can point to no statutory or constitutional duty that imposes that notice requirement. To the extent the amended complaint relies on a non-existent legal obligation, the Court should dismiss Plaintiffs' claims against the Supervisors.

<u>CONCLUSION</u>

For these reasons, the Court should dismiss Plaintiffs' amended complaint. A "just, speedy, and inexpensive resolution of this case requires it. Fed. R. Civ. P. 1.

Dated October 30, 2023.                           Respectfully submitted,


/s/ *John K. Londot*                              /s/ *Andy Bardos*
John K. Londot (FBN 579521)                       Andy Bardos (FBN 822671)
GREENBERG TRAURIG P.A.                             GRAYROBINSON, P.A.
101 E. College Avenue                             301 South Bronough Street, Suite 600
Tallahassee, Florida 32302                        Tallahassee, Florida 32301
Telephone: 850-222-6891                           Telephone: 850-577-9090
londotj@gtlaw.com                                 andy.bardos@gray-robinson.com
*Attorneys for Defendants, Clerks of Court and*   *Attorneys for Defendants, Supervisors of Elec-*
*Comptrollers of Baker, Bay, Bradford, Brevard,*  *tions for Charlotte, Collier, Indian River, Lake,*
*Calhoun, Charlotte, Citrus, Clay, Columbia,*     *Lee, Marion, Manatee, Monroe, Pasco, and*
*Dixie, Escambia, Flagler, Franklin, Gadsden,*    *Seminole Counties*
*Gilchrist, Gulf, Hamilton, Hernando,*
*Highlands, Hillsborough, Indian River,*
*Jackson, Jefferson, Lafayette, Lake, Lee,*
*Liberty, Manatee, Marion, Martin, Miami-*
*Dade, Monroe, Nassau, Okaloosa,*
*Okeechobee, Palm Beach, Pasco, Pinellas,*
*Polk, Putnam, Santa Rosa, Sarasota, Seminole,*
*St. Johns, St. Lucie, Sumter, Suwannee, Taylor,*
*Union, Wakulla, Walton and Washington*
*Counties, and Defendants, Clerks of Court of*
*DeSoto, Orange, and Volusia Counties*

/s/ Mohammad O. Jazil
Mohammad O. Jazil (FBN 72556)
Michael R. Beato (FBN 1017715)
HOLTZMAN VOGEL BARAN TORCHINSKY &
JOSEFIAK PLLC
119 South Monroe Street, Suite 500
Tallahassee, Florida 32301
Telephone: 850-270-5938
mjazil@holtzmanvogel.com
mbeato@holtzmanvogel.com
*Attorneys for Defendants, Governor Ron
DeSantis; Florida Secretary of State Cord
Byrd; Secretary of Corrections Ricky D. Dixon;
Commissioner of the Florida Department of
Law Enforcement Mark Glass; and
Commissioners of the Florida Commission on
Offender Review Melinda N. Coonrod, Richard
D. Davison, and David A. Wyant*

/s/ George N. Meros, Jr.
George N. Meros, Jr. (FBN 263321)
Tara R. Price (FBN 98073)
Benjamin J. Gibson (FBN 0058661)
Kassandra S. Reardon (FBN 1033220)
SHUTTS & BOWEN LLP
215 South Monroe Street, Suite 804
Tallahassee, Florida 32301
Telephone: 850-241-1717
gmeros@shutts.com
tprice@shutts.com
bgibson@shutts.com
kreardon@shutts.com
*Attorneys for Defendants, Florida Secretary of
State Cord Byrd; Secretary of Corrections
Ricky D. Dixon; Commissioner of the Florida
Department of Law Enforcement Mark Glass;
and Commissioners of the Florida Commission
on Offender Review Melinda N. Coonrod,
Richard D. Davison, and David A. Wyant*

/s/ Nathaniel A. Klitsberg
Nathaniel A. Klitsberg (FBN 307520)
Joseph K. Jarone (FBN 117768)
Devona A. Reynolds Perez (FBN 70409)
BROWARD COUNTY ATTORNEY'S OFFICE
115 S. Andrews Avenue, Suite 423
Fort Lauderdale, Florida 33301
Telephone: 954-357-7600
nklitsberg@broward.org
dreynoldsperez@broward.org
jkjarone@broward.org
*Attorneys for Defendant, Broward County
Supervisor of Elections*

/s/ Susan S. Erdelyi
Susan S. Erdelyi (FBN 0648965)
MARKS GRAY, P.A.
1200 Riverplace Blvd., Suite 800
Jacksonville, Florida 32207
Telephone: 904-398-0900
serdelyi@marksgray.com
*Attorneys for Defendants, Baker, Bay,
Bradford, Calhoun, Columbia, Dixie, Franklin,
Gadsden, Gulf, Hamilton, Jackson, Lafayette,
Liberty, Nassau, Putnam, St. Johns, Santa
Rosa, Sumter, Suwannee, Taylor, Union,
Walton, Wakulla, and Washington County
Supervisors of Elections*

