IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| FLORIDA RIGHTS RESTORATION COALITION, *et al.*, | ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 1:23-cv-22688-CMA |
| Plaintiffs, | | |
| v. | | |
| RONALD DESANTIS, *et al.*, | | |
| Defendants. | | |

### RESPONSE TO THE STATE DEFENDANTS' MOTION TO STAY DISCOVERY

### INTRODUCTION

The Court should deny the motion to stay discovery brought by seven Defendants who refer to themselves as the State Agency Defendants (hereinafter, the "State Defendants"). (CM/ECF Dkt. No. 325).[1] "Courts must construe the Federal Rules of Civil Procedure 'to secure the just, speedy, and inexpensive determination of every action and proceeding,'" because "delay and prolongation of discovery can . . . create case management and scheduling problems and unfairly hold up the prosecution of the case." *Thompson v. Ryder Sys., Inc.*, No. 22-20552-CIV, 2022 WL 18776115 (CMA), at *2 (S.D. Fla. Sept. 7, 2022) (quoting Fed. R. Civ. P. 1).[2] Those interests are of particular importance where, as here, Plaintiffs seek to vindicate the "fundamental political right" to vote, which is "preservative of all rights." *Roe v. State of Ala. By*

---

[1] This group includes Governor Ron DeSantis; Secretary of State Cord Byrd; Secretary of the Florida Department of Corrections Ricky D. Dixon; Commissioner of the Florida Department of Law Enforcement Mark Glass; and Commissioners of the Florida Commission on Offender Review Melinda N. Coonrod, Richard D. Davison, and David A. Wyant.

[2] Unless otherwise noted, internal quotations, brackets, citations, and footnotes have been omitted from case quotations, and any emphasis is in the original.

*& Through Evans*, 43 F.3d 574, 580 (11th Cir. 1995); *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964) ("Other rights, even the most basic, are illusory if the right to vote is undermined"). Accordingly, "motions to stay discovery pending ruling on a dispositive motion are generally disfavored in this district." *Thompson*, 2022 WL 18776115, at *1.

The State Defendants fail to meet their "tall burden" in seeking a stay pending the Court's resolution of their motion to dismiss. *Id.* at *2. As set forth below, a "preliminary peek" at the State Defendants' motion to dismiss reveals that it is neither "clearly meritorious" nor "truly case dispositive," and it therefore provides no support for the State Defendants' request to stay discovery pending its resolution. *Id.* And it is insufficient to "simply point to the pendency of a dispositive motion," as the State Defendants have done. *Id.* Rather, a request to stay discovery must be supported with a "specific showing of prejudice or burdensomeness," *id.*—a showing that the State Defendants do not even attempt to make in their request to stay discovery.

The State Defendants' failure to support their motion with a showing of burdensomeness or prejudice is made clear by the decision of the *other* 135 Defendants in this case *not* to join the motion to stay discovery. The County Supervisors of Elections and County Clerks of Court[3] have served the Plaintiffs with discovery requests and have engaged with Plaintiffs concerning the discovery they are prepared to provide in response to Plaintiffs' requests. The County Clerks of Court have already served responses, and the Supervisors have agreed to do so on November 13, pursuant to an extension Plaintiffs granted. The Plaintiffs are prepared to exchange

---

[3] The County Supervisors of Elections and Clerks of Court are identified in Exhibits A and B of the Amended Complaint (CM/ECF Dkt. No. 9), respectively.

document discovery with the Clerks and Supervisors, pending entry of a protective order.[4] Plaintiffs respectfully submit that the State Defendants should not be permitted to exercise unilateral control over the progress of this case by staying discovery when the overwhelming number of Defendants are prepared to move forward. For all of the reasons set forth herein, the State Defendants' motion should be denied.

## ARGUMENT

I.  <u>The State Defendants' Motion to Dismiss is Without Merit</u>

The Court should reject the State Defendants' assertion that their sovereign immunity, standing, and Rule 8(a) arguments, as set forth in their motion to dismiss, provide a basis to stay discovery. *See Thompson*, 2022 WL 18776115, at *2 (denying monition to stay discovery because motion to dismiss was not a "sure winner"). First, the State Defendants' assertion that they are entitled to sovereign immunity is without merit. (Mot. 1, 3).[5] Indeed, with respect to Plaintiffs' First Claim for Relief, under § 11(b) of the Voting Rights Act ("VRA") (Compl. ¶¶ 171–75), the State Defendants do not even assert sovereign immunity: in the relevant section of their brief, they do not cite § 11(b) or any other part of the VRA; they do not cite the paragraphs of the Complaint in which the § 11(b) claim is set forth; they do not discuss the elements of the § 11(b) claim; and they do not discuss Plaintiffs' detailed allegations concerning the acts and omissions of State Defendants DeSantis, Byrd, and Glass in connection with that claim. (Br. 9–13). Nor could they assert sovereign immunity with respect to the § 11(b) claim,

