**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 23-22688-CIV-ALTONAGA/Louis**

FLORIDA RIGHTS RESTORATION
COALITION, *et al.*,

       Plaintiffs,

v.

RONALD DESANTIS, in his official
capacity as Governor of Florida, *et al.*,

       Defendants.

_____/


_____

**DEFENDANTS' REPLY IN SUPPORT**
**OF MOTION TO DISMISS (ECF NO. 330)**
_____

TABLE OF CONTENTS

TABLE OF CITATIONS ................................................................................................. ii

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 1

    I.      PLAINTIFFS LACK ARTICLE III STANDING TO PURSUE ANY CLAIM................................ 1

    II.     SOVEREIGN IMMUNITY BARS PLAINTIFFS FROM PURSUING STATE-LAW CLAIMS
           DISGUISED AS FEDERAL-LAW CLAIMS. ........................................................... 4

        A.    The State-Level Defendants' Sovereign-Immunity Defense Applies to All
              Claims........................................................................................................... 4

        B.    Sovereign Immunity Bars Plaintiffs' Claims Against the Supervisors. .................... 5

        C.    At the Very Least, Governor DeSantis, Secretary Dixon, Commissioner Glass,
              and the Commissioners of Offender Review Are Not Proper *Ex-Parte Young*
              Defendants.................................................................................................... 7

    III.    THE AMENDED COMPLAINT IS NOT SHORT AND CONCISE. ............................................ 8

    IV.    EACH OF THE AMENDED COMPLAINT'S FOUR COUNTS FAILS TO STATE A CLAIM. ......... 9

    V.     PLAINTIFFS' CLAIMS AGAINST THE CLERKS SHOULD BE DISMISSED........................... 11

        A.    Plaintiffs Dispute the *Jones II* Holding—But It Controls. ..................................... 12

        B.    Plaintiffs Failed to Plead Satisfaction of Sections 28.246, 98.075(7), and
              98.0751(2)(a)5.d.-e., and Fail to Explain Why in Their Response. ........................ 14

        C.    Equitable Relief Claims. ................................................................................. 17

    VI.    PLAINTIFFS' CLAIMS AGAINST THE SUPERVISORS SHOULD BE DISMISSED.................. 19

        A.    Plaintiffs Have Not Plausibly Alleged Section 1983 Liability................................ 19

        B.    Plaintiffs' Joinder of Sixty-Seven Supervisors in One Action Is Improper. ........... 20

        C.    Plaintiffs' Threadbare Allegations Fail to Plead a Plausible Claim Against
              the Supervisors. ............................................................................................ 22

        D.    Plaintiffs Fail to State a Plausible Equal-Protection Claim Against the
              Supervisors. ................................................................................................. 23

        E.    To the Extent They Allege Violations of Non-Existent Legal Requirements,
              Plaintiffs' Claims Against the Supervisors Should Be Dismissed. ......................... 25

CONCLUSION............................................................................................................ 25

<u>**TABLE OF CITATIONS**</u>

<u>**Cases**</u>

*Alabama Conference of the National Association for the Advancement of Colored People v.*

  *Alabama*,

  949 F.3d 647 (11th Cir. 2020) ................................................................................ 9

*Anderson v. Celebrezze*,

  460 U.S. 780 (1983) ............................................................................................ 10

*Arcia v. Florida Secretary of State*,

  772 F.3d 1335 (11th Cir. 2014) .............................................................................. 2

*Arkansas State Conference of the National Association for the Advancement of Colored*

  *People v. Arkansas Board of Apportionment*,

  --- F. 4th ----, No. 22-1395, 2023 U.S. App. LEXIS 30756 (8th Cir. Nov. 20, 2023) ........... 9

*Ashcroft v. Iqbal*,

  556 U.S. 662 (2007) ........................................................................................ 3, 23

*Atkins v. Virginia*,

  536 U.S. 304 (2002) ............................................................................................. 6

*Bailey v. Janssen Pharmaceutica, Inc.*,

  288 F. App'x 597 (11th Cir. 2008) .......................................................................... 8

*Baxter v. Roberts*,

  54 F.4th 1241 (11th Cir. 2022) ............................................................................. 19

*Beekman v. Federal Home Loan Mortgage Corporation*,

  827 F. App'x 999 (11th Cir. 2020) .......................................................................... 8

*Boston Police Superior Officers Federation v. City of Boston*,

    147 F.3d 13 (1st Cir. 1998) ......................................................................... 24

*Brown v. City of Fort Lauderdale*,

    923 F.2d 1474 (11th Cir. 1991) .................................................................... 20

*Brown v. Georgia Department of Revenue*,

    881 F.2d 1018 (11th Cir. 1989) ..................................................................... 6

*Brown v. Sikes*,

    212 F.3d 1205 (11th Cir. 2000) .................................................................... 17

*Burdick v. Takushi*,

    504 U.S. 428 (1992) ...................................................................................... 10

*Bush v. Gore*,

    531 U.S. 98 (2000) .................................................................................. 10, 24

*Charles H. Wesley Education Foundation, Inc. v. Cox*,

    408 F.3d 1349 (11th Cir. 2005) ..................................................................... 7

*Citizen Center v. Gessler*,

    770 F.3d 900 (10th Cir. 2014) ..................................................................... 24

*Clapper v. Amnesty International USA*,

    568 U.S. 398 (2013) ................................................................................... 3, 4

*Common Cause/Georgia v. Billups*,

    554 F.3d 1340 (11th Cir. 2009) ................................................................ 2, 3

*DeKalb County School District v. Schrenko*,

    109 F.3d 680 (11th Cir. 1997) ......................................................... 4, 5, 6, 7

*Democratic Executive Committee of Florida v. Lee,*

    915 F.3d 1312 (11th Cir. 2019) ............................................................................ 10

*Doe v. Commissioner,*

    No. 18-cv-01039, 2020 WL 7481735 (D.N.H. Dec. 18, 2020) ................................ 7

*Ex Parte Young,*

    209 U.S. 123 (1908) ........................................................................................... 1, 7

*Florida State Conference of the National Association for the Advancement of Colored People*

    *v. Lee,*

    566 F. Supp. 3d 1262 (N.D. Fla. 2021) ................................................................ 21

*Georgia Association of Latino Elected Officials v. Gwinnett County Board of Registration and*

    *Elections,*

    36 F.4th 1100 (11th Cir. 2022) ............................................................................ 3

*Jacobson v. Florida Secretary of State,*

    974 F.3d 1236 (11th Cir. 2020) ...................................................................... 21, 22

*Johnson v. Meadows,*

    418 F.3d 1152 (11th Cir. 2005) .......................................................................... 17

*Jones v. DeSantis,*

    462 F. Supp. 3d 1196 (N.D. Fla. 2020) ............................................................... 12

*Jones v. Governor of Florida,*

    15 F.4th 1062 (11th Cir. 2021) .......................................................................... 10

*Jones v. Governor of Florida,*

    975 F.3d 1016 (11th Cir. 2022) ................................................................... passim

*Mathews v. Eldridge*,

    424 U.S. 319 (1976) .................................................................................................... 16

*Monell v. Department of Social Services of City of New York*,

    436 U.S. 658 (1978) .................................................................................................... 19

*Nielsen v. DeSantis*,

    469 F. Supp. 3d 1261 (N.D. Fla. 2020) .................................................................... 21

*Pennhurst State School and Hospital v. Halderman*,

    465 U.S. 89 (1984) ................................................................................................. 5, 6, 7

*S&M Brands, Inc. v. Georgia ex rel. Carr*,

    925 F.3d 1198 (11th Cir. 2019) ............................................................................... 6, 7

*Shepherd v. Trevino*,

    575 F.2d 1110 (5th Cir. 1978) .............................................................................. 10, 11

*South Carolina v. Katzenbach*,

    383 U.S. 301 (1966) ...................................................................................................... 9

*TransUnion LLC v. Ramirez*,

    141 S. Ct. 2190 (2021) .................................................................................................. 3

*United States v. Williams*,

    553 U.S. 285 (2008) .................................................................................................... 13

*Vega v. Semple*,

    963 F.3d 259 (2d Cir. 2020) ........................................................................................ 6

## **Constitutional Provisions**

U.S. Const. amend. XIV, § 1 ............................................................................................ 24

**Statutes**

42 U.S.C. § 1983 ................................................................................................ 17, 19

52 U.S.C. § 10301 ..................................................................................................... 9

52 U.S.C. § 10307(b) ......................................................................................... 1, 4, 9

Fla. Stat. § 28.246(4) ............................................................................................... 14

Fla. Stat. § 28.246(4)(b) .......................................................................................... 14

Fla. Stat. § 98.075 .................................................................................... 5, 6, 22, 23

Fla. Stat. § 98.075(5) ............................................................................................... 19

Fla. Stat. § 98.075(6) ............................................................................................... 19

Fla. Stat. § 98.075(7) .................................................................................... 14, 19, 22

Fla. Stat. § 98.075(7)(a)2.f. ..................................................................................... 15

Fla. Stat. § 98.075(7)(a)5. ....................................................................................... 15