/s/ *Nicholas J.P. Meros*
Nicholas J.P. Meros (FBN 120270)
EXECUTIVE OFFICE OF THE GOVERNOR
400 S. Monroe Street
Tallahassee, Florida 32399
Telephone: 850-717-9310
nicholas.meros@eog.myflorida.com
*Attorneys for Defendant, Governor of Florida*


/s/ *Ashley E. Davis*
Ashley E. Davis (FBN 48032)
Joseph S. Van De Bogart (FBN 84764)
William D. Chappell (FBN 120449)
FLORIDA DEPARTMENT OF STATE
R.A. Gray Building
500 S. Bronough Street, Suite 100
Tallahassee, Florida 32399
Telephone: 850-245-6531
ashley.davis@dos.myflorida.com
joseph.vandebogart@dos.myflorida.com
david.chappell@dos.myflorida.com
*Attorneys for Defendant, Florida Secretary of State*


/s/ *Charles T. Martin, Jr.*
Charles T. Martin, Jr. (FBN 118328)
Daniel A. Johnson (FBN 91175)
FLORIDA DEPARTMENT OF CORRECTIONS
Office of the General Counsel
501 South Calhoun Street
Tallahassee, Florida 32399
Telephone: 850-717-3611
dan.johnson@fdc.myflorida.com
charles.martin@fdc.myflorida.com
*Attorneys for Defendant, Secretary of the Florida Department of Corrections*

/s/ *John T. LaVia, III*
John T. LaVia, III (FBN 0853666)
GARDNER, BIST, BOWDEN, BUSH, DEE, LA VIA
& WRIGHT, P.A.
1300 Thomaswood Drive
Tallahassee, Florida 32308
Telephone: 850-385-0070
jlavia@gbwlegal.com
*Attorneys for Defendants, Clay, Martin, Osceola, Palm Beach, Polk, and St. Lucie County Supervisors of Elections*


/s/ *Frank Mari*
Frank M. Mari
Florida Bar No. 93243
ROPER, P.A.
2707 E. Jefferson Street
Orlando, FL 32803
Telephone: (407) 897-5150
Facsimile: (407) 897-3332
Primary email: fmari@roperpa.com
Secondary email: ihaines@roperpa.com
*Attorney for Defendants Connie Sanchez, Karen Healy, Kaiti Lenhart, Michelle Milligan, Heath Driggers, Tim Bobanic, Mark Negley, and Billy Washington*


/s/ *Mark Herron*
Mark Herron (FBN 199737)
MESSER CAPARELLO, P.A.
2618 Centennial Place
Tallahassee, Florida 32308
Telephone: 850-222-0720
mherron@lawfla.com
*Attorneys for Defendant, Leon County Supervisor of Elections*

/s/ *Albert T. Gimbel*
Albert T. Gimbel (FBN 279730)
MESSER CAPARELLO, P.A.
2618 Centennial Place
Tallahassee, Florida 32317
Telephone: 850-222-0720
tgimbel@lawfla.com
*Attorneys for Defendant, Clerk of Court of Broward County*

/s/ *Paul D. Brannon*
Paul D. Brannon (FBN 820636)
William B. Graham (FBN 359068)
CARR ALLISON
305 S. Gadsden Street
Tallahassee, Florida 32301
Telephone: 850-222-2107)
dbrannon@carrallison.com
bgrahama@carrallison.com
*Attorneys for Defendant, Escambia County Supervisor of Elections*

/s/ *Carter E. Young*
Carter E. Young (FBN 58034)
CLERK OF COURT AND COMPTROLLER
Leon County, Florida
301 S. Monroe Street, Suite 100
Tallahassee, Florida 32301
Telephone: 850-606-4121
CEYoung@leoncountyfl.gov
*Attorneys for Defendants, Leon County Clerk of Court and Comptroller*

/s/ *Geraldo F. Olivo, III*
Geraldo F. Olivo, III (FBN 60905)
HENDERSON, FRANKLIN, STARNES & HOLT, P.A.
1715 Monroe Street
Fort Myers, Florida 33901
Telephone: 239-344-1100
jerry.olivo@henlaw.com
*Attorneys for Defendants, Glades, Hardee, Hendry, Holmes, Levy, and Okeechobee Supervisors of Elections, and Clerks of Court and Comptrollers of Glades, Hardee, Hendry, Holmes, Levy, and Okeechobee Counties*

/s/ *Robert C. Swain*
Robert C. Swain (FBN 366961)
Diana M. Johnson (FBN 69160)
ALACHUA COUNTY ATTORNEY'S OFFICE
12 S.E. 1st Street
Gainesville, Florida 32601
Telephone: 352-374-5218
dmjohnson@alachuacounty.us
bswain@alachuacounty.us
kniederloh@alachuacounty.us
*Attorneys for Defendants, Alachua County Supervisor of Elections, Clerk of Court, and Comptroller*

/s/ *Jon A. Jouben*
Jon A. Jouben (FBN 149561)
Kyle J. Benda (FBN 113525)
HERNANDO COUNTY
20 N. Main Street, Suite 462
Brookesville, Florida 34601-2850
Telephone: 850-754-4122
jjouben@co.hernando.fl.us
kbenda@co.hernando.fl.us
*Attorneys for Defendant, Hernando County Supervisor of Elections*