---

[4] Plaintiffs first proposed a protective order to govern discovery to all Defendants on September 22, and have proposed two rounds of revisions in response to the State Defendants' comments. Plaintiffs are currently awaiting a response from the State Defendants on a draft version of the motion for a protective order last circulated by Plaintiffs on October 27, 2023.

[5] References to "Compl.," "Mot.," and "Br." are to the Amended Complaint (CM/ECF Dkt. No. 9), the State Defendants' motion to stay discovery (CM/ECF Dkt. No. 325), and the State Defendants' brief in support of their motion to dismiss (CM/ECF Dkt. No. 324), respectively.

given that it does not implicate state law, and every Court of Appeals to have addressed the issue—including the Eleventh Circuit—has held that the VRA abrogated state sovereign immunity. *See Ala. State Conf. of NAACP v. Alabama*, 949 F.3d 647, 651 (11th Cir. 2020), *judgment vacated sub nom. Alabama v. Alabama State Conf. of NAACP*, 141 S. Ct. 2618 (2021) (joining the "the Fifth and Sixth Circuits—the only other circuits that have considered this issue—[to] h[o]ld that Congress validly abrogated state sovereignty in the VRA.").[6]

Moreover, it is demonstrably false that "the Amended Complaint alleges violations of a state-law notice requirement" or that it "seeks to have this federal Court enforce state law against" the State Defendants. (Mot. 3). Plaintiffs' Claims for Relief One, Two, and Three against the State Defendants allege only *federal* constitutional and statutory claims (Compl. ¶¶ 171–95), and those claims seek only prospective injunctive relief against the officials tasked with protecting those *federal* rights (*see* Compl. at 69–71 ("Prayer for Relief")). Each of Plaintiffs' claims against the State Defendants concern the "fundamental right of voting" under federal Constitutional and statutory law, *Allen v. Milligan*, 599 U.S. 1, 36 (2023), not the mere execution of a state statute. "Under the doctrine of *Ex parte Young* . . . there is a long and well-recognized exception to [sovereign immunity] for suits against state officers seeking *prospective* equitable relief to end *continuing* violations of federal law," and the Eleventh Amendment therefore does not shield the State Defendants from Plaintiffs' claims. *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999) (rejecting claim of immunity raised by Alabama Governor and other officials).

---

[6] *See also Ga. State Conf. of the NAACP v. Georgia*, No. 1:21-CV-05338, 2023 WL 7093025, at *7 (N.D. Ga. Oct. 26, 2023) (acknowledging that *Alabama NAACP* "was ultimately vacated [by the Supreme Court] as moot," but "conclud[ing] that the majority's analysis [in that case] remains persuasive").

The existence of *state* statutes that would, if followed, apparently remedy the violation of *federal* law identified in the Complaint supports Plaintiffs' claims, not the State Defendants' motions to dismiss or to stay. It is true that the "administration of the electoral process is a matter that the Constitution largely entrusts to the States," "[b]ut, in exercising their powers of supervision over elections and in setting qualifications for voters, the States may not infringe upon basic constitutional protections." *Kusper v. Pontikes*, 414 U.S. 51, 57 (1973); *Riddell v. Nat'l Democratic Party*, 508 F.2d 770, 778 (5th Cir. 1975) (striking down Mississippi law and citing *Kusper*). Here, such infringement includes the "arbitrary and disparate treatment" flowing from the State Defendants failure to adopt "specific standards" to implement reenfranchisement procedures, leading to unconstitutionally arbitrary and uneven implementation across the State. *See generally Bush v. Gore*, 531 U.S. 98, 104–09 (2000); *Hunter v. Hamilton Cnty. Bd. of Elections*, 635 F.3d 219, 235, 239–42 (6th Cir. 2011).