Fla. Stat. § 98.075(7)(b)5. ....................................................................................... 15

Fla. Stat. § 98.0751(2)(a)5.d. ....................................................................... 14, 15, 18

Fla. Stat. § 98.0751(2)(a)5.e. ....................................................................... 14, 15, 18

Fla. Stat. § 98.093(3)(c)2. ........................................................................................ 16

Fla. Stat. § 775.083(3) ............................................................................................. 14

**Rules**

Fed. R. Civ. P. 12(b)(1) ........................................................................................... 18

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 18

Fed. R. Civ. P. 20 ........................................................................................ 20, 21, 22

**Other Authorities**

Fla. SB 7066 (2019) ..................................................................................... passim

## INTRODUCTION

Plaintiffs' response only illustrates the legal infirmities that surround their novel request for court-ordered voter-registration procedures for individuals with felony convictions. Plaintiffs attempt to manufacture standing where none exists. They create facial/as-applied distinctions to avoid binding precedent, including *Jones v. Governor of Florida*, 975 F.3d 1016 (11th Cir. 2022) (en banc) ("*Jones II*")—which specifically addressed whether Florida's felon re-enfranchisement scheme "violates the Equal Protection Clause of the Fourteenth Amendment *as applied to felons who cannot afford to pay*," *id.* at 1025 (emphasis added). They attempt to limit the State Defendants' claims of sovereign immunity, though no such limitations exist in the motion to dismiss. They expand the *Ex Parte Young* exception so much that general supervisory authority alone will subject public officials to suit. They contort their long, meandering pleading to state claims found nowhere within the four corners of the amended complaint. And they fail to adequately respond to the Clerks' and Supervisors' arguments for dismissal. All of this is to say that this Court should grant the motion to dismiss.

## ARGUMENT

### I. PLAINTIFFS LACK ARTICLE III STANDING TO PURSUE ANY CLAIM.

Defendants take aim at the FRRC's organizational standing, and its associational standing. ECF No. 330 at 22–25. The FRRC's associational standing walks hand-in-hand with the individual Plaintiffs' standing because these individuals are the only FRRC members named in the amended complaint, *id.* at 24, and they too fail to allege an injury in fact, *id.* at 24–25. At the outset, it's important to note that Defendants challenge Plaintiffs' standing to bring *any* of the claims in the amended complaint. *Id.* Contrary to Plaintiffs' suggestion, there's no exception for the "FRRC's standing to bring a claim under § 11(b) of the Voting Rights Act" or "its claim for equitable accounting." ECF No. 338 at 21. And Plaintiffs still haven't satisfied the requirements for Article III standing either as an organization or through association with individuals.

**A.** For organizational standing, Plaintiffs say that they've met the injury-in-fact prong through a diversion-of-resources theory. *Id.* at 20. As support, they refer to paragraphs 13 and 17 of the amended complaint and urge this Court to ignore their funding allegations in paragraph 111, *id.* at 20 n.3, and ultimately the organization's mission of "ending the disenfranchisement" of people with felony convictions. ECF No. 9 ¶ 10.

Paragraphs 13 and 17 of the amended complaint include only general statements concerning diversion. Paragraph 13 says that "[a]s a result of S.B. 7066," the very law upheld in *Jones II*, the "FRRC has had to divert resources that were originally intended to assist people with prior felony convictions successfully re-enter society." ECF No. 9 ¶ 13. Paragraph 17 says that the "FRRC has been unable to allocate its resources to working on other policy initiatives that assist people with prior felony convictions." *Id.* ¶ 17.

But paragraph 111 is more precise. It makes clear that the FRRC's resources—its "grant money" responsible for funding the organization's efforts—"is specifically donated to help restore voting rights" by "pay[ing] off" financial conditions associated with a felony conviction. *Id*. ¶ 111. There's no allegation in the amended complaint of how this grant money is or can be diverted to other tasks. In fact, we're told that the money can't even be used to help a felon reintegrate into society by paying his or her "misdemeanor costs, collection costs," or "supervision fees." *Id*. If the organization's resources can only be used to pay off felony-specific financial obligations, thereby "ending the disenfranchisement" of certain felons and nothing more, *id.* ¶ 10, which is also the organization's focused mission, then the more general allegations of diversion ring hollow. *See Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1342 (11th Cir. 2014) (requiring "a concrete and demonstrable injury, not an abstract social interest" for organizational standing (cleaned up)).

Contrast the FRRC's predicament with other organizations that did plead an injury in fact. In *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1350 (11th Cir. 2009), the plaintiff

alleged it was diverting its resources "from 'getting voters to the polls' to helping them obtain acceptable photo identification" in compliance with a new voter-identification law. And in *Georgia Association of Latino Elected Officials v. Gwinnett County Board of Registration and Elections*, 36 F.4th 1100, 1115 (11th Cir. 2022) ("*GALEO*"), the plaintiff was "'one of the oldest, largest, and most significant organizations promoting and protecting the civil rights' of Georgia's Latino community," with a broad mission, that was diverting its resources from voter assistance to language assistance because of a local government's alleged failure to provide Spanish-language election materials. In both *Common Cause/Ga.* and *GALEO*, unlike this case, there were no restrictions on how resources could be used, and the organizational mission wasn't limited to one task, as it is here (felon re-enfranchisement).

In sum, there's no organizational standing here because there's no injury under a diversion-of-resources theory. The "reasonable inference" here is that the FRRC's resources are not being diverted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2007). Stated differently, given the specific allegation in paragraph 111, it's impossible to see, for example, how the FRRC could or would divert resources to "assist[ing] people with prior felony convictions" with "finding employment and housing," or with "pursuing bail reform." ECF No. 9 ¶ 17. It's workers and volunteers have but one aim that the organization can spend its money on for training and support: help felons pay off the financial obligations associated with a felony conviction.

**B.** Nor do the individual Plaintiffs have standing to sue in their own right. The Supreme Court held in *Clapper v. Amnesty International USA*, 568 U.S. 398, 401 (2013), that a plaintiff seeking prospective relief to prevent future injury must prove that the threatened injury is "certainly impending." "[T]he mere risk of future harm, standing alone, cannot qualify as a concrete harm—at least unless the exposure to the risk of future harm itself causes a *separate* concrete harm." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210–11 (2021). The individual Plaintiffs point to no facts in the amended complaint to justify their threat of future injuries—their

3

supposed unwillingness to vote in future elections because of a general atmosphere of intimidation. *See* ECF No. 338 at 23–25. Instead, Plaintiffs argue that *Clapper* and its progeny cannot apply because "this case is not a pre-enforcement facial challenge." *Id*. at 23.

While *Clapper* was a facial challenge, there's no reason to limit its rule to facial challenges. 568 U.S. at 401. Future injuries, whether alleged in a facial challenge or an as-applied challenge, are still future injuries. They should be held to the same standard. And, in this case, there's no risk of a future injury for any of the individual Plaintiffs because each of them knows that he or she can register to vote and has registered to vote. *See* ECF No. 330 at 24–25. This is not a situation where, because of SB 7066's implementation, an individual Plaintiff cannot determine whether he or she has an outstanding financial obligation associated with his or her felony conviction.

In sum, there is no individual standing. Because there's no individual standing, there can be no associational standing in this case.

## II.   SOVEREIGN IMMUNITY BARS PLAINTIFFS FROM PURSUING STATE-LAW CLAIMS DISGUISED AS FEDERAL-LAW CLAIMS.

### A.   The State-Level Defendants' Sovereign-Immunity Defense Applies to All Claims.

Plaintiffs assume that State-level Defendants are *not* raising a sovereign immunity defense to Count 1 of the amended complaint that alleges a violation of § 11(b) of the Voting Rights Act. Plaintiffs are incorrect. Whether masked as Voting Rights Act allegations or Equal Protection Clause allegations, the gravamen of Plaintiffs' claims remains the same: the State-level Defendants (and others) are not complying with *state* law and so this Court should issue an injunction to mandate compliance with *state* law. *See* ECF No. 330 at 27–29 (collecting relevant allegations from amended complaint).

That's no different than the allegations made in *DeKalb County School District v. Schrenko*, 109 F.3d 680 (11th Cir. 1997). In *Schrenko*, the plaintiff "invoked the jurisdiction of

the district court by asserting that the State's conduct violated federal rights protected by the Fourteenth Amendment, Title VI and the Equal Educational Opportunities Act," but "the gravamen of its complaint appear[ed] to be that the State ha[d] improperly interpreted and failed to adhere to a state statute governing reimbursement for transportation costs." *Id.* at 688. The Eleventh Circuit reversed "the district court's judgment" on the issue, explaining that the judgment was improper because it was, in "substance," "for a violation of state law, a holding barred by the Eleventh Amendment." *Id.* (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984)).

Defendants raise the same concerns in this case. They do so for all claims. And, just as in *Schrenko*, sovereign immunity bars all of Plaintiffs' claims.