/s/ *Brian D. Goodrich*
Brian D. Goodrich (FBN 106948)
BENTLEY GOODRICH KISON, P.A.
783 S. Orange Avenue, Suite 300
Sarasota, Florida 34236
Telephone: 941-556-9030
bgoodrich@thebentleylawfirm.com
*Attorneys for Defendants, Sarasota County*
*Supervisor of Elections*, *Clerk of Court*, *and*
*Comptroller*

/s/ *Thomas W. Franchino*
Thomas W. Franchino (FBN 699276)
CLERK OF THE CIRCUIT COURT AND
COMPTROLLER
Collier County, Florida
3315 Tamiami Trail East, Suite102
Naples, Florida 34112
Telephone: 239-252-2725
tom.franchino@collierclerk.com
*Attorneys for Defendants*, *Collier County Clerk*
*of Court and Comptroller*

/s/ *Christopher A. Mack*
Christopher A. Mack (FBN 105348)
2 Courthouse Square
Kissmimee, Florida 34741
Telephone: 407-742-3500
chris.mack@osceolaclerk.org
*Attorney for Defendants*, *Osceola County Clerk*
*of Court and Comptroller*

/s/ *Sarah Lynn Jonas*
Sarah Lynn Jonas (FBN 115989)
VOLUSIA COUNTY ATTORNEY'S OFFICE
123 W Indiana Avenue
Deland, Florida 32720
Telephone: 386-5950
sjonas@volusia.org
*Attorneys for Defendant*, *Volusia County*
*Supervisor of Elections*

/s/ *Michael B. Valdes*
Michael B. Valdes (FBN 93129)
Sophia M. Guzzo (FBN 1039644)
MIAMI-DADE COUNTY ATTORNEY'S OFFICE
111 N.W. First Street, Suite 2810
Miami, Florida 33128
Telephone: 305-375-5620
michael.valdes@miamidade.gov
sophia.guzzo@miamidade.gov
*Attorneys for Defendant*, *Miami-Dade County*
*Supervisor of Elections*

/s/ *Stephen M. Todd*
Stephen M. Todd (FBN 886203)
HILLSBOROUGH COUNTY ATTORNEY'S OFFICE
601 E. Kennedy Blvd., 27th Floor
Tampa, Florida 33602
Telephone: 813-272-5670)
todds@hillsboroughcounty.org
*Attorneys for Defendant*, *Hillsborough County*
*Supervisor of Elections*

/s/ *Tiffiny Douglas Pinkstaff*
Tiffiny Douglas Pinkstaff (FBN 682101)
Associate General Counsel
OFFICE OF GENERAL COUNSEL
117 West Duval Street, Suite 480
Jacksonville, Florida 32202
Telephone: 904-255-5072
tpinkstaff@coj.net
*Attorneys for Defendant*, *Duval County*
*Supervisor of Elections*

/s/ *Jared D. Kahn*
Jared D. Kahn (FBN 105276)
PINELLAS COUNTY ATTORNEY'S OFFICE
315 Court Street, 6th Floor
Clearwater, Florida 33756
Telephone: 727-464-3354
jkahn@pinellas.gov
*Attorneys for Defendant*, *Pinellas County*
*Supervisor of Elections*

/s/ *Laura J. Boeckman*
Laura J. Boeckman (FBN 527750)
OFFICE OF GENERAL COUNSEL
117 W. Duval Street, Suite 480
Jacksonville, Florida 32202
Telephone: 904-255-5054
LBoeckman@coj.net
*Attorneys for Defendant*, *Duval County Clerk of Court*

/s/ *Gregory T. Stewart*
Gregory T. Stewart (FBN 203718)
Matthew R. Shaud (FBN 122252)
NABORS, GIBLIN & NICKERSON, P.A.
1500 Mahan Drive, Suite 200
Tallahassee, Florida 32308
Telephone:850-224-4070
gstewart@ngnlaw.com
mshaud@ngnlaw.com
*Attorneys for Defendant*, *Okaloosa County Supervisor of Elections*

/s/ *Dale A. Scott*
Dale A. Scott (FBN 0568821)
ROPER, P.A.
2707 E. Jefferson Street
Orlando, Florida 32803
Telephone: 407-897-5150
dscott@roperpa.com
*Attorneys for Defendant*, *Citrus County Supervisor of Elections*

/s/ *Nicholas A. Shannin*
Nicholas A. Shannin (FBN 9570)
SHANNIN LAW FIRM, P.A.
214 E. Lucerne Circle, Suite 200
Orlando, Florida 32801
Telephone: 407-985-2222
nshannin@shanninlaw.com
*Attorneys for Defendant*, *Orange County Supervisor of Elections*

/s/ *Genesis Martinez*
Genesis Martinez (FBN 1018327)
Alexandra Mora (FBN 52368)
AKERMAN LLP
98 Southeast Seventh Street, Suite 1100
Miami, Florida 33131
genesis.martinez@akerman.com
alexandra.mora@akerman.com
*Attorney for Defendants*, *Miami-Dade County Clerk of Court and Comptroller*