Contrary to the State Defendants' assertion, Plaintiffs are seeking a declaratory judgment finding the State Defendants in violation of the *federal* Constitution and the *federal* Voting Rights Act, an order directing the State Defendants (and other Defendants) to comply with *federal* law and, in their official capacities, to ensure that the state mechanisms over which they exercise control protect Plaintiffs' *federal*—and fundamental—right to vote. (Compl. at 69–71). That the State Defendants *could* protect Plaintiffs' fundamental federal rights by adhering to existing state law does not convert Plaintiffs' federal claims into state claims; it merely demonstrates the State Defendants' conspicuous failures to fulfill the obligations placed on them by the federal Constitution.

Second, Plaintiffs have standing to bring the claims identified in the Complaint. In arguing to the contrary, the State Defendants incorrectly assert that Plaintiff Florida Rights

Restoration Coalition ("FRRC") lacks organizational standing because it has failed to identify the projects and activities from which it has had to divert resources as a result of Defendants' conduct. (Br. 6, 7). This argument is squarely rebutted by the Complaint, which includes numerous allegations describing the activities and projects from which FRRC "has had to divert resources" as a result of Defendants' conduct. (*See* Compl. ¶¶ 13 (diverting resources from housing and employment-related aid to assist members in assessing their eligibility to vote), 17 (diverting resources from efforts related to employment, housing, bail reform, sentencing reform, and community reintegration to assist members in assessing their eligibility to vote)). This case, in other words, is entirely unlike *Shelby Advocates for Valid Elections v. Hargett*, upon which the State Defendants principally reply (Br. 7), because FRRC has not tried to "spend its way into standing based on speculative fears of future harm." 947 F.3d 977, 982 (6th Cir. 2020). The State Defendants acknowledge that allegations that funds have been "diverted *from* [one] task *to* another task" are sufficient to confer Article III standing on FRRC (Br. 7), and they simply mischaracterize the Complaint in asserting that the Complaint is bereft of such allegations. *See Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1350 (11th Cir. 2009) (holding that NAACP had organizational standing because it had to divert resources away from regular activities such as "voter registration, mobilization, and education" in order "to educate and assist voters in complying with the [challenged statute]").

      Each of the individual Plaintiffs also has standing, and FRRC therefore has associational standing, because each of the former is a member of the latter. (Br. 7–8). In resisting this conclusion, the State Defendants rely on irrelevant caselaw concerning pre-enforcement facial challenges to statutes. (Br. 8 (relying on *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013)). In *that* kind of case, a plaintiff must show a threat of enforcement to establish injury in

fact for Article III standing purposes. *See, e.g., Wollschlaeger v. Governor, Fla.*, 848 F.3d 1293, 1304 (11th Cir. 2017) ("A person can bring a pre-enforcement suit when he has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution.").

This is not a pre-enforcement facial challenge. The State Defendants have had five years to implement Amendment 4 and, as alleged in the Complaint, they have done so in ways that violate the Constitution and federal law. Each Plaintiff has alleged *actual* injury—not a fear or threat of future injury—sufficient to establish Article III standing as a result of the State Defendants' implementation of its felon reenfranchisement program. In the First Claim for Relief, each Plaintiff has alleged they have in fact been intimidated for voting or attempting to vote in violation of the VRA. (Compl. ¶¶ 171–75). *See Nat'l Coal. on Black Civic Participation v. Wohl*, 512 F. Supp. 3d 500, 515 (S.D.N.Y. 2021) (finding plaintiffs had standing to assert intimidation claim under Section 11(b) where the plaintiffs alleged they were intimidated for voting or attempting to vote). In the Second Claim for Relief, each Plaintiff has alleged that they have in fact been deprived of the equal protection of the laws with respect to their vote. (Compl. ¶¶ 176–83). *See Common Cause/Georgia*, 554 F.3d at 1351 ("[f]or purposes of standing, a denial of equal treatment is an actual injury" even when the burden on the voter is "slight[]" and the "complainant is able to overcome the challenged barrier"). And in the Third Claim for Relief, each Plaintiff has alleged that the State Defendants have in fact placed an undue burden on Plaintiffs' right to vote. (Compl. ¶¶ 184–95). *See Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1352 (11th Cir. 2005) ("A plaintiff need not have the franchise wholly denied to suffer injury."). Each individual Plaintiff has Article III standing, FRRC has

organizational and associational standing, and this argument provides no basis to stay discovery in this matter.