### B.   Sovereign Immunity Bars Plaintiffs' Claims Against the Supervisors.

Plaintiffs concede that each Supervisor is an arm of the State for purposes of sovereign immunity, but deny that their claims against the Supervisors are state-law claims disguised as federal-law claims. But no matter how often Plaintiffs repeat and even italicize the word "federal," the fact remains: their claims against the Supervisors are *explicitly* based on the Supervisors' alleged failure to fulfill their obligation to provide the notice that section 98.075 requires. Plaintiffs admit as much when they insist that certain Defendants once touted these "state mechanisms" and that a "failure to effectively follow *those very procedures*" must be "assessed by a federal court." ECF No. 338 at 32 (emphasis added). That is *precisely* what *Pennhurst* prohibits.

Neither in their amended complaint nor in their response do Plaintiffs even attempt to show that the highly specific state-law obligation they seek to enforce against the Supervisors— section 98.075's notice requirement—arises from federal law. Plaintiffs' two claims against the Supervisors purport to assert violations of the constitutional right to vote and equal protection. Nowhere in their response, however, do Plaintiffs cite any legal authority to suggest that those

federal rights impose an affirmative duty on local election officials to provide the notices that section 98.075 requires. Plaintiffs' complete failure to point out *where* in federal law or precedent this obligation exists speaks volumes and confirms that Plaintiffs merely seek to enforce state-law obligations under the guise of a federal-law claim. *See S&M Brands*, *Inc. v. Georgia ex rel. Carr*, 925 F.3d 1198, 1205 (11th Cir. 2019) (finding that plaintiff's putative federal-law claims were state-law claims because "Georgia's obligation to do this comes from state law").

*Brown v. Georgia Department of Revenue*, 881 F.2d 1018 (11th Cir. 1989), therefore helps the Supervisors—not Plaintiffs. There, the district court enforced the plaintiff's federal due-process right to a hearing. *Id*. at 1124. Its order required Georgia, in conducting the hearing, to comply with state personnel rules. *Id*. at 1123. *Pennhurst* did not apply because the *obligation* the court enforced—the obligation to provide a hearing—was rooted in federal law. *Id*. at 1124.

In contrast, the obligation that Plaintiffs seek to enforce against the Supervisors is rooted in a state statute. The amended complaint cites the state statute that Plaintiffs ask this Court to enforce. And Plaintiffs have pointed the court to *nothing*—neither argument nor authority—to suggest that the same obligation resides in the federal constitutional rights they claim to assert.

Plaintiffs seek to distinguish *DeKalb County School District v. Schrenko*, 109 F.3d 680 (11th Cir. 1997), on the ground that the relief ordered there was different from that requested here, ECF No. 338 at 32, but what matters under *Pennhurst* is the source of the legal obligation that Plaintiffs ask the federal court to enforce, "not the relief ordered." *Brown*, 881 F.2d at 1023.

*Vega v. Semple*, 963 F.3d 259 (2d Cir. 2020), is consistent with the Supervisors' position. In *Vega*, the plaintiffs alleged Eighth Amendment violations but referenced state law to "inform the Eighth Amendment analysis." 963 F.3d at 283. Under the Eighth Amendment analysis, the Nation's evolving standards of decency are sometimes inferred from state legislation. *See*, *e.g.*, *Atkins v. Virginia*, 536 U.S. 304, 313–16 (2002). The plaintiffs' reliance on state laws to prove their claim did not offend *Pennhurst* because their claim was legitimately an Eighth Amendment

claim. *See also Doe v. Comm'r*, No. 18-cv-01039, 2020 WL 7481735 (D.N.H. Dec. 18, 2020) (concluding that plaintiffs' demand for a hearing was founded on federal due process and that plaintiffs relied on state law only to identify a reasonable period of time to conduct the hearing).

*Charles H. Wesley Education Foundation*, *Inc. v. Cox*, 408 F.3d 1349 (11th Cir. 2005), is even further afield. It does not even mention sovereign immunity or the *Pennhurst* doctrine.

Finally, Plaintiffs make a convoluted argument about certain representations allegedly made in a brief filed in *Jones II*. ECF No. 338 at 32. That brief was filed by only two parties— and no Supervisors.[1] Nor would any statements made in a brief affect the sovereign-immunity analysis here.

Because Plaintiffs' claims against the Supervisors are state-law claims in disguise, this Court should follow *Schrenko* and *S&M Brands* and dismiss those claims under the *Pennhurst* doctrine.

C.    **At the Very Least, Governor DeSantis, Secretary Dixon, Commissioner Glass, and the Commissioners of Offender Review Are Not Proper *Ex-Parte Young* Defendants.**

At the very least, some of the Defendants should be excluded because they are not the proper *Ex Parte Young* defendants. Plaintiffs' argument to the contrary is this: Governor De-Santis, Secretary Dixon, Commissioner Glass, and the Commissioners of Offender Review (Coonrod, Davison, Wyant) have some connection to Plaintiffs' allegations of a general atmos-phere of intimidation and confusion. Therefore, Plaintiffs say, these Defendants are properly before this Court.

But Plaintiffs' some-connection standard is not the law. *See* ECF No. 330 at 32–34 (col-lecting cases). It cannot be the law. Under Plaintiffs' standard, for example, the Governor of

---

[1] The brief was filed by "Defendants-Appellants." The brief clearly distinguished between the ten "Defendants" and the two "Defendants-Appellants."

Florida would always become a proper party in any challenge to executive-branch action because of his general supervisory authority over the branch. The exception would then have few, if any, limiting principles to prevent litigants from hauling most of the state government into such a case (as Plaintiffs attempt to do here).

## III.   THE AMENDED COMPLAINT IS NOT SHORT AND CONCISE.

Plaintiffs do not assert that their amended complaint is short and concise. Nor can they. Instead, they insist that their pleading is logically organized and understandable. ECF No. 338 at 50–51. Those arguments miss the mark. As explained in Defendants' motion, the shortness requirement is intended to achieve brevity and simplicity in pleading and thus to protect district courts and parties from the costs and burdens of reviewing and answering prolix pleadings. ECF No. 330 at 34–35. Quite simply, the amended complaint is not "short" by any possible measure.

Plaintiffs make three additional arguments. *First*, they point out that, while Defendants claim the amended complaint is too long, the Supervisors claim the allegations against them are "threadbare." ECF No. 330 at 50, 58. Plaintiffs say that "Defendants cannot have it both ways." *Id*. at 58. But Defendants *can* have it both ways because both statements are true. The amended complaint is rambling and repetitious, and unwieldy, while the allegations that purportedly support Plaintiffs' claims against the Supervisors are threadbare and conclusory. ECF No. 9 ¶¶ 114–16.

*Second*, Plaintiffs quote the truism that a complaint "will not fail for mere surplusage," ECF No. 338 at 50 (quoting *Bailey v. Janssen Pharmaceutica*, *Inc*., 288 F. App'x 597, 603 (11th Cir. 2008)), but the amended complaint does not merely contain some extraneous matter. Rather, it is oversized. And complaints *do* fail for violation of the shortness requirement. ECF No. 330 at 35; *Beekman v. Fed. Home Loan Mortg. Corp.*, 827 F. App'x 999, 1001–02 (11th Cir. 2020).

*Third*, Plaintiffs claim that the factual background is complex and justifies the length of their complaint. ECF No. 338 at 50. But the same background could easily have been stated in

far fewer pages. Plaintiffs' claims are not so complex as to warrant 77 pages, 203 paragraphs, 145 footnotes, and 22,000 words. The amended complaint reflects a degree of particularity best suited to a post-trial proposed order than a pleading prepared in accordance with federal notice-pleading standards.

It has become common for plaintiffs who challenge election procedures to file massive, detailed treatises when simple and concise pleadings would do. This practice imposes enormous costs on state and local election officials to admit or deny each and every factual allegation in a complaint the size of a book. Enforcement of the shortness requirement in these circumstances would promote appropriate brevity in pleading and spare public officials the costs and burdens from which Rule 8 meant to protect them. This Court should accordingly dismiss the amended complaint.

## IV.   EACH OF THE AMENDED COMPLAINT'S FOUR COUNTS FAILS TO STATE A CLAIM.

**A.** In support of their position that § 11(b) of the Voting Rights Act contains a private cause of action, Plaintiffs cite no binding authority that requires that result. The closest they come are some general principles from *South Carolina v. Katzenbach*, 383 U.S. 301 (1966), that aren't specific to § 11(b), and the Eleventh Circuit's now-vacated decision in *Alabama Conference of the NAACP v. Alabama*, 949 F.3d 647 (11th Cir. 2020). Given the split in non-binding authority, Defendants maintain that the text and structure of the Voting Rights Act dictate that there is no private cause of action to enforce § 11(b) of the Act. *Cf. Ark. State Conf. of NAACP v. Ark. Bd. of Apportionment*, --- F. 4th ----, No. 22-1395, 2023 U.S. App. LEXIS 30756, at *3 (8th Cir. Nov. 20, 2023) (concluding that Congress did not "give private plaintiffs the ability to sue under § 2 of the Voting Rights Act" even though its "text and structure" present a stronger claim for such a right than § 11(b) of the Act).