Finally, the State Defendants' assertion that the Court should stay discovery because the Complaint is a "shotgun" complaint is baseless.  (Mot. 1).  The State Defendants' motion to dismiss contains a perfunctory argument that the Complaint is "loquacious" in violation of Rule 8(a) (Br. 18), but that assertion is contradicted elsewhere in their motion by the assertion that the Complaint's allegations are "threadbare."  (Br. 19, 39, 44).  In any event, in pressing their Rule 8(a) argument, the State Defendants "do not attempt to identify particular allegations as immaterial or unnecessary.  They do not assert that the Complaint fails to set forth cognizable causes of action, that the legal theories are incoherent, or that they cannot tell which causes of action are alleged against which Defendants." *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1130 (9th Cir. 2008).  Indeed, in this section of their brief in support of their motion to dismiss, the State Defendants fail to offer a single citation to the Complaint, and the remainder of their brief makes clear that they understand precisely what Plaintiffs have alleged. *See, e.g., Bailey v. Janssen Pharmaceutica, Inc.*, 288 F. App'x 597, 603 (11th Cir. 2008) ("[A] complaint—so long as it is minimally sufficient to put a defendant on notice of the claims against him—will not fail for mere surplusage."); *Gov't Emps. Ins. Co. v. AFO Imaging, Inc.*, No. 8:20-CV-2419-VMC-CPT, 2021 WL 734575, at *6 (M.D. Fla. Feb. 25, 2021) (rejecting Rule 8 argument made with respect to lengthy complaint because the case was "complex . . . , and the length [of the complaint] does not make it so that Defendants are unable to prepare a proper response").  There is no reason to dismiss the Complaint or stay discovery on this basis.

II.     The Current Schedule Will Not Accommodate a Stay

If the Court were to grant the State Defendants' request to stay discovery, it would be impossible to complete discovery in the period contemplated by the scheduling order. (*See* CM/ECF Dkt. No. 265). For example, under the scheduling order, expert reports are due on April 15, 2024; even without a stay, the parties only have a few months to complete and analyze all document discovery and prepare their expert reports. A stay would make this impossible.

This holds true even if discovery continues at its current pace with respect to the other Defendants. Many of the most relevant documents in this case are in the hands of the State Defendants—particularly the Secretary of State—meaning much of the relevant discovery would not be available until after the motion to dismiss is resolved. Moreover, because Plaintiffs' claim under § 11(b) of the VRA is asserted only against the State Defendants, discovery could not commence on that claim at all until after the motion is resolved.

The State Defendants' assertion that a stay is also appropriate because the Plaintiffs have not shown an urgency in advancing this case is also without merit. Plaintiffs filed their complaint on July 19, 2023 and served or effectuated service waivers on all 142 Defendants by September 7, 2023. (CM/ECF Dkt. No. 253). The reason this process took time is that many of the 142 Defendants in this case needed time to retain counsel before they were in a position to sign service waivers.[7] Since then, Plaintiffs have continued to push this case forward, including by serving discovery requests on all Defendants on September 22, 2023, one week after the Court entered its Scheduling Order. The State Defendants, on the other hand, waited to request a

---

[7] As Plaintiffs will explain in their forthcoming response to Defendants' motion to dismiss, each of the 142 Defendants in this case are necessary parties under Eleventh Circuit precedent. *See Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236 (11th Cir. 2020) (holding that plaintiffs lacked Article III standing because plaintiffs had not joined all 67 Supervisors of Elections as defendants).

stay until October 30, after their original deadline for responding to Plaintiffs' discovery requests had passed, and just days before their responses are due pursuant to the extension Plaintiffs granted them.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit that the State Defendants' motion to stay should be denied.

Respectfully submitted,

*/s/ Edward Soto*
Edward Soto (Fla. Bar No. 265144)
Edward.soto@weil.com
Helena Masiello (FBN 1039514)
Helena.masiello@weil.com
**WEIL, GOTSHAL & MANGES LLP**
1395 Brickell Avenue
Suite 1200
Miami, Florida 33131
Telephone: (305) 577-3100

*- and –*

Carey Dunne *(pro hac vice)*
carey@freeandfairlitigation.org
Michele Roberts *(pro hac vice)*
michele@freeandfairlitigation.org
Kevin Trowel *(pro hac vice)*
kevin@freeandfairlitigation.org
Martha Reiser *(pro hac vice)*
martha@freeandfairlitigation.org
**FREE & FAIR LITIGATION GROUP**
266 W 37th Street
20th Floor
New York, NY 10018
Telephone: (646) 434-8604

*- and –*

John A. Freedman *(pro hac vice)*
John.freedman@arnoldporter.com
Jeremy Karpatkin *(pro hac vice)*
Jeremy.karpatkin@arnoldporter.com

**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Ave NW
Washington, DC 20001-3743
Telephone: (202) 942-5000

*Attorneys for Plaintiffs*