**B.** Plaintiffs maintain that they don't need to plead and prove discriminatory intent when pursuing an equal protection claim. That's true in a few limited contexts, such as when a plaintiff

is challenging restrictions on the time, manner, and place of elections under the *Anderson-Burdick* test. *See Jones v. Governor of Fla.*, 15 F.4th 1062, 1065–66 (11th Cir. 2021) ("*Jones III*") (citing the *Anderson-Burdick* test and *Democratic Executive Committee of Florida v. Lee*, 915 F.3d 1312, 1318 (11th Cir. 2019)). But the Eleventh Circuit has already rejected attempts to create an intent-free standard when challenging a felon re-enfranchisement scheme—the kind of challenge Plaintiffs are seemingly pursuing here. *See Jones III*, 15 F.4th at 1065–68 (also rejecting facial/as-applied distinction for intent). Stated differently, Plaintiffs claims are markedly different than the ones in *Bush v. Gore*, 531 U.S. 98 (2000), or the other *Anderson-Burdick* cases cited in Plaintiffs' response where litigants were excused from having to plead and prove intent when alleging some undue burden on the right to vote. *See* ECF No. 338 at 31–32.

In sum, in a felon re-enfranchisement context, Plaintiffs must plead and prove discriminatory intent. They haven't done so in their amended complaint.

**C.** Indeed, Defendants' motion to dismiss Claim III in the amended complaint isn't predicated on Plaintiffs' failure to plead and prove intent. That *Anderson-Burdick* claim fails because felon re-enfranchisement does not implicate the right to vote. It concerns the restoration of the right to vote. Plaintiffs attempt to evade this argument by saying that Plaintiffs "are *not* disenfranchised by virtue of their prior felony convictions." ECF No. 338 at 47.

Plaintiffs' argument makes little sense. If Plaintiffs have the franchise, then they cannot satisfy the Article III injury-in-fact requirement for standing concerning the implementation of Florida's re-enfranchisement framework. If Plaintiffs have been legally disenfranchised, then the right to vote isn't implicated, and they are pursuing something other than an *Anderson-Burdick* claim for an undue burden on the right to vote.

Plaintiffs' reliance on *Shepherd v. Trevino*, 575 F.2d 1110 (5th Cir. 1978), offers no refuge for Claim III either. *Shepherd* predates the *Anderson-Burdick* test. *Shepherd* also wasn't an undue-burden case. It addressed a Texas statute that provided a mechanism for the re-

enfranchisement of convicted state felons who completed the terms of their probation without providing a similar mechanism for convicted federal felons. *Id.* at 1111. And *Shepherd* ultimately *"*affirm[ed]" the district court's dismissal of the plaintiffs' suit "for failure to state a claim," *id.*, after declining to apply some sort of heightened scrutiny to the state law, *id.* at 1114–15.

**D.** For Claim IV, which is an equitable accounting claim under Florida law, Plaintiffs fail to cite a single case where the complexity of the transaction *alone* justified this type of relief. ECF No. 338 at 48–49. This very specific kind of equitable relief is granted only where some contractual or fiduciary relationship exists between the parties. No such relationship exists here.

**V.      PLAINTIFFS' CLAIMS AGAINST THE CLERKS SHOULD BE DISMISSED.**

The sixty-seven Clerks of the Circuit Court reply to Plaintiffs' Opposition to Defendants' Motion to Dismiss (ECF No. 338; "Response"). The Response misinterprets the law established in *Jones II*, ignores the Florida statutory remedial procedures addressed in that case, and wrongly denies making a claim for disgorgement even though the Amended Complaint demands the Court "[i]ssue an order requiring . . . disgorgement . . . ." ECF No. 9 at 69. The Motion to Dismiss (ECF No. 330) is due to be granted, and felons seeking restoration of voting rights should utilize the administrative and judicial procedures provided by Florida law but ignored by Plaintiffs. Contrary to Plaintiffs' assertions about the will of the people, Florida's people and Legislature in Amendment 4/SB 7066 did not decide that felons should simply be re-enfranchised, but only that they should be *if* they paid their LFOs (as that term is used in the Amended Complaint), satisfied all other aspects of their sentences, and, for foreseen difficulties in determining LFOs, followed those procedures to be restored under Florida law.

### A.     Plaintiffs Dispute the *Jones II* Holding—But It Controls.

Plaintiffs say that *Jones II*, 975 F.3d at 1029, "unequivocally could not, and did not address the later implementation of Amendment 4" and call *Jones II* a "*facial, pre-implementation* chal-lenge[.]" ECF No. 338 at 25 (italics in original). The opposite is true.

Amendment 4 was effective January 8, 2019. The Governor signed SB 7066 on June 28, 2019. SB 7066 became law on July 1, 2019. The *Jones II* plaintiffs filed complaints on June 28 and July 1, 2019. The evidentiary hearing on the preliminary injunction occurred after several months of implementation of SB 7066. The merits trial was held April 27 through May 8, 2020. The Eleventh Circuit's decision issued on September 11, 2020. All hearings were *post-implemen-tation* of SB 7066 and expressly addressed actual application of the law, including felons' alleged difficulty in ascertaining exact amounts owed—the very issue of which Plaintiffs here complain. *See*, *e.g.*, *Jones II*, 975 F.3d at 1027 ("After a trial on the merits"); *id.* at 1059 (Martin, J., joined by Wilson, Jordan, and J. Pryor, dissenting) (discussing the district court's "findings of fact" about "Florida's implementation of Amendment 4").

The district court did not rule on merely the language of Amendment 4 and SB 7066, but addressed how these laws were functioning in the real world. It found, based on evidence at that "full trial on the merits," *Jones v. DeSantis*, 462 F. Supp. 3d 1196, 1203 (N.D. Fla. 2020), that "felons are sometimes unable to determine the amount of [LFOs] imposed in their sentences or the total amount they have paid . . . ." *Jones*, 975 F.3d at 1027. Plaintiffs here allege the same. Indeed, the Court in this case need only use "$" as a search term in the district court's decision to confirm that the trial in that case was exactly what the Plaintiffs claim here (minus, as they point out on page 25 of their Response, their claim for an equitable accounting)—that LFOs take different forms, in different counties, for different felonies. There is simply nothing unconstitutional about that.

As the controlling *Jones II* decision confirms, the plaintiffs there – as here – *had already made an issue of the difficulties in ascertaining the correct amount of LFOs*:

> The felons' real complaint is that it is sometimes difficult to determine whether a felon has completed the financial terms of his sentence. They offer examples of felons who cannot locate their criminal judgments, cannot determine which financial obligations were imposed for felony as opposed to misdemeanor offenses, or do not know how much they have paid toward their financial obligations. But these concerns arise not from a vague law but from factual circumstances that sometimes make it difficult to determine whether an incriminating fact exists.

*Jones II*, 975 F.3d at 1047 (citing *United States v. Williams*, 553 U.S. 285, 306 (2008)). In other words, the Eleventh Circuit in *Jones II* had numerous *as applied* examples before it, and was not merely ruling on the constitutionality of the text of the statutes. But instead of finding those examples supportive of a constitutional deprivation, the Eleventh Circuit found they were consistent with the subject matter of detailed accounting records, especially where Florida "requires voters to comply with those laws through their own efforts." *Id.* at 1049.

The Eleventh Circuit went on to find that the *Jones II* plaintiffs were simply wrong in their idea that the Due Process clause "makes Florida responsible . . . for locating and providing felons with the facts necessary to determine whether they have completed their financial terms of sentence." *Id.* Instead, "The Due Process Clause imposes no such obligation." *Id.*

Plaintiffs only now try to distinguish their claims into an as-applied challenge. But even after the Court ordered (in ECF No. 8) Plaintiffs to amend and improve their initial Complaint, Plaintiffs never included the words "as applied" or attempted to distinguish their claims from the holding in *Jones II* about felons' obligations at all. They did cite the *Jones II* proceedings, but only at the district court level, quoting the district judge's statements about difficulties in particular cases. *See* ECF No. 9 at 29 ¶ 88. They cite what the district court said as documenting "failures" that have supposedly not been addressed since that ruling. *Id.* But the Eleventh Circuit established that those difficulties were not *failures* at all, but simply inherent in the nature of the problem, and

that Amendment 4/SB 7066 included a constitutionally-sound method available to all felons who face what they perceive as difficulties in determining their LFOs.

Plaintiffs don't like those legally established methods. They would rather have a state-wide database, and they spend much of their Response discussing why inclusion of all Defendants in this lawsuit is supposedly necessary, while at the same time acknowledging the fact that the Clerks have no ability to establish the database they seek. *See* ECF No. 338 at 4 & 39 n.19 (accusing the Clerks of "finger pointing" by asserting that they cannot create a statewide database, while appearing to acknowledge that such a step would require additional resources and other government officials). Plaintiffs are required to recognize the impact of *Jones II* and pursue the statutory processes to cure any alleged perceived difficulties.

**B.     Plaintiffs Failed to Plead Satisfaction of Sections 28.246, 98.075(7), and 98.0751(2)(a)5.d.-e., and Fail to Explain Why in Their Response.**

Plaintiffs' Response fails to explain why they do not plead and are not prepared to show compliance with section 28.246(4)(b), which places an affirmative obligation on felons to learn of and pay (including pursuant to a payment plan) their LFOs upon release from custody:

> It is the responsibility of an individual who is released from incarceration and has outstanding court obligations to contact the clerk within 30 days after release to pay fees, service charges, court costs, and fines in full, or to apply for enrollment in a payment plan.

*See also* § 775.083(3), Fla. Stat. ("Unless otherwise designated by the court, a person who has been ordered to pay court obligations under this section shall immediately contact the clerk to pay fines, fees, service charges, and court costs in full or to apply for enrollment in a payment plan pursuant to s. 28.246(4)."). The Amended Complaint utterly ignores that obligation. Plaintiffs' Response ignores it, too.

Similarly, Plaintiffs failed to plead satisfaction or futility with respect to section 98.075(7) (administrative remedies to cure alleged confusion) and section 98.0751(2)(a)5.d.–e. (judicial

remedy), and fail to explain why in their Response. As the Motion to Dismiss showed, Amendment 4/SB 7066 provides multiple procedural options for a felon to challenge the correctness of LFOs with respect to voting eligibility. *See* ECF No. 330 at 32–35. A felon can challenge the accuracy of the information reviewed by the Department of State and Supervisors, can challenge the Supervisor's eventual determination (section 98.075(7)(a)5.), can demand "a hearing for the purpose of determining eligibility" (section 98.075(7)(a)2.f.), can appeal that determination (section 98.075(7)(b)5.), and can go to the local circuit court, which has plenary remedial authority. § 98.0751(2)(a)5.d.–e.

As the Eleventh Circuit held, "These procedures provide more than adequate process to guard against erroneous ineligibility determinations." *Jones II*, 975 F.3d at 1049. But Plaintiffs fail to address that holding in the Amended Complaint or the Response to the Motion to Dismiss. In fact, the Amended Complaint indicates that when a felon went to court for clarification, they received it, and registered (*e.g.*, Angel Sanchez, though before Amendment 4 was enacted). To be sure, the Response includes references to "the existence of a statutory scheme that *could* remedy the alleged violations," ECF No. 338 at 39 (italics in original), but Plaintiffs don't explain why or when those procedures have been attempted and failed. Instead, Plaintiffs complain about different counties' different calculations of LFOs, or alleged "failure" to be able to provide information to Plaintiffs in the form desired. Plaintiffs do not allege that the administrative and judicial remedies blessed by the Eleventh Circuit were used and "as applied" failed.

And, of course, they can't. If a circuit court judge in Florida had (even arguably) wrongfully denied equitable relief on a section 98.0751(2)(a)5.d.–e. voting rights/LFO claim, that case would have been cited in the initial Complaint, Amended Complaint, and Response—as well as in the felon's (or the felon's advocate's) appeal of the circuit judge's decision.

The omission of any alleged adjudicative failure is glaring. In rejecting the *Jones II* plaintiffs' challenge, the Eleventh Circuit held that under the "legislative v. adjudicative" balancing test

of *Mathews v. Eldridge*, 424 U.S. 319 (1976), the *Jones II* plaintiffs "were obliged to prove a deprivation of liberty based on *adjudicative* action." *Jones II*, 975 F.3d at 1049 (italics in original) (citation omitted). The same is particularly applicable here, where an adjudicative remedy is expressly authorized and required. The Legislature and the people of Florida established conditions for the restoration of the franchise, and those conditions include administrative *and adjudicative* remedies for foreseen difficulties. They kept in place the statute that requires Clerks to provide to the Supervisors of Election and Department of State "*if known*, the amount of financial obligations not yet satisfied." § 98.093(3)(c)2., Fla. Stat. (emphasis added).

Plaintiffs suggest those conditions precedent should be ignored, and do not attempt at all to show a deprivation based on adjudicative action. They simply can't be bothered to pursue the adjudicative action that the statute and *Jones II* requires. Instead, they invite this Court to ignore those provisions, ignore the holding in *Jones II*, and violate the separation of powers by second-guessing the Legislature's and the people of Florida's decisions about what means are to be utilized to address the complex issues around LFOs and what the Clerks' duties are. Plaintiffs are asking the Court to become a super-Legislature, moot and re-write state statutes and create duties that are not imposed on Clerks under Florida law, and invite a flood of federal litigation on particular claims despite state statutory remedies that have been declared constitutional but have not been utilized. The *Mathews v. Eldridge* analysis in *Jones II* bars such claims, especially where no adjudicative actions are in issue.

Finally, Plaintiffs challenge those remedies as unnecessary under the exhaustion doctrine. The Clerks assert those remedies are required before an adjudicative deprivation can give rise to a claim for Plaintiffs, which has not happened. But the Clerks did also cite those provisions, and the failure to allege pursuit of them, as supporting exhaustion as a bar to Plaintiffs' claims. Plaintiffs responded that the Clerks were wrong as a matter of law, saying, "The Clerks fail to cite even a single case to support their assertion that Plaintiffs are required to exhaust *state* remedies before

bringing *federal* constitutional and statutory claims . . . ." ECF No. 338 at 40 (italics in original). And Plaintiffs argued that exhaustion never applies to section 1983 claims (the Second and Third Claims for Relief). *Id.* But none of that is correct. The Clerks cited, for example, *Johnson v. Meadows*, 418 F.3d 1152 (11th Cir. 2005). *Johnson* addressed "state"-provided "grievance procedures," which a federal prisoner "must . . . exhaust . . . before pursuing a § 1983 lawsuit." *Id.* at 1156 (quoting *Brown v. Sikes*, 212 F.3d 1205, 1207 (11th Cir. 2000)); *and see* ECF No. 330 at 34–35.

In sum, no "as applied" challenge was made to those statutory remedies. Plaintiffs simply want different remedies, arguing that in spite of the statutory provisions that obviate these proceedings, this Court should take the case and come up with something new: "irrespective of Florida state law . . . the Court can remedy the alleged wrongs in myriad ways, without recourse to any particular state statutes or processes." ECF No. 338 at 2. But Plaintiffs have shown nothing to argue their way out of the holding in *Jones II*.

### C.    Equitable Relief Claims.

In connection with Plaintiffs' discussion of their claim for an equitable accounting, Plaintiffs claim the Clerks make a straw man argument about Plaintiffs' related equitable claims for "unjust enrichment" and "disgorgement." *See* ECF No. 338 at 36 n.18. Plaintiffs say "[t]he Clerks provide no citation for their assertion that Plaintiffs assert" those claims and that "the Complaint contains no such claims." *Id.* That, again, simply isn't true. In the Motion to Dismiss (at 35), the Clerks challenged the "accompanying remedies" demanded by Plaintiffs:

> Just as Plaintiffs' claims for an equitable accounting must be dismissed, the same is true for their other claims for equitable relief. Plaintiffs claim entitlement to not only an equitable accounting, but also to accompanying remedies of disgorgement and unjust enrichment. Essentially, Plaintiffs allege they would not have paid LFOs that were owed if they were aware that the payment would not specifically restore voting rights. *See* ECF No. 9 at 75.

As that paragraph shows, the Clerks did in fact cite the Amended Complaint (though the page number is mistaken, and should be 69 instead of 75), which demands "an accounting . . . and disgorgement . . . ."

The Plaintiffs' greater problem is that they do not explain why this Court should take up thousands (or more) of equitable accounting proceedings and disgorge from the State moneys unquestionably and independently owed as a result of felonies, when the Florida Statutes already provide the remedy of an equitable accounting specifically aimed at promptly restoring the right to vote under Amendment 4/SB 7066. That remedy, in section 98.0751(2)(a)5.d.–e., has been ruled constitutional, is unaddressed in Plaintiffs' Amended Complaint and in their Response, and is the appropriate legal process for the individualized remedies Plaintiffs seek.

*     *     *

Plaintiffs' Response to the Motion to Dismiss confirms that the alleged "failures" they take issue with are not legal claims. Those claims are foreclosed by Plaintiffs' own acknowledgment that Clerks "cannot" provide complete information Plaintiffs claim to need (including a statewide database), and by the controlling decision in *Jones II* that the cure provisions are constitutional (and that the "failures" of which Plaintiffs complain are not failures at all). Plaintiffs have made no showing that those provisions, which include adjudicative expressways, have been utilized and resulted in deprivations. Consequently, Plaintiffs fail to make claims for violation of their rights and fail to satisfy the requirements of Article III standing against the sixty-seven Clerks (as shown in the Motion to Dismiss). Plaintiffs' Second, Third, and Fourth Claims are due to be dismissed as against the Clerks pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6).

WHEREFORE, The Clerks respectfully request all claims against them be dismissed.

**VI.**   **PLAINTIFFS' CLAIMS AGAINST THE SUPERVISORS SHOULD BE DISMISSED.**

**A.**   **Plaintiffs Have Not Plausibly Alleged Section 1983 Liability.**

In their motion to dismiss, the Supervisors argued that, if they are not arms of the State for purposes of sovereign immunity, then the requirements of *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), apply. ECF No. 330 at 55–56.[2] Plaintiffs concede the Supervisors are arms of the State for sovereign-immunity purposes. ECF No. 338 at 33. If, however, this Court finds otherwise, then it should dismiss the amended complaint for failure to allege that the Supervisors violated Plaintiffs' rights pursuant to an official policy or custom.

Under *Monell*, a local-government unit is not liable under section 1983 unless the local-government unit *itself* caused the injury. *Baxter v. Roberts*, 54 F.4th 1241, 1269–70 (11th Cir. 2022). Thus, the local-government unit is not vicariously liable for injuries caused by its agents or employees. *Id*. at 1270. To maintain this limitation on section 1983 actions, a plaintiff must plead and prove an official policy or custom. *Id*. Plaintiffs here claim to have pleaded a "widespread practice . . . so permanent and well settled as to constitute a custom or usage with the force of law," ECF No. 338 at 55 (quoting *Baxter*, 54 F.4th at 1270), but they have not come close. Plaintiffs allege only that the Supervisors are not following a state statute that requires them to provide notice to voters whom the Supervisors have determined to be ineligible to vote. ECF No. 9 ¶¶ 114–16. But even under the express terms of the statute, notice is ***only*** required ***if*** the Supervisor receives notice from the Secretary of State of credible and reliable information as to an individual's ineligibility and the Supervisor has decided to commence the procedure to remove that voter from the voter rolls. *See* Fla. Stat. § 98.075(5)–(7). Here, Plaintiffs provide

---

[2] The Supervisors recognize that *Monell*'s prescriptions are "limited to local government units which are not considered part of the State for Eleventh Amendment purposes." *Monell*, 436 U.S. at 691 n.54.

no allegations that the Secretary of State had provided any Supervisor with such information or that the Supervisor has commenced removal procedures without first providing the voter with notice.

The amended complaint also contains no well-pleaded allegations of an official policy or custom—*i.e.*, that the alleged failure is a widespread practice so permanent and well-settled as to constitute a custom or usage with the force of law—rather than an injury caused by agents of the Supervisors. Plaintiffs do not, for example, allege that the Supervisors had knowledge of the omissions and acquiesced in them. *See Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (finding that a complaint plausibly alleged an official policy or custom where it alleged the police chief's "knowledge of, and acquiescence in," the alleged practices).

Rather than argue that the Supervisors have an official policy or custom of not providing the notices, Plaintiffs rewrite their allegations. They claim the amended complaint alleges that the Supervisors are "arbitrarily treating some individuals with prior felony convictions differently from other individuals with prior felony convictions . . . and from individuals with prior felony convictions in other jurisdictions." ECF No. 338 at 55 (citing ECF No. 9 ¶ 179). But their pleading contains no such allegation. The paragraph that Plaintiffs cite relates to LFOs—which Plaintiffs allege is the Clerks' responsibility, ECF No. 9 ¶ 48. Plaintiffs cannot rely on allegations they never made, nor would this vague rewrite plausibly allege a policy or custom.

If, therefore, the Supervisors are not arms of the State for sovereign-immunity purposes, then the amended complaint should be dismissed for failure to plausibly allege an official policy or custom.

### B. Plaintiffs' Joinder of Sixty-Seven Supervisors in One Action Is Improper.

Plaintiffs next argue that Rule 20 authorizes their joinder of all sixty-seven Supervisors in this action. But their argument—that each Supervisor engaged in the same conduct (failure

to provide notice) and is liable under the same legal theories, ECF No. 338 at 56—is insufficient to satisfy Rule 20. Joinder is not appropriate merely because all defendants are alleged to have violated the same law in the same manner. *See* ECF No. 330 at 60. Joinder requires a plausible allegation of a common plan or policy or concerted action. *Id*. And Plaintiffs neither allege nor argue that sixty-seven independent Supervisors have acted pursuant to a common plan or policy or in concert with one another.

The cases that Plaintiffs cite illustrate the distinction. Plaintiffs argue that all sixty-seven Supervisors are often joined in "voting rights cases." ECF No. 338 at 57 (citing *Fla. State Conf. of NAACP v. Lee*, 566 F. Supp. 3d 1262 (N.D. Fla. 2021); *Nielsen v. DeSantis*, 469 F. Supp. 3d 1261 (N.D. Fla. 2020)). In those cases, however, the plaintiffs attacked the validity of state laws the Supervisors enforced. Joinder was appropriate (and the Supervisors did not argue misjoinder in those cases) because the Supervisors were alleged to have acted pursuant to a general policy.

Here, by contrast, Plaintiffs do not challenge the validity of a statute that the Supervisors enforce. Rather, Plaintiffs allege that each of the sixty-seven Supervisors fails to give notice to voters whom the Supervisor has found ineligible. ECF No. 9 ¶¶ 114–16. Plaintiffs do not argue that the alleged omission is the product of common plan or policy or concerted action. In fact, a prominent theme of the amended complaint is that county officials act according to their own "local practices" and *not* pursuant to any "unified process." ECF No. 9 ¶¶ 4, 8. Nor do Plaintiffs deny that proof of their claims against the Supervisors will hinge on county-by-county evidence. One Supervisor's compliance or non-compliance with the notice requirement has no tendency to prove or disprove another's. Plaintiffs simply make a general allegation that each Supervisor, in his or her county, violates the same statutory requirement in the same way. Joinder requires more than a mere outward resemblance between the alleged violations of multiple defendants.

Plaintiffs also lean on *Jacobson v. Florida Secretary of State*, 974 F.3d 1236 (11th Cir. 2020), but *Jacobson* concerned standing—not joinder. The court there concluded that, because

the Supervisors and not the Secretary of State enforced the challenged statute, the alleged injury was traceable to the Supervisors' enforcement of the law, and only the Supervisors could afford redress. Joinder of all Supervisors would have been proper because the plaintiffs challenged a statute—a general policy—enforced by the Supervisors. *Jacobson* does not suggest that county election officials can always be sued in one action without regard to Rule 20's prerequisites, or that *standing* to sue multiple election officials necessarily authorizes their *joinder* in one action.

Plaintiffs invoke "efficiency considerations" to support their joinder of all Supervisors in one action, ECF No. 338 at 57, but while efficiency might have motivated Rule 20's adoption, it is no reason to ignore Rule 20's limitations. And while Plaintiffs insist they want "systemic and statewide injunctive relief," *id.*, a plaintiff is not entitled to decide when Rule 20 applies. While separate actions might be less convenient than one adjudication in bulk, a county's voters are not without judicial recourse against a Supervisor who fails to comply with section 98.075's notice requirements.

Finally, Plaintiffs argue that Supervisors are part of a "causal chain" because Supervisors are "responsible for making determinations as to the voting eligibility of people with felony convictions and they have fallen short in their obligations to do so." ECF No. 338 at 57. But the amended complaint does not allege that Supervisors have somehow "fallen short" in making eligibility determinations—only that each Supervisor fails to provide the statutorily mandated notice.

For these reasons, the Court should drop the sixty-seven Supervisors from this action.

### C.    Plaintiffs' Threadbare Allegations Fail to Plead a Plausible Claim Against the Supervisors.

In the motion to dismiss, the Supervisors argued that Plaintiffs' allegation of wrongdoing against them—that the Supervisors do not provide the notice that section 98.075(7) requires—is threadbare and conclusory. Yet Plaintiffs' response to that argument is itself threadbare and

conclusory: Plaintiffs cite no well-pleaded allegations that provide plausible factual support for that assertion. ECF No. 338 at 58. Plaintiffs' claims against the Supervisors should be dismissed.

Plaintiffs point to a single, isolated allegation that the Miami-Dade and St. Lucie County Supervisors of Elections did not provide Plaintiffs Sanchez and Jones with information about outstanding LFOs. *Id*. That allegation has nothing to do with Plaintiffs' claims against the Supervisors, which allege a failure to provide notice of eligibility determinations. And even as to that issue, there is no allegation that either of the relevant Supervisors received any information from the Secretary of State concerning Sanchez's or Jones' potential ineligibility, or that either Supervisor commenced removal proceedings against them. This allegation also addresses only two Supervisors and says nothing about the other sixty-five. Further, Plaintiffs themselves allege that responsibility for LFOs lies elsewhere—not with the Supervisors. ECF No. 9 ¶ 48. This allegation is precisely the kind of "unadorned, the-defendant-unlawfully-harmed-me accusation" that is insufficient to plead a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**D.      Plaintiffs Fail to State a Plausible Equal-Protection Claim Against the Supervisors.**

Plaintiffs cannot overcome the arguments that compel dismissal of their equal-protection claim against the Supervisors.

*First*, the amended complaint fails to allege that any Supervisor treats people unequally. It alleges the Supervisors do not provide the notice that section 98.075 requires. Plaintiffs argue that, in making eligibility determinations, each Supervisor relies on information provided by the Clerk in the Supervisor's county, and that Clerks have different processes. ECF No. 338 at 59. But that is not the claim that Plaintiffs brought against the Supervisors. It also defies reason to suggest that a Supervisor violates equal protection when another Supervisor in another county performs the same function, but the Clerks in the two counties calculate information differently.

*Second*, Plaintiffs insist that a Supervisor violates equal protection if another Supervisor administers elections differently. Not so. Equal protection does not require independent county officials whose jurisdiction ends at the borders of their respective counties to *assimilate* their practices any more than it requires Florida to adopt the same statutes as California, or compels all municipalities in Florida to adopt an identical code of ordinances. Rather, equal protection "ensures that no state or local government shall 'deny to any person *within its jurisdiction* the equal protection of the laws.'" *Bos. Police Superior Officers Fed'n v. City of Bos.*, 147 F.3d 13, 17 (1st Cir. 1998) (quoting U.S. Const. amend. XIV, § 1) (emphasis added); *accord Citizen Ctr. v. Gessler*, 770 F.3d 900, 917–18 (10th Cir. 2014). Just as equal protection does not compel one Supervisor to exercise his or her duties the same way another Supervisor does, merely because Plaintiffs prefer that practice, an equal-protection claim cannot be sustained when an individual Supervisor is not alleged to have treated voters within the Supervisor's own county differently.

Plaintiffs hang their hat on *Bush v. Gore*, 531 U.S. 98 (2000), but the Court in *Bush* did not find that local election officials violated equal protection because they did not collaborate to establish identical practices across their counties. On the contrary, the Court emphasized that the question before it was "not whether local entities, in the exercise of their expertise, may develop different systems for implementing elections." *Id*. at 109. Rather, the critical fact was that the Florida Supreme Court, "a state court with the power to assure uniformity," had ordered a statewide recount without suitable safeguards. *Id*. It was the agency of this statewide actor— the Florida Supreme Court—that rendered county-by-county differences incompatible with the Equal Protection Clause. *Id*. at 107 ("The State Supreme Court ratified this uneven treatment.").

*Bush* does not therefore suggest that equal protection requires each Supervisor to ensure equal treatment between voters in the Supervisor's county and voters in another county in which the Supervisor has no authority. Indeed, a county official has no authority to establish statewide uniformity. Because Plaintiffs do not allege that any Supervisor treats similarly situated voters

24

within the Supervisor's own county differently, Plaintiffs have not plausibly alleged a violation of equal protection.

*Third*, the allegations that support Count II relate to LFOs, and the Supervisors have no responsibility for the resolution or calculation of LFOs. Plaintiffs offer little response to this argument. For this additional reason, the Court should dismiss Plaintiffs' equal-protection claim against the Supervisors.

### E. To the Extent They Allege Violations of Non-Existent Legal Requirements, Plaintiffs' Claims Against the Supervisors Should Be Dismissed.

Finally, Plaintiffs' claims against the Supervisors should be dismissed to the extent those claims rely on an allegation that the Supervisors fail to notify *potential* voters "when they have successfully had their voting rights restored and are therefore eligible to vote." ECF No. 330 at 65 (quoting ECF No. 9 ¶ 114). No such obligation exists. Plaintiffs insist their claims against the Supervisors "are based on the Equal Protection and Due Process Clauses,"[3] but cite no legal authority to suggest that the Supervisors must monitor the eligibility or ineligibility of potential voters and then alert those individuals once they become eligible. ECF No. 338 at 59. To the extent Plaintiffs make this allegation, their claims against the Supervisors should be dismissed.

<u>CONCLUSION</u>

For these reasons, the Court should dismiss Plaintiffs' amended complaint.

---

[3] Plaintiffs did not bring a due-process claim.

Dated December 7, 2023.                                Respectfully submitted,


/s/ *John K. Londot*_____          /s/ *Andy Bardos*_____
John K. Londot (FBN 579521)                   Andy Bardos (FBN 822671)
GREENBERG TRAURIG P.A.                         GRAYROBINSON, P.A.
101 E. College Avenue                          301 South Bronough Street, Suite 600
Tallahassee, Florida 32301                     Tallahassee, Florida 32301
Telephone: 850-222-6891                        Telephone: 850-577-9090
londotj@gtlaw.com                              andy.bardos@gray-robinson.com
hoffmannm@gtlaw.com                            *Attorneys for Defendants, Supervisors of*
*Attorneys for Defendants, Clerks of Court and*   *Elections for Charlotte, Collier, Indian River,*
*Comptrollers of Baker, Bay, Bradford,*        *Lake, Lee, Marion, Manatee, Monroe, Pasco,*
*Brevard, Calhoun, Charlotte, Citrus, Clay,*   *and Seminole Counties*
*Columbia, Dixie, Escambia, Flagler,*
*Franklin, Gadsden, Gilchrist, Gulf, Hamilton,*
*Hernando, Highlands, Hillsborough, Indian*
*River, Jackson, Jefferson, Lafayette, Lake,*
*Lee, Liberty, Manatee, Marion, Martin,*
*Miami-Dade, Monroe, Nassau, Okaloosa,*
*Okeechobee, Palm Beach, Pasco, Pinellas,*
*Polk, Putnam, Santa Rosa, Sarasota,*
*Seminole, St. Johns, St. Lucie, Sumter,*
*Suwannee, Taylor, Union, Wakulla, Walton*
*and Washington Counties, and Defendants,*
*Clerks of Court of DeSoto, Orange, and*
*Volusia Counties*

/s/ Mohammad O. Jazil
Mohammad O. Jazil (FBN 72556)
Michael R. Beato (FBN 1017715)
Joshua E. Pratt (FBN 119347)
HOLTZMAN VOGEL BARAN TORCHINSKY &
JOSEFIAK PLLC
119 South Monroe Street, Suite 500
Tallahassee, Florida 32301
Telephone: 850-270-5938
mjazil@holtzmanvogel.com
mbeato@holtzmanvogel.com
jpratt@holtzmanvogel.com
*Attorneys for Defendants, Governor Ron
DeSantis; Florida Secretary of State Cord
Byrd; Secretary of Corrections Ricky D.
Dixon; Commissioner of the Florida
Department of Law Enforcement Mark Glass;
and Commissioners of the Florida
Commission on Offender Review Melinda N.
Coonrod, Richard D. Davison, and David A.
Wyant*

/s/ Nathaniel A. Klitsberg
Nathaniel A. Klitsberg (FBN 307520)
Devona A. Reynolds Perez (FBN 70409)
Joseph K. Jarone (FBN 117768)
BROWARD COUNTY ATTORNEY'S OFFICE
115 S. Andrews Avenue, Suite 423
Fort Lauderdale, Florida 33301
Telephone: 954-357-7600
nklitsberg@broward.org
dreynoldsperez@broward.org
jkjarone@broward.org
*Attorneys for Defendant, Broward County
Supervisor of Elections*

/s/ George N. Meros, Jr.
George N. Meros, Jr. (FBN 263321)
Tara R. Price (FBN 98073)
Benjamin J. Gibson (FBN 0058661)
Kassandra S. Reardon (FBN 1033220)
SHUTTS & BOWEN LLP
215 South Monroe Street, Suite 804
Tallahassee, Florida 32301
Telephone: 850-241-1717
gmeros@shutts.com
tprice@shutts.com
bgibson@shutts.com
kreardon@shutts.com
*Attorneys for Defendants, Florida Secretary
of State Cord Byrd; Secretary of Corrections
Ricky D. Dixon; Commissioner of the Florida
Department of Law Enforcement Mark Glass;
and Commissioners of the Florida
Commission on Offender Review Melinda N.
Coonrod, Richard D. Davison, and David A.
Wyant*

/s/ Susan S. Erdelyi
Susan S. Erdelyi (FBN 0648965)
MARKS GRAY, P.A.
1200 Riverplace Blvd., Suite 800
Jacksonville, Florida 32207
Telephone: 904-398-0900
serdelyi@marksgray.com
*Attorneys for Defendants, Baker, Bay,
Bradford, Calhoun, Columbia, Dixie,
Franklin, Gadsden, Gulf, Hamilton, Jackson,
Lafayette, Liberty, Nassau, Putnam, St. Johns,
Santa Rosa, Sumter, Suwannee, Taylor,
Union, Walton, Wakulla, and Washington
County Supervisors of Elections*

/s/ Nicholas J.P. Meros
Nicholas J.P. Meros (FBN 120270)
EXECUTIVE OFFICE OF THE GOVERNOR
400 S. Monroe Street
Tallahassee, Florida 32399
Telephone: 850-717-9310
nicholas.meros@eog.myflorida.com
*Attorneys for Defendant, Governor of Florida*

/s/ John T. LaVia, III
John T. LaVia, III (FBN 0853666)
GARDNER, BIST, BOWDEN, BUSH, DEE,
LA VIA & WRIGHT, P.A.
1300 Thomaswood Drive
Tallahassee, Florida 32308
Telephone: 850-385-0070
jlavia@gbwlegal.com
*Attorneys for Defendants, Clay,
Martin, Osceola, Palm Beach, Polk, and St.
Lucie County Supervisors of Elections*

/s/ Bradley R. McVay
Bradley R. McVay (FBN 79034)
Joseph S. Van De Bogart (FBN 84764)
Ashley E. Davis (FBN 48032)
FLORIDA DEPARTMENT OF STATE
R.A. Gray Building
500 S. Bronough Street, Suite 100
Tallahassee, Florida 32399
Telephone: 850-245-6531
brad.mcvay@dos.myflorida.com
joseph.vandebogart@dos.myflorida.com
ashley.davis@dos.myflorida.com
*Attorneys for Defendant, Florida Secretary of
State*

/s/ Frank Mari
Frank M. Mari
Florida Bar No. 93243
ROPER, P.A.
2707 E. Jefferson Street
Orlando, FL 32803
Telephone: (407) 897-5150
Facsimile: (407) 897-3332
Primary email: fmari@roperpa.com
Secondary email: ihaines@roperpa.com
*Attorneys for Defendants, Highlands, Gilchrist,
Flagler, Jefferson, Madison, Brevard, and
DeSoto County Supervisors of Elections and
Madison County Clerk and Comptroller*

/s/ Daniel A. Johnson
Daniel A. Johnson (FBN 91175)
Charles T. Martin, Jr. (FBN 118328)
FLORIDA DEPARTMENT OF CORRECTIONS
Office of the General Counsel
501 South Calhoun Street
Tallahassee, Florida 32399
Telephone: 850-717-3611
dan.johnson@fdc.myflorida.com
charles.martin@fdc.myflorida.com
*Attorneys for Defendant, Secretary of the
Florida Department of Corrections*

/s/ Mark Herron
Mark Herron (FBN 199737)
MESSER CAPARELLO, P.A.
2618 Centennial Place
Tallahassee, Florida 32308
Telephone: 850-222-0720
mherron@lawfla.com
*Attorneys for Defendant, Leon County
Supervisor of Elections*

/s/ *Albert T. Gimbel*
Albert T. Gimbel (FBN 279730)
MESSER CAPARELLO, P.A.
2618 Centennial Place
Tallahassee, Florida 32317
Telephone: 850-222-0720
tgimbel@lawfla.com
*Attorneys for Defendant, Clerk of Court of Broward County*

/s/ *Paul D. Brannon*
Paul D. Brannon (FBN 820636)
William B. Graham (FBN 359068)
CARR ALLISON
305 S. Gadsden Street
Tallahassee, Florida 32301
Telephone: 850-222-2107)
dbrannon@carrallison.com
bgrahama@carrallison.com
*Attorneys for Defendant, Escambia County Supervisor of Elections*

/s/ *Carter E. Young*
Carter E. Young (FBN 58034)
CLERK OF COURT AND COMPTROLLER
Leon County, Florida
301 S. Monroe Street, Suite 100
Tallahassee, Florida 32301
Telephone: 850-606-4121
CEYoung@leoncountyfl.gov
*Attorneys for Defendants, Leon County Clerk of Court and Comptroller*

/s/ *Geraldo F. Olivo, III*
Geraldo F. Olivo, III (FBN 60905)
HENDERSON, FRANKLIN, STARNES & HOLT, P.A.
1715 Monroe Street
Fort Myers, Florida 33901
Telephone: 239-344-1100
jerry.olivo@henlaw.com
*Attorneys for Defendants, Glades, Hardee, Hendry, Holmes, Levy, and Okeechobee Supervisors of Elections, and Clerks of Court and Comptrollers of Glades, Hardee, Hendry, Holmes, Levy, and Okeechobee Counties*

/s/ *Robert C. Swain*
Robert C. Swain (FBN 366961)
Diana M. Johnson (FBN 69160)
ALACHUA COUNTY ATTORNEY'S OFFICE
12 S.E. 1st Street
Gainesville, Florida 32601
Telephone: 352-374-5218
dmjohnson@alachuacounty.us
bswain@alachuacounty.us
kniederloh@alachuacounty.us
*Attorneys for Defendants, Alachua County Supervisor of Elections, Clerk of Court, and Comptroller*

/s/ *Jon A. Jouben*
Jon A. Jouben (FBN 149561)
Kyle J. Benda (FBN 113525)
HERNANDO COUNTY
20 N. Main Street, Suite 462
Brooksville, Florida 34601-2850
Telephone: 850-754-4122
jjouben@co.hernando.fl.us
kbenda@co.hernando.fl.us
*Attorneys for Defendant, Hernando County Supervisor of Elections*

/s/ *Brian D. Goodrich*
Brian D. Goodrich (FBN 106948)
BENTLEY GOODRICH KISON, P.A.
783 S. Orange Avenue, Suite 300
Sarasota, Florida 34236
Telephone: 941-556-9030
bgoodrich@bgk.law
*Attorneys for Defendant, Sarasota County*
*Supervisor of Elections*

/s/ *Michael B. Valdes*
Michael B. Valdes (FBN 93129)
Sophia M. Guzzo (FBN 1039644)
MIAMI-DADE COUNTY ATTORNEY'S OFFICE
111 N.W. First Street, Suite 2810
Miami, Florida 33128
Telephone: 305-375-5620
michael.valdes@miamidade.gov
sophia.guzzo@miamidade.gov
*Attorneys for Defendant, Miami-Dade County*
*Supervisor of Elections*

/s/ *Thomas W. Franchino*
Thomas W. Franchino (FBN 699276)
CLERK OF THE CIRCUIT COURT AND
COMPTROLLER
Collier County, Florida
3315 Tamiami Trail East, Suite102
Naples, Florida 34112
Telephone: 239-252-2725
tom.franchino@collierclerk.com
*Attorneys for Defendants, Collier County*
*Clerk of Court and Comptroller*

/s/ *Stephen M. Todd*
Stephen M. Todd (FBN 886203)
HILLSBOROUGH COUNTY ATTORNEY'S OFFICE
601 E. Kennedy Blvd., 27th Floor
Tampa, Florida 33602
Telephone: 813-272-5670)
todds@hillsboroughcounty.org
*Attorneys for Defendant, Hillsborough*
*County Supervisor of Elections*

/s/ *Christopher A. Mack*
Christopher A. Mack (FBN 105348)
2 Courthouse Square
Kissmimee, Florida 34741
Telephone: 407-742-3500
chris.mack@osceolaclerk.org
*Attorney for Defendants, Osceola County*
*Clerk of Court and Comptroller*

/s/ *Tiffiny Douglas Pinkstaff*
Tiffiny Douglas Pinkstaff (FBN 682101)
Associate General Counsel
OFFICE OF GENERAL COUNSEL
117 West Duval Street, Suite 480
Jacksonville, Florida 32202
Telephone: 904-255-5072
tpinkstaff@coj.net
*Attorneys for Defendant, Duval County*
*Supervisor of Elections*

/s/ *Sarah Lynn Jonas*
Sarah Lynn Jonas (FBN 115989)
VOLUSIA COUNTY ATTORNEY'S OFFICE
123 W Indiana Avenue
Deland, Florida 32720
Telephone: 386-5950
sjonas@volusia.org
*Attorneys for Defendant, Volusia County*
*Supervisor of Elections*

/s/ *Jared D. Kahn*
Jared D. Kahn (FBN 105276)
PINELLAS COUNTY ATTORNEY'S OFFICE
315 Court Street, 6th Floor
Clearwater, Florida 33756
Telephone: 727-464-3354
jkahn@pinellas.gov
*Attorneys for Defendant, Pinellas County*
*Supervisor of Elections*

/s/ Laura J. Boeckman
Laura J. Boeckman (FBN 527750)
OFFICE OF GENERAL COUNSEL
117 W. Duval Street, Suite 480
Jacksonville, Florida 32202
Telephone: 904-255-5054
LBoeckman@coj.net
*Attorneys for Defendant, Duval County Clerk of Court*

/s/ Gregory T. Stewart
Gregory T. Stewart (FBN 203718)
Matthew R. Shaud (FBN 122252)
NABORS, GIBLIN & NICKERSON, P.A.
1500 Mahan Drive, Suite 200
Tallahassee, Florida 32308
Telephone:850-224-4070
gstewart@ngnlaw.com
mshaud@ngnlaw.com
*Attorneys for Defendant, Okaloosa County Supervisor of Elections*

/s/ Dale A. Scott
Dale A. Scott (FBN 0568821)
ROPER, P.A.
2707 E. Jefferson Street
Orlando, Florida 32803
Telephone: 407-897-5150
dscott@roperpa.com
*Attorneys for Defendant, Citrus County Supervisor of Elections*

/s/ Nicholas A. Shannin
Nicholas A. Shannin (FBN 9570)
SHANNIN LAW FIRM, P.A.
214 E. Lucerne Circle, Suite 200
Orlando, Florida 32801
Telephone: 407-985-2222
nshannin@shanninlaw.com
*Attorneys for Defendant, Orange County Supervisor of Elections*

/s/ Alexandra Mora
Alexandra Mora (FBN 52368)
Genesis Martinez (FBN 1018327)
AKERMAN LLP
98 Southeast Seventh Street, Suite 1100
Miami, Florida 33131
alexandra.mora@akerman.com
genesis.martinez@akerman.com
*Attorney for Defendants, Miami-Dade County Clerk of Court and Comptroller*